CLOSED

# U.S. District Court
## Eastern District of Virginia (Richmond)
## CIVIL DOCKET FOR CASE #: 3:06-cv-00132-REP
### Internal Use Only

0 6 - 2 6 9

Micron Technology, Inc. et al v. Rambus, Inc.
Assigned to: District Judge Robert E. Payne
Cause: 18:1961 Racketeering (RICO) Act

Date Filed: 02/2112006
Jury Demand: None
Nature of Suit: 470 Racketeer/Corrupt Organization
Jurisdiction: Federal Question

**Plaintiff**

**Micron Technology, Inc.**

represented by **Hugh McCoy Fain, III**
Spotts Fain PC
411 E Franklin St
PO Box 1555
Richmond, VA 23218-1555
(804) 788-1190
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dana Duane McDaniel**
Spotts Fain PC
411 E Franklin St
PO Box 1555
Richmond, VA 23218-1555
(804) 788-1190

**Diane Cafferata Hutnyan**
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 S Figueroa St
10th Fl
Los Angeles, CA 90017
**NA*
(213) 443-3666
Fax: 213-443-3100

**Dominic Surprenant**
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 S Figueroa St
10th Fl
Los Angeles, CA 90017
**NA*
(213) 443-3166

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

Fax: 213-443-3100

**John Badger Quinn**
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S Figueroa St
10th Fl
Los Angeles, CA 90017
**NA*
(213) 443-3200
Fax: 213-443-3100

**Jon Robert Steiger**
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S Figueroa St
10th Fl
Los Angeles, CA 90017
**NA*
(213) 443-3623
Fax: 213-443-3100
*ATTORNEY TO BE NOTICED*

**Kevin Yoshiwo Teruya**
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S Figueroa St
10th Fl
Los Angeles, CA 90017
**NA*
(213) 443-3226
Fax: 213-443-3100

**Maurice Francis Mullins**
Spotts Fain PC
411 E Franklin St
Suite 600
PO Box 1555
Richmond, VA 23218-1555
(804) 697-2069
Fax: (804) 697-2169

**William Charlie Price**
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S Figueroa St
10th Fl
Los Angeles, CA 90017
**NA*
(213) 443-3156

Fax: 213-443-3100
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Micron Semiconductor Products, Inc.**        represented by    **Hugh McCoy Fain, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dana Duane McDaniel**
(See above for address)

**Maurice Francis Mullins**
(See above for address)

**Defendant**

**Rambus, Inc.**        represented by    **Rowland Braxton Hill, IV**
Christian & Barton LLP
909 E Main St
Suite 1200
Richmond, VA 23219-3095
(804) 697-4100
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Charles Green**
Sidley Austin LLP
1501 K St NW
Washington, DC 20005
**NA*
(202) 736-8069
Fax: 202-736-8711
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Craig Thomas Merritt**
Christian & Barton LLP
909 E Main St
Suite 1200
Richmond, VA 23219-3095
(804) 697-4100

**Michael W. Smith**
Christian & Barton LLP
909 E Main St
Suite 1200
Richmond, VA 23219-3095
(804) 697-4100

**Thomas Kenneth Cauley, Jr.**

Sidley Austin LLP
One S Dearborn
Chicago, IL *60603*
\*\*NA\*
*(312) 853-7076*
Fax: *312-853-7036*
ATTORNEY *TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| *02/21/2006* | ⊙1 | COMPLAINT against Rambus, Inc. Filing fee *$250,* receipt number xxx., filed by Micron Semiconductor Products, Inc. and Micron Technology, Inc.(cgar, ) (Entered: 02/2*112006*) |
| *0212112006* | 2 | Financial Interest Disclosure Statement (Local Rule *7.1)* by Micron Technology, Inc. (cgar, ) (Entered: 02/2*112006*) |
| *02/2112006* | 3 | Financial Interest Disclosure Statement (Local Rule *7.1)* by Micron Semiconductor Products, Inc. (cgar, ) (Entered: *02/21/2006*) |
| *02121/2006* | ⊙ | Summons Issued as to Rambus, Inc., attorney called per cover letter. (cgar, ) (Entered: *0212112006*) |
| *02/21/2006* | ⊙4 | MOTION for Jon Robert Steiger to appear Pro hac vice, Filing fee *$50.00* receipt #8*1944* by Micron Technology, Inc.. (scoo, ) (Entered: *02/22/2006*) |
| *02121/2006* | ⊙5 | MOTION for John Badger Quinn to Pro hac vice, filing fee *$50.00* receipt #81944 by Micron Technology, Inc.. (scoo, ) (Entered: *0212212006*) |
| *02121/2006* | ⊙6 | MOTION for Diane Cafferata Hutnyan to procced Pro hac vice, filing fee *$50.00,* receipt #81944 by Micron Technology, Inc.. (scoo, ) (Entered: *02/22/2006*) |
| *0212112006* | ⊙7 | MOTION for Dominic Surprenant to appear Pro hac vice, filing fee *$50.00,* receipt #8*1944* by Micron Technology, Inc.. (scoo, ) (Entered: *02/22/2006*) |
| *02/23/2006* | ⊙ | So Ordered, Motions terminated: *[4]* MOTION for Pro hac vice for attorney Jon Steiger filed by Micron Technology, Inc. Signed by Judge Robert E. Payne on *2/22/06.* Copies mailed.(wtuc) (Entered: *02/23/2006*) |
| *02/23/2006* | ⊙ | So Ordered, Motions terminated: *[5]* MOTION for Pro hac vice for attorney John Badger Quinn filed by Micron Technology, Inc. Signed by Judge Robert E. Payne on *2/22/06.* Copies mailed. (wtuc) (Entered: *02/23/2006*) |
| *02/23/2006* | ⊙ | So Ordered, Motions terminated: *[6]* MOTION for Pro hac vice for Diane Cafferata Hutnyan filed by Micron Technology, Inc. Signed by Judge Robert E. Payne on 2/22/06. Copies mailed. (wtuc) (Entered: *02/23/2006*) |
| *02/23/2006* | ⊙ | So Ordered, Motions terminated: *[7]* MOTION for Pro hac vice for |

| | | |
|---|---|---|
| | | Dominic Surprenant filed by Micron Technology, Inc. Signed by Judge Robert E. Payne on 2/22/05. Copies mailed.(wtuc) (Entered: 02/23/2006) |
| 02/23/2006 | | ***Attorney Dominic Surprenant, Jon Robert Steiger, Diane Cafferata Hutnyan, John Badger Quinn for Micron Technology, Inc. added. (wtuc) (Entered: 02/23/2006) |
| 02/28/2006 | 8 | MOTION for William Charlie Price to appear Pro hac vice by Micron Technology, Inc. (Fee Paid; Receipt #82061) (jtho, ) (Entered: 03/01/2006) |
| 02/28/2006 | 9 | MOTION for Kevin Yoshiwo Teruya to appear Pro hac vice by Micron Technology, Inc. (Fee Paid; Receipt #82061) (jtho, ) (Entered: 03/01/2006) |
| 03/01/2006 | | SO-ORDER granting [8] Motion for William Charlie Price to appear Pro hac vice, granting [9] Motion for Kevin Yoshiwo Teruya to appear Pro hac vice. Signed by Judge Robert E. Payne on 3/1/06. (Copies Mailed) (jtho, ) (Entered: 03/01/2006) |
| 03/01/2006 | | ***Attorney William Charlie Price for Micron Technology, Inc., Kevin Yoshiwo Teruya for Micron Technology, Inc. added. (jtho, ) (Entered: 03/02/2006) |
| 03/06/2006 | 10 | SUMMONS Returned Executed by Micron Semiconductor Products, Inc., Micron Technology, Inc.. Rambus, Inc. served on 2/22/2006, answer due 3/14/2006. (jtho, ) (Entered: 03/06/2006) |
| 03/07/2006 | 11 | MOTION for Extension of Time to File an Answer or Response to the Complaint by Rambus, Inc. (wtuc) (Entered: 03/08/2006) |
| 03/08/2006 | 12 | ORDER Setting an Initial Pretrial Conference to be held at 10:30 a.m. on March 23,2006. Entered by the Clerk at the direction of the Court. Copies mailed. (sneal, ) (Entered: 03/08/2006) |
| 03/08/2006 | 13 | SCHEDULING ORDER: Initial Pretrial Conference set for 3/23/2006 10:30 AM before District Judge Robert E. Payne.. Signed by Judge Robert E. Payne on 3/8/6. Copies mailed. (sneal, ) (Entered: 03/08/2006) |
| 03/09/2006 | 14 | ORDER GRANTING [11] Motion for Extension of Time to Answer Rambus, Inc.; answer due 3/28/2006. Signed by Judge Robert E. Payne on 3/9/06. Copies mailed. (wtuc) (Entered: 03/09/2006) |
| 03/14/2006 | | Minute Entry for proceedings held before Judge Robert E. Payne : Telephone Conference held on 3/14/2006. OP 10 mins. (sneal, ) (Entered: 04/04/2006) |
| 03/21/2006 | | for proceedings held before Judge Robert E. Payne : Telephone Conference held on 3/21/2006. Time 15 mins. (sneal, ) (Entered: 03/30/2006) |
| 03/22/2006 | 15 | MOTION for Thomas Charles Green to appear Pro hac vice by Rambus, Inc.(Fee Paid; Receipt No. 82377) (jtho, ) (Entered: 03/22/2006) |
| 03/22/2006 | | So Ordered, Motions terminated: [15] MOTION for Pro hac vice Thomas |

| | | Charles Green filed by Rambus, Inc. Signed by Judge Robert E. Payne on 3/22/06. Copies mailed.(wtuc) (Entered: 03/22/2006) |
|---|---|---|
| 03/22/2006 | | ***Attorney Thomas Charles Green for Rambus, Inc. added. (wtuc) (Entered: 03/23/2006) |
| 03/24/2006 | 16 | AGREED ORDER; ORDERED that Rambus shall have until April 11, 2006 to file its answer and any Motion to Dismiss; pltfs shall have until May 8,2006 to file and service their brief in opposition to any motion to dismiss; Rambus shall have until May 15,2006 to file and serve its reply brief in support of any motion to dismiss; the initial pretrial conference in this matter is continued to May 18,2006 at 9:00 a.m. Signed by Judge Robert E. Payne on 3/24/06. Copies mailed.(wtuc) (Entered: 03/24/2006) |
| 03/24/2006 | | Set/Reset Hearings: Initial Pretrial Conference set for 5118/2006 09:00 AM before District Judge Robert E. Payne. (sneal, ) (Entered: 03/24/2006) |
| 04/14/2006 | 17 | MOTION for Pro hac vice for attorney Thomas Kenneth Cauley, Jr. by Rarnbus, Inc. ($50 fee pd., Rcpt. #82694) (wtuc) (Entered: 04/14/2006) |
| 04117/2006 | | So Ordered, Motion terminated: [17] MOTION for Pro hac vice for attorney Thomas Kenneth Cauley, Jr. filed by Rambus, Inc. Signed by Judge Robert E. Payne on 4/14/06. Copies mailed.(wtuc) (Entered: 04/1712006) |
| 04/1712006 | | ***Attorney Thomas Kenneth Cauley, Jr. for Rambus, Inc. added. (wtuc) (Entered: 04/1812006) |
| 04121/2006 | 18 | ORDER that this action is related to an action pending in the District of Delaware, and upon agreement of parties, it is hereby ORDERED that the action is transferred to the U.S. District Court for the District of Delaware; the Clerk is directed to take all actions necessary to effectuate this order. Signed by Judge Robert E. Payne on 4/20/06. (Copies Mailed) (jtho, ) (Entered: 04/2112006) |
| 04/21/2006 | | Certified copies of Transfer Order, Docket Sheet and original pleadings and correspondence sent to USDC in Delaware Clerk's Office by UPS Mail to: U.S. District Court, Delaware District, J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, DE 19801 (jtho, ) (Entered: 0412112006) |
| 04121/2006 | | Case transferred to District of Delaware. Original file, certified copy of transfer order, and docket sheet sent sent to Delaware U.S. District Court by UPS. (jtho, ) (Entered: 04/2112006) |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| MICRON TECHNOLOGY, INC. and MICRON SEMICONDUCTOR PRODUCTS, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 3:06CV132 |
| v. | ) ) | |
| RAMBUS INC., | ) ) | |
| Defendant. | ) ) ) | |

FILED

FEB 21 2006

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

06 - 269

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2006 APR 25 PM 2:42

## Complaint

### (For Violations of (1) 18 U.S.C. §§ 1961 et seq. (Civil RICO); and (2) Va. Code §§ 18.2-499, -500 (Statutory Conspiracy) and Civil Conspiracy)

Plaintiffs Micron Technology, Inc. ("Micron Technology") and Micron Semiconductor Products, Inc. ("Micron Semiconductor") (sometimes referred to collectively as "Micron"), by and through their undersigned counsel, allege as follows on the basis of personal knowledge and otherwise on the basis of information and belief:

1.    Rambus Inc. ("Rambus"); its management, including Messrs. Tate, Crisp, Farmwald, and Karp; its legal counsel, Messrs. Steinberg and Vincent; and upon information and belief, other persons listed below (collectively, the "Rambus Group") engaged in a long-running corrupt scheme designed to use litigation or the threat of litigation to obtain massive royalties from DRAM manufacturers and suppliers of other semiconductor products.

2.    From its inception, Rambus' business model was to collect royalties based on its patent portfolio − a portfolio based primarily on patents stemming from its first patent application, U.S. Patent Application No. 07/ 510,898 (the "'898 application"). Rambus filed dozens of applications based on the '898 application (the "'898 family"), and it subsequently

asserted patent infringement claims based on patents from the '898 family against Micron and other manufacturers in various jurisdictions in the U.S. and Europe.  However, Rambus' efforts to collect royalties or obtain infringement damages were threatened by problems with the '898 family that were known to the Rambus Group.  In an effort to eliminate these threats, the Rambus Group conspired to destroy or suppress material evidence and submit false testimony to hide or deny such problems with the '898 family.

3.      Recently-discovered evidence demonstrates, for example, that Rambus is not the rightful owner of the '898 family.  Although Rambus and others listed below submitted false testimony and sought to suppress material evidence about the ownership of the '898 family, evidence now demonstrates that Rambus' lead inventor and co-founder P. Michael Farmwald ("Farmwald") had previously assigned the '898 family and other inventions, pursuant to one or more employee assignment agreements, to a prior employer MIPS Computer Systems, Inc. ("MIPS").

4.      There were other problems with the '898 family as well, including potential problems regarding unenforceability and invalidity.   Indeed, Rambus' patent attorney had repeatedly warned Rambus that Rambus' conduct during the prosecution of the '898 family subjected Rambus to a risk that its patents would be found unenforceable.  Again, the Rambus Group conspired to destroy or suppress material evidence and submit false testimony to hide or deny these problems.

5.      As a central part of this conspiracy, Rambus and its management adopted a litigation strategy premised on the destruction of any evidence undermining its anticipated litigation claims, including claims for patent infringement.  In August 1998, Rambus management arranged for burlap bags to be distributed to all Rambus employees, with

2

instructions to fill the bags with documents relating to multiple subject matters, including subject matters relevant to Rambus' anticipated patent infringement claims.  On September 3, 1998 – described in internal Rambus e-mails as "Shred Day" – while Rambus was planning litigation against the DRAM manufacturers on these patents, it had a private shredding service destroy 185 burlap bags filled with documents (and an additional 60 boxes of documents). Afterward, Rambus personnel spot-checked employees to ensure full compliance.

6.     The next summer, Rambus was still actively preparing for litigation.  A June 1999 Rambus document describes steps for "Licensing/Litigation Readiness."  One of the steps listed was to "Organize 1999 shredding party at Rambus."  Soon thereafter, in August 1999, Rambus destroyed an additional 150 burlap bags (the equivalent of 188 banker's boxes) filled with documents.

7.     These first two shred events were not only in clear anticipation of specific litigation against Micron and others.  They were a central part of Rambus' litigation plan itself.

8.     Rambus continued its destruction of relevant evidence even after the litigation began.  In December 2000, while litigation with Micron and others was pending, Rambus launched a third shredding event.  Ignoring the instructions of its own outside litigation counsel to preserve relevant evidence, Rambus indiscriminately shredded 460 burlap sacks of documents (the equivalent of 575 banker's boxes).

9.     Believing it had substantially destroyed the harmful impeaching documents, the Rambus Group then repeatedly submitted false testimony to this and other courts.  Although much of the testimony submitted by them has been subsequently demonstrated to be intentionally false and misleading, the Rambus Group has nevertheless persisted in the same

pattern of misconduct, which has enabled it even recently to obtain favorable settlements and to continue pursuing its improper litigations to this day.

10.    This Court threw out Rambus' patent claims in the *Infineon* matter based on spoliation and unclean hands. This Court dismissed the same patent claims with prejudice in the *Samsung* matter after Samsung's claims based on spoliation and unclean hands forced Rambus to provide Samsung with a covenant not to sue and an agreement to pay Samsung's attorneys' fees. Nevertheless, Rambus has persisted in asserting the ***exact same*** discredited patents against Micron in federal court in Delaware and related patents in the '898 family against Micron in both Delaware and Northern California.

11.    In connection with the infringement suit Rambus had initiated against Infineon, this Court concluded in 2004 that Rambus' document destruction plan was intended "to destroy discoverable documents as part of its litigation strategy." *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 298 (E.D. Va. 2004). This Court held that the "crime/fraud" exception applied to defeat any claims of privilege that Rambus had sought to assert with respect to the document destruction that had occurred. *See also Rambus, Inc. v. Infineon Techs., AG*, 155 F. Supp. 2d 668, 680 (E.D. Va. 2001) ("[T]he record in this case shows that Rambus implemented a 'document retention policy,' in part, for the purpose of getting rid of documents that might be harmful in litigation"). *See also In re Rambus Inc.*, 7 Fed. App'x 925, 927 (Fed. Cir. 2001) (denying Rambus' writ of mandamus to prevent the production of documents under the fraud exception to the attorney-client privilege).

12.    Plaintiffs Micron Technology and Micron Semiconductor have been direct victims of the Rambus Group's wrongful scheme and have been forced, among other things, to expend valuable resources, including attorneys' fees and management and employee time and

attention, on litigation triggered by Rambus' inappropriate assertion of patent infringement and other claims. Micron thus seeks relief, including treble damages, pursuant to the civil provisions of the federal Racketeering Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961 et seq.), as well as under the statutory conspiracy and civil conspiracy provisions of Virginia Law (Va. Code §§ 18.2-499, -500).

## Parties

13.    Plaintiff Micron Technology is a Delaware corporation with its principal place of business in Idaho. Micron Technology is a semiconductor company that, among other things, develops and manufactures computer memory products in the United States and abroad. Micron Technology has a leading-edge fabricating facility in Manassas, Virginia, at which it has manufactured various kinds of semiconductor memory products, including Dynamic Random Access Memory or "DRAM," a common type of computer memory in a variety of different computing and electronics applications.

14.    Plaintiff Micron Semiconductor is a Delaware corporation with its principal place of business in Idaho. Micron Semiconductor is a wholly-owned subsidiary of Micron Technology. Micron Semiconductor sells computer memory products in Virginia and throughout the United States.

15.    Micron is one of the world's leading developers of DRAM technology. Micron has invested billions of dollars into the research and development of DRAM products. As a result of its innovation, Micron has been awarded over 13,000 U.S. patents and has over 5,000 additional patents pending at the U.S. Patent Office. Micron also has thousands of issued or pending foreign patents. Micron was one of the top 10 recipients of U.S. patents in the world for each of the past six years.

16.    Defendant Rambus is a Delaware corporation with its principal place of business in California.  Rambus asserts patent rights to certain DRAM interface technology.  Rambus' proprietary type of DRAM interface technology is known as "Direct Rambus DRAM" or "RDRAM" technology.  Rambus does not manufacture any products itself, but relies on licensing and litigating over its patent portfolio for revenue.  From its founding, Rambus' business plan has been to obtain patents and either (a) extract supracompetitive licensing fees from, or (b) bring suit against the DRAM manufacturers and producers of related products.  The improper litigation conduct that is at the heart of this lawsuit is and has been a key component of Rambus' business plan and strategy.

## Other Key Persons Involved in the Illegal Scheme

17.    Geoffrey Tate was formerly the chief executive officer of Rambus, and is now the chairman of its board of directors.  This Court found he gave false and misleading testimony regarding Rambus' patent strategies.  *See Rambus, Inc. v. Infineon Techs., AG*, 155 F. Supp. 2d 668, 681 (E.D. Va. 2001).

18.    Richard Crisp was formerly a Rambus employee and subsequently a paid consultant to Rambus.  This Court found that he gave false and misleading testimony regarding Rambus' patent strategies as well.  *See Rambus, Inc. v. Infineon Techs., AG*, 155 F. Supp. 2d 668, 681-82 (E.D. Va. 2001).

19.    Farmwald is a co-founder of Rambus and a listed inventor on the '898 patents.  He was formerly a vice president and chief scientist of Rambus.  He was and is a director on its board.  On the stand *at trial* in Virginia, Farmwald gave demonstrably false and misleading testimony related to the conception of the Rambus patents.

20.     Joel Karp was formerly a vice president of Rambus. In July 2000, he ended his employment with Rambus and became a paid "consultant" to the company. He is one of the primary architects of the three-year document destruction program that Rambus now calls a "document retention" policy.

21.     Neil Steinberg was originally outside counsel to Rambus. In April 1999, he became in-house counsel at Rambus and later became vice president of intellectual property. He is a patent lawyer who practices regularly before the United States Patent and Trademark Office in Virginia. Steinberg provided legal counsel to Rambus while a partner in the law firm Steinberg & Whitt, LLP, which had an address in or near Reston, Virginia. As an attorney, he was professionally bound to exercise his independent judgment, and had duties separate and independent from pursuing the interests of his client, including to obey the law and follow the rules of professional conduct. He too has offered demonstrably false testimony in a case before this Court.

22.     Lester Vincent is or was outside patent prosecution counsel to Rambus. As an attorney, he was professionally bound to exercise his independent judgment, and had duties separate and independent from pursuing the interests of his client, including to obey the law and follow the rules of professional conduct. In response to specific and repeated instructions from Rambus, Vincent substantially purged his Rambus-related files, including patent prosecution files of the patents Rambus asserted against Micron and others in litigation.

23.     These persons had a personal stake in conspiring to injure Micron in its trade or business and derived some direct economic benefit from the alleged illegal conduct. For example, Rambus implemented certain incentive stock plans for success in its litigations. These plans were for its employees and its officers and directors in particular. Under these and

other stock option programs, members of the Rambus Group personally made at least $100

million during the period from 1998 to the present.

24.     On information and belief, other persons also participated in and were an

integral part of the acts and omissions alleged in this complaint.

### Jurisdiction and Venue

25.     This Court has jurisdiction over Micron's claims for violations of the federal

Racketeer Influenced and Corrupt Organizations Act ("Civil RICO"), 18 U.S.C. §§ 1961 et

seq., under 18 U.S.C. §§ 1964(a) and 1964(c) and 28 U.S.C. §§ 1331 and 1337.

26.     This Court also has jurisdiction under 28 U.S.C. § 1367 over Micron's claims

for violations of Virginia Code §§ 18.2-499 and -500.

27.     Venue is proper in this Court pursuant to 18 U.S.C. § 1965 and 28 U.S.C.

§§ 1391 and 1392.  Rambus resides in, can be found in, has an agent in, and/or transacts or has

transacted business in this district.  A substantial number of the transactions, acts, and

omissions at issue were done, overseen, or approved by members of the Rambus Group within

this district, or have resulted in harm within this district.

### Statement of Facts

**A.    DRAM Interface Technology**

28.     Rambus' scheme relates to the technology known as DRAM, which is a

common type of computer memory used in a variety of different computing and electronics

applications.  The most significant application of DRAM is for use as main memory in

personal computer systems.

29.     "DRAM interface technology" includes (a) those portions of a DRAM product

that dictate how the DRAM physically and electrically attaches to, and interoperates with,

complementary products in a computer system (such as memory controllers, chipsets, or

microprocessors), (b) those portions of these complementary products that dictate how the complementary products physically and electrically attach to, and interoperate with, the DRAM, and (c) the physical and electrical communication path in between (a) and (b). The DRAM interface involves only a small fraction of a full DRAM product, whether measured in terms of physical area or technological contribution.

30.    Various types of DRAM interface technologies are in use today, such as "SDRAM," "DDR SDRAM," and "DDR2 SDRAM." SDRAM, DDR SDRAM, and DDR2 SDRAM technology were all developed by an open-industry standard-setting organization consisting of DRAM customers, suppliers, and other firms.

31.    Defendant Rambus promoted and licensed a proprietary type of DRAM interface technology known as "Direct Rambus DRAM" or "RDRAM" technology.

32.    Plaintiff Micron develops DRAM interface technology and manufactures, distributes, and sells DRAM products, including SDRAM, DDR SDRAM, and DDR2 SDRAM products. In addition, Micron has licensed RDRAM technology from Rambus and developed one or more RDRAM products based on that technology. Micron manufactures DRAM products at its fabricating facility in Manassas, Virginia.

**B.    One of Rambus' Co-Founders Invents A Purportedly New DRAM Interface Technology, But While Still Employed By MIPS**

33.    In 1986, Farmwald (later to become one of defendant Rambus' co-founders) was employed by FTL, Inc. ("FTL"). Soon thereafter, MIPS, a company that specialized in the design of high-speed computers, acquired FTL.

34.    In connection with the sale of FTL to MIPS, Farmwald became an employee of MIPS. As a condition of his employment, Farmwald entered an invention and non-disclosure agreement with MIPS. On information and belief, that agreement assigned to MIPS inventions

conceived by Farmwald while he was an employee of MIPS that were related to the business or research and development of MIPS.

35.    While at MIPS, Farmwald worked on the development of computer memory boards, a "backplane bus," and a "bus interface" for a new high-speed computer, known as the R6000. This "bus interface" allowed the memory boards to connect to a common backplane bus. Farmwald worked to research and develop a memory interface that could keep pace with the R6000 computer.

36.    Farmwald perceived there to be a performance gap between the throughput of the computer's processor and that of its memory, sometimes referred to as a supposed "memory bottleneck problem." While at MIPS, Farmwald undertook to research a possible solution to this "memory bottleneck problem" by shortening the physical distance between processor and memory and creating a "little backplane bus." This work, and other work performed by Farmwald at MIPS, formed the very basis of the inventions in his '898 application.

37.    At trial in this Court in the *Infineon* matter in 2001, Farmwald and Mark Horowitz, a co-founder of Rambus and a listed inventor on the Rambus patents, testified (and counsel for Rambus asserted) that in October 1988, Farmwald met with Mark Horowitz and Mark Johnson at a restaurant, St. Michael's Alley, in Palo Alto, California, and discussed the "bus interface" that Farmwald claimed he had conceived.

38.    Farmwald and Horowitz further testified (and counsel for Rambus asserted) that this "St. Michael's Alley" meeting occurred after Farmwald left MIPS and occurred while Farmwald was employed as a professor at the University of Illinois.

39.    That testimony is false.  At the time of the "St. Michael's Alley" meeting

Farmwald was still an employee of MIPS and was still subject to his MIPS assignment

obligations.  In fact, Farmwald did not leave his full-time employment at MIPS until

December 1988 – nearly two months after the "St. Michael's Alley" meeting.  During that

time, Farmwald's invention assignment obligations to MIPS remained intact.

40.    Nor was Farmwald employed by the University of Illinois at that time.

Farmwald did not begin his employment with the University of Illinois until November 1988 –

after the St. Michael's Alley meeting.

41.    Farmwald's invention of the purportedly new DRAM interface thus occurred

while Farmwald was employed by MIPS.  Farmwald's invention of the purportedly new

DRAM interface was directly related to MIPS' business and research and development.  In

fact, MIPS had already used, researched and developed various features of this invention.

Pursuant to Farmwald's assignment obligations to MIPS, all rights to those inventions were

assigned to MIPS.

42.    Recently-produced documents confirm not only that Farmwald was aware that

he developed his ideas for the '898 patents while at MIPS, but also that Farmwald took

affirmative steps to hide that fact from MIPS.  For example, in August 2005, Rambus

produced to Micron for the first time an e-mail exchange between Farmwald and Crisp (which,

on information and belief, Rambus had withheld in its entirety from Infineon) in which Crisp

asks Farmwald about whether Farmwald's inventions predated similar work done in the late

1980's by a group known as Scalable Coherent Interface or "SCI."   In support of his argument

that his inventions predated SCI's work, Farmwald flatly admits, "I actually had the idea for

Rambus while still at MIPS in very early 1988, possibly even 1987, but kept quiet about it until I got to Univ. of Illinois (for obvious reasons)."

43.    Farmwald and Horowitz founded Rambus in March 1990 and filed Rambus' first patent application, the '898 application, on this purportedly new DRAM interface in April 1990.  Having "kept quiet" about his inventions that belonged to MIPS, Farmwald then misrepresented to the U.S. Patent and Trademark Office that "no assignment . . . affecting the rights and property herein conveyed has been made to others by the undersigned."  Rambus has since been issued numerous patents that are based on, and claim priority to, the '898 application.  Nearly all of the patents Rambus has asserted and continues to assert against Micron and the other DRAM manufacturers are based on the '898 application.

**C.    The Evidence Destruction Scheme**

44.    By at least 1998, Rambus and its senior management – including, among others, Farmwald, Horowitz, then chief executive officer Geoffrey Tate, then vice president Joel Karp, and employee Richard Crisp – developed a plan to extract licensing fees for Rambus on a vast array of current and future DRAM products, including SDRAM and DDR SDRAM products.  This plan was developed in coordination with Neil Steinberg, a former outside counsel to Rambus who in April 1999 became in-house patent counsel and later Rambus' vice president for intellectual property, and was executed in part by Lester Vincent, Rambus' patent prosecution counsel.

45.    Consistent with its prior business strategy, Rambus' plan was to seek fees based on a percentage of the value of the entire DRAM product – rather than the fraction of a DRAM product associated with the DRAM interface, where Rambus' claimed inventive contribution lay.  From at least 1998, Rambus understood that the fees it planned to demand were so high that they would inevitably lead to litigation.

46.     Beginning in at least early 1998, Rambus and its management developed a plan to file lawsuits against DRAM manufacturers, such as plaintiff Micron, Infineon, and Hynix. A contemporaneous Rambus document set out the plan: "Get all infringers to license our IP with royalties, RDRAM (if it is a broad license) OR sue." They specifically identified the Eastern District of Virginia as an ideal forum.

47.     At various times, Rambus contemplated complaints based on patent infringement, breach of contract, fraud, unfair competition, and antitrust violations.

48.     Rambus' stated goal was to use litigation to "[c]ollect royalties on all DRAM and controllers forever."

49.     Rambus and its management knew, however, that any effort to assert patent rights related to DRAM interface technology would be threatened if harmful evidence were available in discovery. Thus, Rambus and its management, including members of the Rambus Group, embarked in early 1998 on a scheme to obstruct justice by destroying such evidence. Rambus vice president Karp prepared a purported "document retention" policy for this purpose. Contemporaneous documents show that the effort to identify and destroy relevant evidence was often described as the company's "licensing/litigation" or "licensing and litigation" strategy.

**"Shred Day" 1998**

50.     The document destruction program got underway by the summer of 1998, when Karp and Rambus' then outside counsel presented the new document program to Rambus' employees. The presentation included slideshows explaining how the program would work.

51.     During this period, Rambus and its management implemented a destruction program that resulted in the eradication of large numbers of electronic files, including all the backup tapes for the Macintosh computers in use during the first years of Rambus' existence.

In July 1998, Joel Karp at Rambus sent over 1,000 backup tapes to an outside vendor with specific instructions to have those backup tapes "demagnetized" – that is, to have them erased so that the information on those tapes would be permanently destroyed.

52.     Next, in August 1998, Rambus and its management arranged for burlap bags to be distributed to all Rambus employees, with directions that the employees collect for shredding various categories of documents relevant to the patents and patent infringement claims that Rambus was planning to assert against DRAM manufacturers, including Micron. These categories included:

(a)     Rambus' prosecution of its patents;

(b)     the relationship of Rambus' patent applications and pending claims to industry standards;

(c)     presentations to Rambus' board of directors regarding intellectual property and assertion/litigation plans;

(d)     potentially damaging or invalidating prior art related to patents asserted against DRAM manufacturers, including Micron, as part of Rambus' litigation strategy; and

(e)     Rambus' draft license agreements and documents related to the negotiations for such license agreements.

53.     Then, on September 3, 1998, Rambus arranged for a truck from a private shredding company to arrive at Rambus' headquarters to pick up the documents that Rambus' employees had collected in the previously-distributed burlap bags. So much material was collected – 185 burlap sacks and 60 additional boxes of documents – that the truck had to return another day to haul it all away.

54. Multiple internal Rambus emails refer to September 3, 1998 as "Shred Day." At the conclusion of "Shred Day," Rambus held a party with beer and pizza to celebrate the completion of the shredding project.

55. Following "Shred Day," Rambus vice president Karp conducted "spot checks" to determine whether employees had fully complied with the instructions to collect, bag and destroy the listed categories of documents.

56. Sworn testimony confirms that the goals of the document destruction included rendering the documents unavailable in upcoming litigation. On April 14, 2001, Rambus vice president of engineering Allen Roberts testified that Rambus vice president Karp had directed him to purge his files at least in part because "such materials are discoverable in subsequent litigations."

57. Tony Diepenbrock, a lawyer in Rambus' in-house legal department, testified on April 11, 2001 that he understood that one of the reasons behind "Shred Day" was that "some of that stuff is discoverable."

**"Shred Day" 1999**

58. Rambus, its management and others continued their evidence destruction program in 1999. They focused on the destruction of evidence that Rambus knew would be at the heart of any antitrust and patent lawsuits that it intended to bring or suspected might be brought against it if its scheme succeeded.

59. A June 27, 1999 document identifying Rambus' goals for the third quarter of 1999 listed as goals under the heading "Licensing/Litigation Readiness":

> "E. Prepare litigation strategy against 1 of 3 manufacturers (re: 3D)
>
> "F. Ready for Litigation with 30 days notice
>
> "G. Organize 1999 shredding party at Rambus."

60.    Consistent with these "goals," Rambus, its management, and others organized a second document shredding event on August 29, 1999 – during which Rambus destroyed an additional 150 burlap bags filled with documents (the equivalent of 188 banker's boxes of documents).

**"Shred Day" 2000**

61.    In January 2000, Rambus filed suit against Hitachi, the first of several lawsuits against DRAM manufacturers.  Soon thereafter, Rambus asserted patent infringement claims against Infineon and several other DRAM manufacturers, including Micron, in the U.S. federal courts, as well as courts in Italy, Germany, France, and the United Kingdom.

62.    Shortly before commencing the litigation against Infineon, Rambus instructed Lester Vincent, Rambus' former outside patent prosecution counsel who had drafted many of Rambus' patent claims, to destroy additional evidence, including documents relating to certain of the patents asserted against Infineon and still being asserted against Micron.

63.    In the spring of 2000, Cecelia Gonzalez, Rambus' outside counsel in the litigation against Hitachi, asked Rambus' then-intellectual property vice president Neil Steinberg why she could not locate within Rambus' files entire categories of documents relevant to the case.  Steinberg told Gonzalez that there had been a large document shredding campaign in 1998.  Gonzales told Steinberg that Rambus had a duty to maintain documents and could not destroy any materials pertaining to the litigation.

64.    Yet, in December 2000, while Rambus was litigating against Micron and other companies on antitrust, fraud, and patent claims, and while pretrial discovery was underway in connection with the then-scheduled 2001 trial in Rambus' case against Infineon, Rambus, its management, and others undertook a third shredding event.  In a repeat of the "Shred Days" in

1998 and 1999, the December 2000 "Shred Day" resulted in the destruction of 460 burlap bags full of documents – the equivalent of 575 banker's boxes.

**D.    The U.S. District Court for the Eastern District of Virginia Concludes That Rambus' Document Destruction Scheme Was Intended to Destroy Discoverable Documents**

65.    In connection with Rambus' litigation against Infineon, Rambus sought to cover up the details of its document destruction by asserting privilege over thousands of documents.  This Court conducted an *in camera* review of 4,673 documents as to which Rambus had claimed privilege, and concluded that Rambus' document destruction plan was intended "to destroy discoverable documents as part of its litigation strategy." *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 298 (E.D. Va. 2004).

66.    In an earlier opinion in the case, the Court noted as well that Rambus' "document retention policy" had been implemented, at least in part, "for the purpose of getting rid of documents that might be harmful in litigation." *Rambus, Inc. v. Infineon Techs. AG*, 155 F. Supp. 2d 668, 682 (E.D. Va. 2001).

67.    The Court found that the "crime/fraud" exception was applicable to Rambus' assertions of attorney-client and work product privilege and ordered Rambus to produce documents regarding Rambus' development and implementation of its document destruction program. *Id.* at 680.

**E.    Rambus and Its Management Provide False Testimony to Hide the Document Destruction Scheme**

68.    In connection with pending lawsuits against Micron and other DRAM manufacturers, including Rambus' lawsuit against Infineon in the Eastern District of Virginia, Rambus' management testified in a false or misleading manner to cover up the company's document destruction.

69.     For example, in the *Micron* case in Delaware, Neil Steinberg, formerly outside counsel to Rambus and later its in-house counsel and vice president of intellectual property, falsely testified under oath on August 1, 2001 that "Shred Day 1998" was the only time when Rambus employees were given burlap bags to collect documents for shredding.  Mr. Steinberg so testified, despite admitting that he had prepared for his testimony by interviewing a number of Rambus employees who had been involved in the document destruction program, including Geoffrey Tate, David Mooring, Richard Crisp, Allen Roberts, and representatives from Rambus' information technology group, all of whom would have known the falsity of the testimony.

70.     Mr. Steinberg also testified falsely that (a) no slide presentation was shown to Rambus employees regarding its document destruction policy and (b) no instructions regarding the destruction of documents were provided to Rambus employees during that meeting. Documents that Rambus attempted to withhold under claims of privilege (but which Rambus was later forced to produce) establish that Rambus employees had been shown slide presentations that instructed them to destroy e-mails and other evidence.

71.     Robert Kramer, Rambus' 30(b)(6) corporate representative in the *Hynix* case in California, and Rambus' current director of litigation, like Mr. Steinberg, falsely testified that "Shred Day" 1998 had been the sole instance when Rambus employees had used burlap bags to collect documents for shredding.  Mr. Kramer also falsely testified that Rambus' board of directors had received no presentations regarding "Shred Days."  In addition, Mr. Kramer falsely testified that Rambus had not produced certain documents in litigation simply because those documents had been "corrupted," when in fact Rambus had simply withheld them from production.

72.     Richard Crisp, another Rambus employee, testified in his first deposition in the *Infineon* case that he "never, ever" participated in Rambus' patent drafting efforts. However, when he was confronted with documents obtained after the piercing of the attorney-client privilege, he was forced to admit that he had directed which patent claims should be filed. This Court found Mr. Crisp's testimony to be false or misleading. *See Rambus, Inc. v. Infineon Techs., AG*, 155 F. Supp. 2d 668, 681 (E.D. Va. 2001).

73.     At a May 2004 deposition, Mr. Crisp refused to answer, on the basis of attorney-client privilege, questions about what Daniel Johnson, Jr., Rambus' outside counsel, said about document retention and destruction at Rambus. After the Virginia Court ordered Mr. Crisp to answer questions on that topic, Mr. Crisp was deposed the following October and asked those questions again. But rather than comply with the Court's order, Mr. Crisp claimed that he had forgotten what he "remembered in May 2004 regarding the comments by Mr. Johnson" merely because five months had gone by.

74.     Geoffrey Tate, then Rambus' chief executive officer, also testified in his first deposition that he did not believe that Rambus drafted claims to cover certain DRAM technology. Tate even testified that he did not know whether he was aware that patent claims could be modified. At trial, however, he admitted, upon being confronted with belatedly-obtained impeaching documents, that he knew that Rambus was amending its patent applications to cover that same DRAM technology. *See Rambus, Inc. v. Infineon Techs., AG*, 155 F. Supp. 2d 668, 681-82 (E.D. Va. 2001).

75.     On March 12, 2001, following this Court's order piercing the attorney-client privilege under the crime-fraud exception, Rambus took the extraordinary step of filing a mandamus petition with the Federal Circuit Court of Appeals seeking to vacate this Court's

order and prevent the disclosure of what it knew to be damning documents. Consistent with Rambus' previous testimony – including the testimony of Tate and Crisp – Rambus' Federal Circuit brief vehemently denied the conduct underlying this Court's order, stating that Crisp did not counsel any lawyers or other Rambus employees regarding pending patent applications, and that he did not know Rambus had pending patent applications relating to SDRAM at the time. Only after the Federal Circuit denied mandamus relief and Rambus was forced to turn over these harmful documents did Rambus' position and testimony change.

76.    Even after the District Court's ruling in the *Infineon* case, Rambus and its management have continued to misrepresent the facts of the company's document shredding.

### F.    The Document Destruction Scheme and Subsequent False Cover-Up Testimony Involved Numerous Violations of Federal, Virginia, and California Law.

77.    The document destruction scheme, and the subsequent proffering of knowingly false testimony to hide that scheme, are grounds for criminal sanctions as felonies under 18 U.S.C. §§ 1341, 1343, 1503, and 1512, as misdemeanors and/or felonies under Va. Code §§ 18.2-434, -436, and -460, and as misdemeanors under Cal. Penal Code § 135.

### G.    Rambus Co-Founder Farmwald Falsely Testified About the Timing of His Inventions

78.    In various litigations, including the litigation against Infineon in the Eastern District of Virginia, Rambus co-founder Farmwald has falsely testified about the timing of his inventions of DRAM interface technology. Farmwald's intent has been to conceal that he conceived of and developed those inventions while still employed by MIPS, and that, by operation of an invention assignment obligation, he had in fact assigned to MIPS the ownership of those inventions.

79.    Farmwald falsely testified in the *Infineon* case that he was employed at the University of Illinois and no longer at MIPS at the time of the October 1988 meeting in which

he described his DRAM interface inventions to Messrs. Horowitz and Johnson. However, Farmwald did not terminate his employment with MIPS until December 16, 1988 and was therefore still bound by his assignment obligations at the time he conceived of the '898 inventions.

80.     Rambus improperly withheld from Micron and other litigants evidence that would refute Rambus' false conception and ownership story. For example, Rambus possessed backup tapes containing information showing that Farmwald developed the '898 inventions while still employed at MIPS. Yet Rambus withheld these documents from Micron for nearly five years of litigation and only recently produced them. Infineon did not ever benefit from having this document. Rambus discovered over 1,000 backup tapes during the *Infineon* litigation, including tapes containing information relevant to the ownership of the '898 family, and on information and belief Rambus never informed the Court nor Infineon of the existence of those tapes. Instead, it rushed a settlement with Infineon that resulted in substantial payments to Rambus.

81.     Farmwald also falsely testified that he joined the University of Illinois in mid-1988, also before his October 1988 meeting with Horowitz and Johnson. In fact, Farmwald joined the University of Illinois faculty on November 9, 1988.

82.     Farmwald's perjurious testimony, and Rambus' purposeful effort to withhold from discovery documents that would have established the falsity of the testimony, are grounds for criminal sanctions as felonies under 18 U.S.C. §§ 1341, 1343, 1503, and 1512, as misdemeanors and/or felonies under Va. Code §§ 18.2-434, -436, and -460, and as misdemeanors under Cal. Penal Code § 135.

## H.    Equitable Tolling and Continuing Conspiracy

83.    Micron's discovery of the wrongful conduct alleged in this complaint was delayed by the fraudulent concealment, continuing deceptive acts, practices, and omissions, and continuing conspiracy of Rambus and its management, including members of the Rambus Group.

84.    Until recently, Micron did not know the fact of, and/or the extent of, the wrongful conduct alleged herein.  The evidence referenced in this complaint was at all relevant times in the possession, custody, and control of Rambus and Rambus' management.

85.    The communications and meetings concerning the wrongful conduct by and between these persons, as specifically alleged in this complaint, were conducted in secret, were maintained as confidential, and could not, in the exercise of reasonable diligence, have been discovered earlier by Micron.

86.    Rambus and its management took affirmative steps to conceal their wrongful conduct, as specifically alleged in this complaint.  They fraudulently concealed their wrongful conduct by various means and methods not reasonably discoverable by Micron.

87.    The wrongful conduct, as specifically alleged in this complaint, also involved multiple, continuous, deceptive acts, practices, and omissions by Rambus and its management over a period of many years, and there is a likelihood that this conduct is continuing.  Micron is informed and believes that Rambus has been continuing and is still performing overt acts in furtherance of the illegal conduct.

88.    Because the illegal conduct, as specifically alleged in this complaint, was kept secret by Rambus and its management, Micron did not know of defendant's secret agreements.

89.    Micron could not have discovered the illegal conduct at an earlier date by the exercise of due diligence because of defendant's deceptive practices and techniques of secrecy.

90.    As a result of the fraudulent concealment by Rambus and Rambus'

management, all applicable statutes of limitations have been tolled.

## Count I

### Conducting the Affairs of the
### "Corrupt Litigation Enterprise"
### in Violation of 18 U.S.C. § 1962(c) of Civil RICO

91.    Micron realleges and incorporates by reference the preceding allegations of this

complaint.

**Rambus, Rambus' Management, Tate, Karp, Steinberg, Vincent and Crisp and/or
Others Repeatedly Destroyed Evidence They Knew Would Have to Be Produced in
the Litigations**

92.    In an effort to eliminate the threat of known problems with the '898 family,

Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or

others conspired to destroy or suppress material evidence and submit false testimony to hide or

deny such problems.

93.    As part of this conspiracy, Rambus, Rambus' management, Tate, Crisp,

Farmwald, Karp, Steinberg, Vincent, and/or others instituted a document destruction policy

with a purpose and effect to was to intentionally destroy documents they knew would be

discoverable and probative in numerous litigations and official proceedings.

94.    A key part of this strategy to dispose of critical evidence and to hide that fact

from Rambus' litigation adversaries was the deliberate decision not to maintain any record of

which documents were destroyed, in an attempt to prevent litigation adversaries from

establishing a nexus between specific documents and claims or defenses in those litigations.

95.    The document destruction took place at the same time they were planning or

already conducting their comprehensive litigation strategy, when Rambus had a clear duty to

preserve these documents for use as evidence.

96.     Believing they had substantially destroyed the harmful impeaching documents, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others then repeatedly submitted false testimony to this and other courts.

### Rambus, Rambus' Management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent and/or Others Used Instrumentalities of Interstate and Foreign Commerce

97.     As an integral part of the continuing conspiracy and course of conduct described above, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others repeatedly and continuously used and affected the instrumentalities of interstate commerce, including the mails, wires, overnight delivery services, air travel, and other forms of interstate commerce in the United States within the meaning of 18 U.S.C. § 1962.

98.     Their conduct, acts, and omissions were an integral part of the overall pattern and practices described in this complaint, including using the facilities of United States interstate commerce for their scheme to pervert the ends of justice and to defraud Micron and other companies by pressing false claims and suppressing relevant, discoverable evidence in litigation.

99.     The conduct, acts, and omissions of Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others set forth above were an integral part of the overall pattern and practices described herein, including obstructing justice and prosecuting improper litigation using United States interstate commerce to attempt to wrongfully collect potentially billions of dollars from Micron and other manufacturers.

100.     As an integral part and result of this conduct and these acts and omissions intended to deprive the litigations of their legitimacy, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others knowingly:

(a)    used the mails in U.S. or foreign commerce to commit one or more frauds in violation of 18 U.S.C. § 1341;

(b)    used the wires in U.S. or foreign commerce to commit one or more frauds in violation of 18 U.S.C. § 1343;

(c)    corruptly endeavored to and did influence and impede one or more officers, namely, judges, of the courts of the United States in violation of 18 U.S.C. § 1503(a);

(d)    corruptly endeavored to and did influence, obstruct, and impede the due administration of justice in the courts of the United States in violation of 18 U.S.C. § 1503(a);

(e)    knowingly and corruptly attempted to and did persuade one or more other persons and engaged in misleading conduct toward those persons with intent to influence or prevent the testimony of those persons in one or more official proceedings in violation of 18 U.S.C. § 1512(b);

(f)    knowingly and corruptly attempted to and did persuade one or more other persons and engaged in misleading conduct toward those persons with intent to cause or induce them to withhold testimony and withhold records, documents, and other objects from an official proceeding in violation of 18 U.S.C. § 1512(b);

(g)    knowingly and corruptly attempted to and did persuade one or more other persons and engaged in misleading conduct toward those persons with intent to alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding in violation of 18 U.S.C. § 1512(b);

(h)    knowingly and corruptly attempted to and did alter, destroy, mutilate, or conceal a record, document, or other object with the intent to impair the object's integrity or availability for use in an official proceeding in violation of 18 U.S.C. § 1512(c); and/or

      (i)     knowingly and corruptly attempted to and did obstruct, influence, and impede one or more official proceedings in violation of 18 U.S.C. § 1512(c).

      101.    All these acts constitute RICO "predicate acts" under 18 U.S.C. § 1961, and were intended to and did deprive the litigations of their legitimacy.

      102.    In the course of and as an integral part of their unlawful conduct and conspiracy, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others communicated using the mails and wires in interstate commerce to carry out their unlawful conduct and conspiracy, including sending e-mails, using the telephones, and sending materials through the mails and through private interstate carriers to destroy documents and conceal their destruction of documents.  Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others made repeated filings in this Court and other courts that used these interstate facilities as an integral and necessary part of their conduct and conspiracy.

### Rambus, Rambus' Management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent and/or Other Persons Engaged in a "Pattern" of Racketeering Activity

      103.    The conduct of Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others involved substantially more than "at least two acts of racketeering activity . . . the last of which occurred within ten years after the commission of a prior act of racketeering activity" and therefore constituted a "pattern of racketeering" within the meaning of 18 U.S.C. § 1961(b).

      104.    As set forth above, this pattern consisted of repeated, continuous acts that had the same or similar purposes, results, participants, victims, or methods of commission, and are interrelated by distinguishing characteristics rather than isolated events.

105.    As also set forth above, this pattern lasted for a significant period of time, from at least early 1998 and continuing to the present.  To the extent the partial discovery of the scheme has caused Rambus and other participants in the enterprise to curtail somewhat or modify their scheme, absent such discovery, their scheme would have continued indefinitely into the future on as broad and substantial a basis as it had prior to partial discovery.

106.    It was the purpose of the pattern and practice to deprive Micron and other parties with which Rambus was litigating or threatening to litigate of crucial, relevant evidence, and to obstruct and hinder the due administration of justice in the courts of the United States by depriving them of material evidence relating to the issues in the litigation in which they were engaged.  By depriving the litigations of their legitimacy (by, among other things, avoiding an honest determination of the merits) Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others expected to obtain unwarranted sums, either as a result of perverted judgments or extortionate settlements based on an incomplete record of evidence in, among other ways:

(a)    hiding evidence of Rambus' anticompetitive conduct;

(b)    hiding the true state of affairs of Rambus' patents;

(c)    hiding the true state of affairs of Rambus' other financial transactions and business operations;

(d)    making it appear that Rambus had legitimate patent and other intellectual property rights;

(e)    making it appear that Rambus had legitimate contractual rights;

(f)    making it appear that Rambus' litigation claims were more meritorious than they actually were;

27

(g)    attempting to obtain or extort potentially billions of dollars from Micron and other parties based on a false record and perverted evidence;

(h)    using false and perjured testimony to hide its destruction of documents;

(i)    using false and perjured testimony to mislead the courts; and/or

(j)    enriching Rambus and the others, including its officers and employees, through these acts and fraudulent practices.

107.    As part of their pattern and practice, and in furtherance of their illegal and fraudulent acts, from at least as early as 1998 to the present, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others deceived the courts and other parties with whom they were litigating or threatening to litigate.

108.    Beginning at least as early as 1998 and continuing to the present, in furtherance of and for the purpose of executing and attempting to execute the described schemes and artifices to defraud and to obstruct justice, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others on numerous occasions used and caused to be used wire communications in interstate and foreign commerce, by both making and causing to be made wire communications.

109.    Each such use of a wire communication in connection with the described schemes and artifices to defraud and to obstruct justice by means of false pretenses constitutes a separate and distinct violation of 18 U.S.C. § 1343.

110.    Rambus, Tate, Crisp, Farmwald, Karp, Steinberg, and Vincent are each a United States person within the meaning of 18 U.S.C. § 1957(d). A substantial part of the activities described above was conducted within the United States or by a United States

person, each was engaged in for the purposes described in the preceding paragraphs, and each constitutes a separate and distinct activity indictable under 18 U.S.C. §§ 1956, 1957, and 2314.

111.    From at least 1998 and continuing to the present, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others on numerous occasions repeatedly engaged in acts indictable under 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), 18 U.S.C. § 1503 (relating to obstruction of justice), and/or 18 U.S.C. § 1512 (relating to further obstruction of justice), and/or used the United States mails as well as wire and other communications in interstate commerce in connection with these acts, and thereby continually engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1)(B) in the course of the described criminal schemes.

112.    The repeated violations of 18 U.S.C. §§ 1341, 1343, 1503, and 1512 by Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others extended over a period of years and involved distinct and independent criminal acts. They were neither isolated nor sporadic events, but involved the regular and repeated violation of law to accomplish their desired ends in the course of the continuing business of the "Corrupt Litigation Enterprise."

113.    These acts were related to each other by virtue of (a) common participants (Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, and Vincent, as well Rambus' inside and outside counsel), (b) common victims (the DRAM manufacturers), (c) common methods of commission (through the same course of destroying relevant evidence and discoverable documents and then lying to cover up this destruction), and (d) a common purpose and common result (of suing to extract potentially billions of dollars from Micron and other persons while concealing their criminal activities).

114.    As such, this conduct constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

115.    These repeated and continuing violations of the provisions of 18 U.S.C. § 1961(5) cited above were neither isolated nor sporadic events, but involved a callous and calculated series of repeated and systematic violations of law in order to conceal and promote criminal activity in the course of the continuing business of the "Corrupt Litigation Enterprise." These activities therefore constitute a further component of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

116.    These violations of 18 U.S.C. § 1962(c) caused Micron to suffer direct injury to its business and property.

**Rambus, Rambus' Management, Tate, Crisp, Farmwald, Karp, Steinberg, and Vincent Operated the "Corrupt Litigation Enterprise"**

117.    Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, and Vincent were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

118.    Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others operated and controlled the "enterprise" consisting of an association in fact of themselves and Rambus (the "Corrupt Litigation Enterprise") within the meaning of 18 U.S.C. § 1961(4).

119.    It was their common purpose in using and operating the association in fact of the "Corrupt Litigation Enterprise" to obstruct justice and commit the other predicate acts set forth above to deprive the litigations of their legitimacy so that Rambus and its co-conspirators could extract potentially billions of dollars in judgments or settlements from Micron and other DRAM manufacturers and to engage in the other acts and omissions described above that were

designed to conceal their wrongful acts and prevent them from being discovered, all as set forth in detail above.

120.    The association in fact of the "Corrupt Litigation Enterprise" was and is an enterprise distinct from Rambus itself.

**Rambus, Rambus' Management, Tate, Crisp, Farmwald, Karp, Steinberg, and Vincent Conducted the Affairs of the "Corrupt Litigation Enterprise" Through a Pattern of Racketeering**

121.    The "Corrupt Litigation Enterprise" had the purpose of and was used for:

(a)    hiding evidence of Rambus' anticompetitive conduct;

(b)    hiding the true state of affairs of Rambus' patents;

(c)    hiding the true state of affairs of Rambus' other financial transactions and business operations;

(d)    making it appear that Rambus had legitimate patent and other intellectual property rights;

(e)    making it appear that Rambus had legitimate contractual rights;

(f)    making it appear that Rambus' litigation claims were more meritorious than they actually were;

(g)    attempting to obtain or extort potentially billions of dollars from Micron and other parties based on a false record and perverted evidence;

(h)    using false and perjured testimony to hide its destruction of documents;

(i)    using false and perjured testimony to mislead the courts; and

(j)    enriching Rambus and others, including its officers and employees, through these acts and fraudulent practices.

122.    Throughout its existence, the "Corrupt Litigation Enterprise" had a continuity of structure and personnel, including (a) various members of Rambus' management, (b)

31

Rambus' in-house and outside counsel involved in its litigation, (c) one or more of Tate, Crisp, Farmwald, Karp, Steinberg, and/or Vincent, and (d) other persons as yet unidentified.

123.    Throughout its existence, the "Corrupt Litigation Enterprise" had an ascertainable structure (the interrelated association in fact) distinct from that inherent in the pattern of racketeering (the destruction of documents and pursuit of improper litigation) and associated through time, joined in purpose and organized in a manner amenable to hierarchical or consensual decision-making in the plan and conduct to destroy documents relevant to Rambus' improper litigation while at the same time prosecuting that litigation, all for the unlawful purposes and with the unlawful effects described in this complaint.

124.    Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others therefore managed, operated, conducted and participated in the conduct of the affairs of the "Corrupt Litigation Enterprise" through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

### Rambus, Rambus' Management, Tate, Crisp, Farmwald, Karp, Steinberg, and Vincent Acted With Criminal Intent

125.    The conduct of Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others was not merely reckless or negligent.

126.    Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others engaged in the conduct, acts, and omissions described above willfully and with actual knowledge of their illegality and actual purpose to the detriment of the DRAM manufacturers, including Micron.

**Micron Has Been Directly Injured in Its Business and Property**

127.    Micron has been directly injured in its business and property by reason of these persons' violation of 18 U.S.C. § 1962(c).  Its losses, in an amount to be proven at trial, are a direct result of the conspiracy set forth above.

## Count II

### Conspiring to Conduct the Affairs of the "Corrupt Litigation Enterprise" in Violation of 18 U.S.C. § 1962(d) of Civil RICO

128.    Micron realleges and incorporates by reference the preceding allegations of this complaint.

129.    By the conduct, acts and omissions set forth in detail above, from at least 1998 and continuing to the present, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others agreed and conspired to manage, operate, conduct, and participate in the conduct of the affairs of the "Corrupt Litigation Enterprise" through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(d).

130.    From at least 1998 and continuing to the present, Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others, being persons intimately involved in transactions and the affairs of the "Corrupt Litigation Enterprise" – who were engaged in, and the activities of which affected, interstate commerce – unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the "Corrupt Litigation Enterprise" through a pattern of racketeering activity, all in violation of 18 U.S.C. § 1962(d).

131.    Part of this conspiracy was that Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others committed and agreed to commit two or

more (and numerous) repeated fraudulent and illegal racketeering acts and conducted and

agreed to conduct the affairs of the "Corrupt Litigation Enterprise" through the pattern of

racketeering activity in violation of 18 U.S.C. § 1962(c) described above.

132.    In furtherance of the conspiracy and to effect the objects thereof, Rambus,

Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or Others

committed and caused to be committed a series of overt acts, including those specifically

alleged in paragraph 106 above.

133.    Micron has been directly injured in its business and property by reason of these

persons' violation of 18 U.S.C. § 1962(d).  Its losses, in an amount to be proven at trial, are a

direct result of the conspiracy set forth above.

### Count III

### Statutory and Civil Conspiracy
### (Violation of Va. Code §§ 18.2-499, -500 (1950, as amended))

134.    Micron realleges and incorporates by reference the preceding allegations of this

complaint.

135.    Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg,

Vincent, and/or others agreed to and did combine, associate, agree, mutually undertake, or

concert together for the purpose of willfully and maliciously injuring Micron in its reputation,

trade, and business within the meaning of Va. Code §§ 18.2-499 and -500 (1950, as amended).

Each of these persons had a personal stake in conspiring to injure Micron in its trade or

business and derived some direct economic benefit from the alleged illegal conduct.  For

example, Rambus implemented certain incentive stock plans for success in its litigations.

These plans were for its employees and Geoffrey Tate in particular.

136.    Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others combined, by their concerted action, to accomplish their criminal and unlawful purposes set forth above.

137.    Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others combined, by their concerted action, to accomplish their purposes set forth above by criminal or unlawful means.

138.    Rambus, Rambus' management, Tate, Crisp, Farmwald, Karp, Steinberg, Vincent, and/or others combined together to effect a preconceived plan and unity of design and purpose to accomplish those illegal goals specifically alleged in paragraphs 106 and 132 above.

139.    Micron has been directly and proximately injured in its business and property by reason of the violation by the defendant of Va. Code §§ 18.2-499 and -500 (1950, as amended) and their engagement in a civil conspiracy in an amount to be proven at trial.

**Prayer for Relief**

Wherefore, plaintiffs Micron Technology and Micron Semiconductor pray for judgment against defendant for:

1.      An award of compensatory and punitive damages;

2.      An award of enhanced damages, up to and including trebling of Micron's damages, pursuant to 18 U.S.C. § 1964 for Rambus' violations of 18 U.S.C. §§ 1961 et seq.; Va. Code § 18.2-500 for Rambus' violations of Va. Code § 18.2-499; and/or as otherwise permitted by law;

3.      The restitution of all amounts that Rambus has received from Micron as a result of its wrongful conduct;

4.      An award of the costs and expenses of suit, including attorneys' fees, pursuant to 18 U.S.C. § 1964 for Rambus' violations of 18 U.S.C. §§ 1961 et seq.; Va. Code § 18.2-500 for Rambus' violations of Va. Code § 18.2-499; and/or as otherwise permitted by law;

5.      An award of pre-judgment and post-judgment interest at the maximum legal rate;

6.      A permanent injunction against the illegal acts and practices alleged herein, including the pursuit of patent, antitrust, and other legal claims as to which relevant evidence was spoliated by Rambus' management and others, as permitted by law; and

7.    Such other and further relief as the Court may deem just and proper.

Dated: February 2], 2006

HUGH M. FAIN, III (VSB No. 26494)
DANA D. MCDANIEL (VSB No. 25419)
M.F. CONNELL
   MULLINS, JR. (VSB No. 47213)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia  23219
Telephone:  (804) 697-2000
Facsimile:  (804) 697-2100

JOHN B. QUINN
WILLIAM C. PRICE
JON R. STEIGER
DOMINIC SURPRENANT
DIANE C. HUTNYAN
QUINN EMANUEL URQUHART
   OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
(motions for admission
   pro hac vice to be filed)

Counsel for Plaintiffs
Micron Technology, Inc. and
Micron Semiconductor Products, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICRON TECHNOLOGY, INC.,        )
and                             )
MICRON SEMICONDUCTOR PRODUCTS, INC.,  )
                                )
                    Plaintiff,  )
                                )   Civil Action No.: 3:06CV132
v.                              )
                                )
RAMBUS, INC., a California Corporation,  )
                                )
                    Defendant.  )
                                )
                                )

## FINANCIAL INTEREST DISCLOSURE STATEMENT

Pursuant to Local Rule 7.1 of the Eastern District of Virginia and to enable Judges and

Magistrate Judges to evaluate possible disqualifications or recusal, the undersigned counsel for

Micron Technology, Inc. in the above captioned action, certifies that there are no parents, trusts,

subsidiaries and/or affiliates of said party that have issued shares or debt securities to the public.

Dated:  February 21, 2006                Respectfully submitted,

                                         MICRON TECHNOLOGY, INC.

                                         By: _____
                                                    Counsel

HUGH M. FAIN, III (VSB No. 26494)
DANA D. MCDANIEL (VSB No. 25419)
M.F. CONNELL
   MULLINS, JR. (VSB No. 47213)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:  (804) 697-2000
Facsimile:   (804) 697-2100





JOHN B. QUINN
WILLIAM C. PRICE
JON R. STEIGER
DOMINIC SURPRENANT
DIANE C. HUTNYAN
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
(motions for admission
  pro hac vice to be filed)

Counsel for Plaintiffs
Micron Technology, Inc. and
Micron Semiconductor Products, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICRON TECHNOLOGY, INC.,            )
and                                  )
MICRON SEMICONDUCTOR PRODUCTS, INC., )
                                     )
                     Plaintiff,      )
v.                                   )    Civil Action No.: 3:06CV132
                                     )
RAMBUS, INC., a California Corporation, )
                                     )
                     Defendant.      )    06 - 269
                                     )
                                     )

**FINANCIAL INTEREST DISCLOSURE STATEMENT**

Pursuant to Local Rule 7.1 of the Eastern District of Virginia and to enable Judges and

Magistrate Judges to evaluate possible disqualifications or recusal, the undersigned counsel for

Micron Semiconductor Products, Inc., in the above captioned action, certifies that the following

are parents, trusts, subsidiaries and/or affiliates of said party that have issued shares or debt

securities to the public or own more than ten percent of the stock of the following:

**Micron Technology, Inc.**

Dated: February 21, 2006                Respectfully submitted,

                                        MICRON SEMICONDUCTOR PRODUCTS, INC.

                                        By: _____
                                                      Counsel

HUGH M. FAIN, III (VSB No. 26494)
DANA D. MCDANIEL (VSB No. 25419)
M.F. CONNELL
  MULLINS, JR. (VSB No. 47213)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone:  (804) 697-2000
Facsimile:   (804) 697-2100



JOHN B. QUINN
WILLIAM C. PRICE
JON R. STEIGER
DOMINIC SURPRENANT
DIANE C. HUTNYAN
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
(motions for admission
  pro hac vice to be filed)

Counsel for Plaintiffs
Micron Technology, Inc. and
Micron Semiconductor Products, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

FILED

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number 3:06CV132 , Case Name Micron Technology, Inc. v. Rambus, Inc.
Party Represented by Applicant: Micron Technology, Inc.

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

PERSONAL STATEMENT                          06 - 269

FULL NAME (no initials, please)  Jon Robert Steiger
Bar Identification Number  229814          State California
Firm Name  Quinn Emanuel Urquhart Oliver & Hedges, LLP
Firm Phone #  (213) 443-3000      Direct Dial #  (213) 443-3623          FAX #  (213) 443-3100
E-Mail Address  jonsteiger@quinnemanuel.com
Office **Mailing** Address  865 So. Figueroa St., 10th Floor, Los Angeles, CA 90017

Name(s) of federal court(s) in which I have been admitted  Please see attached.

I certify that the rules of the federal court(s) in which I have been admitted and have my office extend a similar *pro hac vice* admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence is current.

I am _____ am not __X__ a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and petition the court to admit the applicant *pro hac vice*.

_____          2/21/06
(Signature)                                          (Date)
  HUGH M. FAIN, III
_____
(Typed or Printed Name)

| Court Use Only: | |
|---|---|

Clerk's Fee Paid _____ or Exemption Granted _____

The motion for admission is GRANTED __✓__ or DENIED _____

FEB 23 2006

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

_____          February 27, 2006
(Judge's Signature)                                  (Date)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

**APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL**
**CIVIL RULE 83.1(D) AND LOCAL CRIMINAL RULE 57.4**

**Jon Robert Steiger States & Courts of Admittance**

State of California
State of Michigan
State of Illinois
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois
United States Court of Appeals for the First Circuit
United States Court of Appeals for the Sixth Circuit

FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number 3:06cv132 , Case Name Micron Technology, Inc. v. Rambus, Inc.

Party Represented by Applicant: Micron Technology, Inc.

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

## PERSONAL STATEMENT

FULL NAME (no initials, please) John Badger Quinn

Bar Identification Number 90378    State California

Firm Name Quinn Emanuel Urquhart Oliver & Hedges, LLP

Firm Phone # (213) 443-3000    Direct Dial # (213) 443-3200    FAX # (213) 443-3100

E-Mail Address johnquinn@quinnemanuel.com

Office **Mailing** Address 865 So. Figueroa St., 10th Floor, Los Angeles, CA 90017

Name(s) of federal court(s) in which I have been admitted  Please see attached.

I certify that the rules of the federal court(s) in which I have been admitted and have my office extend a similar *pro hac vice*
admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a
member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court
and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of
Evidence is current.

I am ___ am not _X_ a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant
personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have
examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and
petition the court to admit the applicant *pro hac vice.*

_____        2/21/06
(Signature)                    (Date)

HUGH M. FAIN, III
(Typed or Printed Name)

Court Use Only:

Clerk's Fee Paid ____ *or* Exemption Granted ____

The motion for admission is GRANTED ____ *or* DENIED ____

FEB 23 2006

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

_____        February 24, 2006
(Judge's Signature)            (Date)



**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

**APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL
CIVIL RULE 83.1(D) AND LOCAL CRIMINAL RULE 57.4**

**John B. Quinn States and Courts of Admittance**

State of New York
State of California
United States District Court, Northern District of California
United States District Court, Southern District of California
United States District Court, Central District of California
United States District Court, Eastern District of California
United States District Court, Western District of North Carolina
United States Court of Appeals for the Ninth Circuit

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

FILED

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number 3:06 CV 132 , Case Name Micron Technology, Inc. v. Rambus, Inc.
Party Represented by Applicant: Micron Technology, Inc.

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

PERSONAL STATEMENT                  0 6 - 2 6 9

FULL NAME (no initials, please) Diane Cafferata Hutnyan
Bar Identification Number 190081      State California
Firm Name Quinn Emanuel Urquhart Oliver & Hedges, LLP
Firm Phone # (213) 443-3000     Direct Dial # (213) 443-3666      FAX # (213) 443-3100
E-Mail Address dianehutnyan@quinnemanuel.com
Office **Mailing** Address 865 So. Figueroa St., 10th Floor, Los Angeles, CA 90016

Name(s) of federal court(s) in which I have been admitted Please see attached.

I certify that the rules of the federal court(s) in which I have been admitted and have my office extend a similar *pro hac vice*
admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a
member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court
and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of
Evidence is current.

I am ____ am not  X  a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant
personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have
examined the applicant's personal statement.  I affirm that his/her personal and professional character and standing are good, and
petition the court to admit the applicant *pro hac vice*.

_____       2/21/06
(Signature)                              (Date)
HUGH M. FAIN, III
(Typed or Printed Name)

Court Use Only:

Clerk's Fee Paid  ✓  or Exemption Granted _____

The motion for admission is GRANTED  ✓  or DENIED _____

FEB 23 2006

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

_____       February 22, 2006
(Judge Signature)                        (Date)



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

**APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL
CIVIL RULE 83.1(D) AND LOCAL CRIMINAL RULE 57.4**

**Diane Cafferata Hutnyan States and Courts of Admittance**

State of California
United States District Court, Northern District of California
United States District Court, Central District of California
United States District Court, Eastern District of California
Supreme Court of California
United States Court of Appeals for the Ninth Circuit
United States District Court, District of Arizona
United States District Court, District of Massachusetts

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number 3:06cv132 , Case Name Micron Technology, Inc. v. Rambus, Inc.

Party Represented by Applicant: Micron Technology, Inc.

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

PERSONAL STATEMENT

06 - 269

FULL NAME (no initials, please)  Dominic Surprenant
Bar Identification Number  165861        State  California
Firm Name Quinn Emanuel Urquhart Oliver & Hedges, LLP
Firm Phone # (213) 443-3000        Direct Dial # (213) 443-3166        FAX # (213) 443-3100
E-Mail Address dominicsurprenant@quinnemanuel.com
Office **Mailing** Address 865 So. Figueroa St., 10th Floor, Los Angeles, CA 90017

Name(s) of federal court(s) in which I have been admitted  Please see attached.

I certify that the rules of the federal court(s) in which I have been admitted and have my office extend a similar *pro hac vice*
admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a
member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court
and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of
Evidence is current.

I am _____ am not __X__ a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant
personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have
examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and
petition the court to admit the applicant *pro hac vice*.

_____          ___2/21/06___
(Signature)                                              (Date)

HUGH M. FAIN, III
(Typed or Printed Name)

| Court Use Only: | |
| --- | --- |
| Clerk's Fee Paid _____ *or* Exemption Granted _____ | FEB 23 2006 |
| The motion for admission is GRANTED __✓__ *or* DENIED _____ | CLERK, U.S. DISTRICT COURT RICHMOND, VA |

_____
(Judge's Signature)

February 22, 2006
(Date)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

**APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL**
**CIVIL RULE 83.1(D) AND LOCAL CRIMINAL RULE 57.4**

**Dominic Surprenant States & Courts of Admittance**

State of California
State of New York
United States District Court, Southern District of New York
United States District Court, Eastern District of New York
United States District Court, Northern District of California
United States District Court, Southern District of California
United States District Court, Central District of California
United States Court of Appeals for the Sixth Circuit
United States Court of Appeals for the Ninth Circuit

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

F I L E D
FEB 2 8 2006
CLERK, US DISTRICT COURT
RICHMOND, VA

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number 3:06cv132 , Case Name  Micron Technology, Inc. v. Rambus, Inc.
Party Represented by Applicant: Micron Technology, Inc.

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

PERSONAL STATEMENT

0 6 - 2 6 9

FULL NAME (no initials, please)  William Charlie Price
Bar Identification Number  108542  State  California
Firm Name  Quinn Emanuel Urquhart Oliver & Hedges, LLP
Firm Phone #  (213) 443-3000  Direct Dial #  (213) 443-3156  FAX #  (213) 443-3100
E-Mail Address  williamprice@quinnemanuel.com
Office Mailing Address  865 So. Figueroa St., 10th Floor, Los Angeles, CA 90017

Name(s) of federal court(s) in which I have been admitted   Please see attached.

I certify that the rules of the federal court(s) in which I have been admitted and have my office extend a similar *pro hac vice* admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence is current.

I am ____ am not  X  a full-time employee of the United States of America, and if so, request exemption from the admission fee.

(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and petition the court to admit the applicant *pro hac vice*.

(Signature)         2/27/06
(Date)

HUGH M. FAIN III
(Typed or Printed Name)

Court Use Only:

Clerk's Fee Paid  ✓  or Exemption Granted _____

The motion for admission is GRANTED  ✓  or DENIED _____

MAR - 1 2006
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

(Judge's Signature)

March 1, 2006
(Date)

2006 APR 25 PM 2:42
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

## APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL CRIMINAL RULE 57.4

**William C. Price State and Courts of Admittance**

California Supreme Court
State of California
United States District Court, Central District of California
United States District Court, Northern District of California
United States Court of Appeals, Ninth Circuit
United States Supreme Court

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

F I L E
FEB 2 8 2006
CLERK, U.S. DISTRICT COURT
RICHMOND, VA.

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number 3:06cv132, Case Name  Micron Technology, Inc. v. Rambus, Inc.

Party Represented by Applicant: Micron Technology, Inc.

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

PERSONAL STATEMENT                              0 6 - 2 6 9

FULL NAME (no initials, please) Kevin Yoshiwo Teruya
Bar Identification Number  235916        State  California
Firm Name  Quinn Emanuel Urquhart Oliver & Hedges, LLP
Firm Phone #  (213) 443-3000      Direct Dial # (213) 443-3226        FAX # (213) 443-3100
E-Mail Address     kevinteruya@quinnemanuel.com
Office Mailing Address 865 So. Figueroa St., 10th Floor, Los Angeles, CA 90017

Name(s) of federal court(s) in which I have been admitted    Please see attached.

I certify that the rules of the federal court(s) in which I have been admitted and have my office extend a similar *pro hac vice* admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence is current.

I am ____ am not  X  a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and petition the court to admit the applicant *pro hac vice*.

_____                          2/27/06
(Signature)                                        (Date)

HUGH M. FAIN, III
(Typed or Printed Name)

Court Use Only:

Clerk's Fee Paid _____ or Exemption Granted _____

The motion for admission is GRANTED _____ or DENIED _____

F I L E
MAR - 1 2006
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

_____                          March 1, 2006
(Judge's Signature)                                (Date)

24:2 Wd 52 AAR 90
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

**APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL**
**CIVIL RULE 83.1(D) AND LOCAL CRIMINAL RULE 57.4**

**Kevin Y. Teruya State and Courts of Admittance**

State of California
State of New York
United States District Court, Southern District of New York
United States District Court, Eastern District of New York
United States District Court, Eastern District of Michigan
United States District Court, Central District of California
United States Court of Appeals, Sixth Circuit

08832/1838650.1

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

United States District Court for the Eastern            District of            Virginia (Richmond Division)

MICRON TECHNOLOGY, INC., and MICRON
SEMICONDUCTOR PRODUCTS, INC.,

06 - 269

**SUMMONS IN A CIVIL CASE**

V.

RAMBUS, INC.,

CASE NUMBER:        3:06CV132



TO: (Name and address of Defendant)

Rambus, Inc.
c/o CT Corporation System
818 West 7th Street
Los Angeles, California 90017

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Hugh M. Fain, III
Spotts Fain PC
P. O. Box 1555
411 East Franklin Street, Suite 600
Richmond, Virginia 23218-1555

an answer to the complaint which is served on you with this summons, within ____twenty (20)____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

Elizabeth H. Paret                                        2/21/2006

CLERK                                                          DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | 2/22/06 |
| NAME OF SERVER *(PRINT)* | TITLE |
| Gustavo Vargas | Process Server |

*Check one box below to indicate appropriate method of service*

☒ Served personally upon the defendant. Place where served:   818 West 7th Street, 2nd Floor, Los Angeles, CA 90017
   (Served CT Corporation, Agent, by leaving with Gerome Jones, Process Clerk, 2-22-06 at 2:45 p.m.)

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | $39.50 | 39.50 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  2/23/06                    _____
                    Date                        *Signature of Server*

                    1301 West 2nd Street, Los Angeles, CA 90026
                    (213) 482-1567, Registered L.A. County #2889

                    *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



MICRON TECHNOLOGY, INC., et al.,

           Plaintiffs,

v.                              Civil Action No.: 3:06CV132-REP

RAMBUS INC.,

           Defendant.

0 6 - 2 6 9

## MOTION FOR EXTENSION OF TIME

Defendant Rambus Inc. ("Rambus"), by counsel and by special appearance without conceding jurisdiction or venue, hereby moves for an extension of time in which to answer, plead or otherwise respond to the Complaint in this matter, and in support thereof, states as follows:

1.     Plaintiffs have served a Complaint on Rambus in this matter. The time for Rambus to answer, plead or otherwise respond to the Complaint has not yet passed.

2.     Rambus has requested and Plaintiffs have agreed to allow Rambus an extension of time until Tuesday, March 28, 2006 to answer, plead or otherwise respond to the Complaint. An Agreed Order to this effect endorsed by counsel is attached.

3.     Pursuant to Local Rule 7(F)(2)(b), no brief is required for this motion.

WHEREFORE, Rambus Inc. requests that this Court enter the attached Agreed Order granting it an extension of time until Tuesday, March 28, 2006 to answer, plead or otherwise respond to the Complaint.

Respectfully submitted,

RAMBUS INC.

By Counsel

Michael W. Smith VSB 01125
Craig T. Merritt VSB 20281
R. Braxton Hill, IV VSB 41539
CHRISTIAN & BARTON, LLP
909 East Main Street, Ste. 1200
Richmond, VA 23219
Telephone:  (804) 697-4100
Facsimile:   (804) 697-4112

OF COUNSEL:

V. Bryan Medlock, Jr.
Charles W. Douglas
Thomas K. Cauley
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:   (312) 853-7036

Attorneys for Defendant
RAMBUS INC.



## Certificate of Service

I certify that a true copy of the foregoing was served this ___ day of March, 2006, on

counsel for the Plaintiffs as follows:

Hugh M. Fain VSB 26494
Dana D. McDaniel VSB 25419
M.F. Connell Mullins, Jr. VSB 47213
SPOTTS FAIN PC
411 East Franklin Street, Ste. 600
Richmond, VA 23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100

*BY HAND*

John B. Quinn
William C. Price
Jon R. Steiger
Dominic Surprenant
Diane C. Hutnyan
QUINN EMANUEL URQUHART
   OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*BY OVERNIGHT DELIVERY*

_____
Counsel

750525

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**



MAR - 8 2006

Micron Technology, Inc., et. al.,
          Plaintiffs,
v.                              Civil Action No. 3:06cv132

Rambus, Inc.,
          Defendant,

                                             06 - 269

**ORDER SETTING PRETRIAL CONFERENCE**

    Pursuant to Fed. R. Civ. P. 16(a) and 16(b) and Local Rule 16(B), a pretrial conference is scheduled in this action at 10:30 a.m. on March 23, 2006    in the chambers of Judge Payne, Third Floor, Lewis F. Powell, Jr. Courthouse, Tenth and Main Streets, Richmond, Virginia.   It is anticipated that the conference will last approximately fifteen minutes.  to Fed. R. Civ. P. 26(f) and Local Rule 26A(1),

    Pursuant counsel: (1) shall confer not later than ten (10) days before the pretrial conference for the purposes required by Fed. R. Civ. P. 26(f); and (2) shall report orally at the pretrial conference on the discovery plan required by 26(f).

    The Court will set a trial date which will be within sixty to ninety days after the pretrial conference except for complex litigation or in other unusual circumstances.   Unless agreed otherwise by all counsel and approved by the Court before the pretrial conference, counsel who will actually try the case shall attend the pretrial conference.   In any event, counsel attending

12

the pretrial conference shall be knowledgeable of the facts and l

issues in the action and shall be prepared to set a firm trial

date.

Issued at the direction of the Court.

                              ELIZABETH H. PARET, CLERK

                    By:_____
                              Louis E. Neal, Deputy Clerk


Richmond, Virginia
   March 8, 2006
            Date



IF THIS CASE IS SETTLED PRIOR TO THE CONFERENCE, PLEASE CALL THE
CLERK'S OFFICE AT 916-2235.  THANK YOU.

2

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

NOTICE

To facilitate timely consideration of motions, it is requested
that all parties, except those proceeding in forma pauperis or pro
se, deliver to chambers the following number of additional copies
of the following pleadings, the originals of which are filed with
the Clerk:

| Type of Pleading | No. of Additional Copies |
|---|---|
| Motion and Supporting Brief | 2 copies |
| Responsive Brief | 2 copies |
| Reply Brief | 2 copies |
| Exhibits to Motions, Supporting Responsive and Reply Briefs | 1 copy |

The Clerk is directed to send a copy of this Notice to all
counsel of record in this action.

It is so ORDERED.

_____
United States District Judge

Richmond, Virginia
Date: October 11, 1995

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



Micron Technology, Inc., et. al.,
          Plaintiffs,

v.                                    Civil Action No. 3:06CV132

Rambus, Inc.
          Defendant,                              06 - 269

SCHEDULING ORDER

Finding it in the interest of justice and otherwise reasonably necessary for the orderly and efficient administration of justice, it is hereby **ORDERED** that the schedule set forth below and in Pretrial Schedule A (attached) shall govern the progress of this action, except to the extent amended or augmented by the terms of the Initial Pretrial Order issued after the pretrial conference or by any other Order.

**1.** Any party which has not filed an Answer to the Complaint shall do so within **eleven (11)** days after entry of this Scheduling Order. Filing of an Answer shall not waive any previously filed motions or properly presented objections to jurisdiction or service of process.

**2.** Within **fifteen (15)** days after entry of this Order, motions for joinder of additional parties or amendment of pleadings shall be filed. Any such motions filed thereafter will be entertained only upon a showing of good cause.

3.    Within **fifty (50)** days after entry of this Order, counsel for each party, and a representative of each party with authority to conclude a settlement of this action, shall meet in person with the undersigned district judge or, if directed, with another district or magistrate judge to discuss settlement.    The representative for a business entity (corporation, partnership or otherwise) must be an officer or employee not employed in the business entity's law department or general counsel's office, although such lawyers are welcome to attend with the other representative.    Each counsel shall be prepared to present a cogent, brief summary of the issues of liability and damages. Counsel for each party shall be responsible to assure that the settlement conference is conducted as herein prescribed.

The Clerk is directed to send a copy of this Scheduling Order and attached Pretrial Schedule A to all counsel of record and to any party not represented by counsel.

It is so ORDERED.

MAR 8 2006

Richmond, Virginia

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**PRETRIAL SCHEDULE A**

This Pretrial Schedule A ("Schedule A") shall govern the schedule of events in this action; and, therefore, it is incorporated into the Scheduling Order to which it is attached.

## I.    GENERAL INSTRUCTIONS

### A.    Conflict With Local Rules Or Federal Rules Of Civil Procedure

Because they govern events incident to trial and the control of the Court's docket, the Scheduling Orders and Pretrial Orders issued by the Court and this Schedule A shall control over any perceived conflicting Local Rule or Federal Rule of Civil Procedure, unless the party perceiving a conflict shall raise it by motion, brief it in the manner required by the Local Rules and demonstrate therein why the perceived conflicting provision of a Pretrial Order, a Scheduling Order or Schedule A should not control.

### B.    Filing Deadlines And Service Of Papers

1.    If any filing deadline set in this Schedule A or the Scheduling Order or a Pretrial Order falls upon a Saturday, Sunday, or holiday, service on the opposing counsel or party shall be on the last preceding business day.  The papers so served shall be filed with the Clerk on the first business day following the Saturday, Sunday, or holiday.  The provisions of Fed. R. Civ. P. 6 shall not apply to alter the time deadlines established by this Schedule A.

2.    All filing deadlines expire at 5:00 p.m. on the applicable date, except as specifically ordered by the Court.

### C.    Calculation Of The Dates

For the purpose of calculating dates, the date of trial shall not be counted.

**D.    Settlement**

Counsel shall notify the Court immediately of any settlement and shall submit a final order within **fifteen (15)** calendar days thereafter unless otherwise ordered by the Court. If such an order is not timely submitted, the action will be dismissed by the Court with prejudice on the basis of the representation that the action has been settled.

## II.  MOTIONS

**A.    Local Rule 7**

Local Rule 7 shall govern the filing of motions in this action, except where otherwise stated. All hearing dates should be arranged with the secretary to the district judge.

**B.    Discovery Disputes**

Counsel are expected to resolve discovery disputes without filing pleadings or involving the Court. If, after good faith effort, counsel are unable to resolve disputes, they will be resolved, if at all possible, in a telephone conference without the filing of pleadings. In the unusual event that resolution of a discovery dispute requires the filing of motions, they shall be filed, briefed and heard in sufficient time to allow completion of the requested discovery by the discovery cut-off date, taking into account the time allowed for responses and replies under the Federal Rules of Civil Procedure, the Local Rules, or any other Order of the Court.

**C.    Summary Judgment Motions**

1.    All motions for summary judgment shall be filed at the earliest possible date consistent with the requirements of the Federal Rules of Civil Procedure, but such motions shall be filed no later than **forty (40)** calendar days before the scheduled trial date.

2.    A hearing, if desired, shall be scheduled to take place no later than **fifteen (15)** calendar days before trial.

**D.    Motions In Limine**

Motions _in_ _limine_, if any, shall be filed in sufficient time, taking into account the time allowed for responses and replies, to be heard no later than **ten (10)** days before trial.  At the discretion of the Court, hearings on motions _in_ _limine_ may be deferred until trial or until the final pretrial conference.


**III. DISCOVERY**

**A.    Filing Discovery**

Except for good cause shown by motion under Fed. R. Civ. P. 5(d), discovery materials shall not be filed with the pleadings or papers in any case.  Where specific discovery material may appropriately support or oppose a motion, the specific discovery material in question shall be appended as an exhibit to the motion, or in response thereto, without having been previously filed. Discovery material otherwise permitted to be used at trial may be properly so used, if otherwise admissible, without having been previously filed.

**B.    Privilege Lists**

If a party objects to the production of documents on the grounds of attorney-client privilege, attorney work product doctrine, or any other privilege, the objecting party must provide the requesting party with an inventory list of the documents to which objection is made, together with a brief description of the document, including the date, the author, and the identity of each recipient, and the claimed basis for its protection, all of which shall be sufficient to permit the opposing party to assess the claim of privilege or protection.

Unless otherwise ordered by the Court, the claim of privilege or protection shall be waived unless the inventory and description are served with the objections to the request for production in the time required by the Local Rules.

**C.    Close Of Discovery**

All fact discovery, including all supplementation, shall be concluded no later than **forty-five (45)** calendar days before trial.

## IV.   EXPERTS

1.    Local Rule 26 shall govern disclosure and discovery of experts and their reports.

2.    Unless the Court orders otherwise for good cause shown, expert witnesses and reports not disclosed as required by Fed. R. Civ. P. 26(a)(2) and (3) and the deadlines established herein shall not be allowed to testify or be admitted into evidence, as the case may be.

3.    Only one expert per discipline is permitted, except by order of the Court.

## V.    TRIAL PREPARATION PROCEDURES AND DEADLINES

### A.    Written Stipulations

1.    No later than **twenty-four (24)** calendar days before trial, counsel for each party shall meet and confer in a good faith effort to enter into written stipulations of uncontroverted facts. Unless the parties agree otherwise, this conference shall be held at the counsel's office that is closest to the courthouse.

2.    Written stipulations shall be signed by each counsel and filed with the Clerk no later than **eleven (11)** calendar days prior to trial.

### B.    Discovery Designations And Summaries

1.    No later than **twenty-one (21)** calendar days before trial, all parties shall serve on all other counsel a list of all discovery materials, specifying the appropriate portions thereof, that the party intends to offer at trial.

2.    If the designated materials include deposition testimony (whether taken by transcript, video tape, or otherwise), a brief summary of all such designated testimony, containing citations to the page and lines of the deposition from which the summary is taken, also shall be served on all counsel.  Counsel are admonished that, as officers of the Court, they are obligated to submit summaries that are fair and accurate.  Summaries are to be served for both jury and non-jury trials.

3.    No later than **fourteen (14)** calendar days before trial, all parties shall serve on all counsel, a list of all "fairness" or rebuttal designations and amended summaries, as appropriate.

4.    No later than **eleven (11)** calendar days before trial, any **objection** to the introduction of any designation or parts thereof or any summary shall be filed by each of the parties in writing with the Clerk.  Such objection shall be deemed to have been waived if not timely filed.

5.    No later than **nine (9)** calendar days before trial, counsel shall confer to resolve objections to discovery designations.  If objections are not resolved, they shall be determined at the Final Pretrial Conference.

It shall be the responsibility of the objecting party to file the specific discovery designation or summary with the party's objections thereto.  All such documents shall be clearly marked, indexed, and easily reviewable.

The party offering the designated discovery shall be responsible for:  (I) conforming it to the agreement reached by the parties or to the rulings on the objections; (ii) filing the conformed version; and (iii) providing opposing counsel, the Clerk, and the Court with a conformed set of all designated discovery **five (5)** calendar days before trial.

6.    All summaries of deposition testimony to which no objection has been made shall be filed with the Clerk, with a copy delivered to the Court, no later than **two (2)** calendar days before trial.

7.    This paragraph on designations shall not apply to discovery materials that will be used at trial solely in cross-examination or for impeachment.

C.    **Witness Lists**

1.    On or before **eighteen (18)** calendar days before trial, **plaintiff** shall file a list of all witnesses intended to be called at trial.

2.    On or before **sixteen (16)** calendar days before trial, **defendant** shall file a corresponding list of all witnesses intended to be called at trial.

5

3.    A copy of each subpoena issued for a witness' attendance at trial shall be filed with the Clerk.  No witness who has been subpoenaed may be excused except by leave of court or, if the witness has not testified at trial, with the consent of all parties.

4.    Failure to comply with the provisions of this section will, in the absence of exceptional circumstances, result in preclusion of the testimony of the witness and/or sanctions.

D.    **Exhibits**

1.    On or before **eighteen (18)** calendar days before trial, **plaintiff** shall file with the Clerk a list of proposed exhibits.

2.    On or before **sixteen (16)** calendar days before trial, **defendant** shall file with the Clerk a list of proposed exhibits.

3.    Any exhibit not listed and timely filed will not be admitted at trial unless used solely for impeachment or rebuttal purposes.  Counsel are admonished that the filing of exhibits deemed by the Court to be unnecessary to a just disposition of the case may be found to be violative of 28 U.S.C. § 1927 and the filing of unnecessary exhibits will be the basis for sanctions.

4.    A set of exhibits shall be delivered to the opposing party on the date the serving party's exhibit list is filed with the Clerk.

5.    Exhibits shall be arranged in a notebook, with each exhibit marked and individually tabbed.  Each exhibit notebook should contain an index identifying each exhibit by number and with a short neutral description.

6.    **Objections** to exhibits shall be filed with the Clerk **twelve (12)** calendar days before trial.  Any exhibit to which no objection is made shall be admitted without further action.

7.    If counsel so desire, exhibit notebooks may also be provided for each juror.  No exhibit or photograph shall be shown to the jury unless a separate copy thereof is available for each juror or is of such a size as to be easily seen from the jury box.

8.    On the day before the trial, each party shall deliver to the Clerk two sets of pre-marked, indexed exhibits (one for the judge; and one for the witness).

9.    Exhibits as to which objections are taken shall be brought to the Final Pretrial Conference.

**E.    Jury Instructions**

1.    If this action is to be tried by a jury, each party shall file a complete set of proposed jury instructions with the Clerk on or before **ten (10)** calendar days before trial.  Objections to instructions shall be filed in writing **seven (7)** calendar days before trial.  Each party shall file a proposed jury verdict form with its instructions.

2.    Counsel shall make every effort to resolve objections, to consolidate jury instructions, and to tender an agreed set of instructions to the Court.  **Four (4)** calendar days before trial, counsel for the plaintiff shall file (a) a set of all instructions as to which the parties are in agreement; and (b) a separate set of instructions as to which there remains a dispute, and, with respect to each such instruction, shall briefly state the points on which the parties are still in dispute.

3.    Instructions shall be filed as a group with a cover page in pleading form and with a certificate of service at the end.  Each instruction shall be set forth on a separate page, shall be numbered and identified by the party submitting it (e.g., "P-1" or "D-1") and the original shall bear at its foot a citation of authority supporting the instruction.

**F.    Findings Of Fact And Conclusions Of Law**

1.    If this action will not be tried by a jury, each party shall file with the Clerk proposed findings of fact and conclusions of law not later than **ten (10)** calendar days before trial.

2.    The proposed findings of fact and conclusions of law shall be in numbered paragraphs.  Conclusions of law shall cite authority.

**G.    Voir Dire**

Any proposed voir dire questions shall be filed with the Clerk and delivered to opposing counsel not later than **seven (7)** calendar days before trial.  Objections to voir dire questions shall be filed **three (3)** calendar days before trial.





**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**MICRON TECHNOLOGY, INC. and**
**MICRON SEMICONDUCTOR**
**PRODUCTS, INC.,**

                **Plaintiffs,**

0 6 - 2 6 9

v.                            **Civil Action No.: 3:06CV132-REP**

**RAMBUS INC.,**

                **Defendant.**


### [PROPOSED] AGREED ORDER

On this day came the Plaintiffs and defendant Rambus Inc., by counsel, upon Rambus

Inc.'s Motion for Extension of Time in which to answer, plead ~~or~~ *and* otherwise respond to the    *REP 3/8/06*

Complaint filed by Plaintiffs in this matter, and upon the agreement of the parties and for good

cause shown, the Motion for Extension of Time is GRANTED and defendant Rambus Inc. shall

have until Tuesday, March 28, 2006 to answer, plead ~~or~~ *and* otherwise respond to the Complaint.   *REP 3/8/06*

The Clerk shall send copies of this Order to counsel of record.

It is SO ORDERED.


_____
United States District Judge

Richmond, VA

Date: *March 8, 2006*

14

WE ASK FOR THIS:

Michael W. Smith VSB 01125
Craig T. Merritt VSB 20281
R. Braxton Hill, IV VSB 41539
CHRISTIAN & BARTON, LLP
909 East Main Street, Ste. 1200
Richmond, VA 23219
Telephone:  (804) 697-4100
Facsimile:  (804) 697-4112

Attorneys for Defendant
RAMBUS INC.

SEEN AND AGREED:

Hugh M. Fain VSB 26494
Dana D. McDaniel VSB 25419
M.F. Connell Mullins, Jr. VSB 47213
SPOTTS FAIN PC
411 East Franklin Street, Ste. 600
Richmond, VA 23219
Telephone:  (804) 697-2000
Facsimile: (804) 697-2100

Attorneys for Plaintiffs
MICRON TECHNOLOGIES, INC., et al.

750511

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number 3:06CV 132 , Case Name Micron Technology, et al v. Rambus, Inc.
Party Represented by Applicant: Rambus, Inc.

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

06 - 269

PERSONAL STATEMENT

FULL NAME (no initials, please) Thomas Charles Green
Bar Identification Number  14498        State  DC
Firm Name  Sidley Austin
Firm Phone # 202 736 8000     Direct Dial # 202 736 8069     FAX # 202 736 8734
E-Mail Address  tcgreen @ sidley . com
Office Mailing Address  1501 K St NW    Washington DC  20015
Name(s) of federal court(s) in which I have been admitted  US Sup Ct, DC Circuit, 2nd Cir, 11th Cir, 4th Cir, plus various federal district courts

I certify that the rules of the federal court(s) in which I have been admitted and have my office extend a similar *pro hac vice*
admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a
member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court
and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of
Evidence is current.

I am ____ am not ✔ a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant
personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have
examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and
petition the court to admit the applicant *pro hac vice*.

_____          3/20/06
(Signature)                                (Date)
R BRAXTON HILL IV (VSB 41539)
(Typed or Printed Name)

Court Use Only:

Clerk's Fee Paid  ✔  or Exemption Granted _____

The motion for admission is GRANTED  ✔  or DENIED _____

MAR 2 2 2006

CLERK

_____          March 22, 2006
(Judge's Signature)                         (Date)

15

RECEIVED

MAR 2 4 2006

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

2006 MAR 23 P 2: 05

**MICRON TECHNOLOGY, INC. and**
**MICRON SEMICONDUCTOR**
**PRODUCTS, INC.,**

                    **Plaintiffs,**                                    06 - 269

**v.**                                              **Civil Action No.: 3:06CV132-REP**

**RAMBUS INC.,**

                    **Defendant.**

2006 APR 25 PM 2: 41
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED

~~**[PROPOSED]**~~ **AGREED ORDER**

On this day came the plaintiffs Micron Technology, Inc. and Micron Semiconductor

Products, Inc. ("Micron") and the defendant Rambus Inc. ("Rambus"), by counsel, upon the

parties' request for extensions of time in connection with the responsive pleadings to be filed in

this matter and the briefing schedule set forth in Local Rule 7(F)(1), and upon the agreement of

the parties and for good cause shown, it is hereby ORDERED that

Rambus shall have until Tuesday, April 11, 2006 to file and serve its Answer and any

Motion to Dismiss and Brief in Support thereof.

Plaintiffs shall have until Monday, May 8, 2006 to file and serve their Brief in Opposition

to any Motion to Dismiss filed by Rambus.

Rambus shall have until Monday, May 15, 2006 to file and serve its Reply Brief in

Support of any Motion to Dismiss.

The initial pretrial conference in this matter is continued to Thursday, May 18, 2006 at

9:00 a.m.

The Clerk shall send copies of this Order to counsel of record.

16

It is SO ORDERED.

_____
United States District Judge

Richmond, VA

Date: _March 24, 2006_

*SEEN AND AGREED:*

_____

Michael W. Smith VSB 01125
Craig T. Merritt VSB 20281
R. Braxton Hill, IV VSB 41539
CHRISTIAN & BARTON, LLP
909 East Main Street, Ste. 1200
Richmond, VA 23219
Telephone:  (804) 697-4100
Facsimile:  (804) 697-4112

Attorneys for Defendant
RAMBUS INC.

*SEEN AND AGREED:*

_____

Hugh M. Fain, III VSB 26494
Dana D. McDaniel VSB 25419
M.F. Connell Mullins, Jr. VSB 47213
SPOTTS FAIN PC
411 East Franklin Street, Ste. 600
Richmond, VA 23219
Telephone:  (804) 697-2000
Facsimile: (804) 697-2100

William C. Price
Jon R. Steiger
Dominic Surprenant
Diane C. Hutnyan
QUINN EMANUEL URQUHART
    OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiffs
MICRON TECHNOLOGIES, INC., et al.

750511.3

3

Thomas C. Green, *pro hac vice application pending*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 736-8069
Facsimile:  (202) 736-8711

Attorneys for Defendant
RAMBUS INC.

750511.3



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL
CRIMINAL RULE 57.4

In Case Number **3:06 CV 132** , Case Name **MICRON TECHNOLOGY, Inc. v. RAMBUS, Inc.**
Party Represented by Applicant: **RAMBUS Inc.**

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

PERSONAL STATEMENT                                              06 - 269

FULL NAME (no initials, please) **THOMAS KENNETH CAULEY, Jr.**
Bar Identification Number **6185259**    State **ILLINOIS**
Firm Name **SIDLEY AUSTIN LLP**
Firm Phone # **(312) 853-7000**    Direct Dial # **(312) 853-7076**    FAX # **(312) 853-7036**
E-Mail Address **tcauley@sidley.com**
Office **Mailing** Address **ONE SOUTH DEARBORN, CHICAGO, Ill., 60603**

Name(s) of federal court(s) in which I have been admitted **NORTHERN DISTRICT OF ILLINOIS**

I certify that the rules of the federal court(s) in which I have been admitted and have my office extend a similar *pro hac vice*
admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a
member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court
and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of
Evidence is current.

I am _____ am not **X** a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant
personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have
examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and
petition the court to admit the applicant *pro hac vice*.

_____                                  **4/14/06**
(Signature)                                                        (Date)
**R. BRAXTON HILL IV (VSB 45329)**
(Typed or Printed Name)

Court Use Only:

Clerk's Fee Paid ✓ or Exemption Granted _____

The motion for admission is GRANTED ✓ or DENIED _____

_____                                  **April 14, 2006**
(Judge's Signature)                                                (Date)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICRON TECHNOLOGY, INC. AND
MICRON SEMICONDUCTOR PRODUCTS, INC.

    Plaintiffs,

v.                                    Civil Action No. 3:06CV132

RAMBUS, INC.,

    Defendant.

ORDER

It appearing that the United States District Court for the District of Delaware has enjoined the plaintiffs from proceeding on their claims in the Eastern District of Virginia, and it appearing that the subject matter of this action is related to an action pending in the District of Delaware, and upon agreement of the parties, it is hereby ORDERED that the action is transferred to the United States District Court for the District of Delaware. The Clerk is directed to take all actions necessary to effectuate this order.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.

_____
UNITED STATES DISTRICT JUDGE

Date: April 20, 2006
Richmond, VA

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### OFFICE OF THE CLERK
Lewis F. Powell, Jr. U.S. Courthouse Building
1000 East Main Street
Suite 307
Richmond, Virginia 23219

**FERNANDO GALINDO**
**ACTING CLERK OF COURT**

| Telephone: | Area Code 804 |
|---|---|
| Administrative | 916-2200 |
| Jury-Financial | 916-2212 |
| Criminal | 916-2230 |
| Civil | 916-2220 |

April 21, 2006

Peter T. Dalleo, Clerk
United States District Court
District of Delaware
J. Caleb Boggs Federal Building

844 N. King Street

Wilmington, DE 19801

2006 APR 25  PM 2: 41
FILED  CLERK U.S. DISTRICT COURT  DISTRICT OF DELAWARE

0 6 - 2 6 9

     **RE:**    **Micron Technology, Inc., et al. v. Rambus, Inc.**
                 **Civil Action No. 3:06cv132**

Dear Sir:

     Pursuant to an order of this Court, filed April 21, 2006 and signed by the Honorable Robert E. Payne, United States Magistrate Judge, the above entitled matter is transferred to your court.

     The papers enclosed constitute the entire file in this case, except that a certified copy of the order of transfer is enclosed in lieu of the original. A certified copy of the docket entries is also enclosed.

     A copy of this letter is enclosed for your convenience in acknowledging receipt.

                Very truly yours,

                 Fernando Galindo, Acting Clerk

          By: _____
                 Deputy Clerk

Enclosures

---

*Divisional Offices:*   •   *Alexandria*   •   *Newport News*  •  *Norfolk*   •   *Richmond*