# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MICRON TECHNOLOGY, INC., and
MICRON SEMICONDUCTOR
PRODUCTS, INC.,

     Plaintiffs,

     v.

RAMBUS INC.,

     Defendant.

Civil Action No. 06-269-KAJ

## MICRON'S MEMORANDUM IN OPPOSITION TO
## RAMBUS'S MOTION TO DISMISS

OF COUNSEL:

WEIL, GOTSHAL & MANGES LLP
Matthew D. Powers
Jared Bobrow
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1175
(650) 802-3000

QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
William C. Price
Jon R. Steiger
Dominic Surprenant
Diane C. Hutnyan
Robert J. Becher
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

June 12, 2006

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Matthew W. King (#4566)
king@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Plaintiffs Micron Technology, Inc.*
*and Micron Semiconductor Products, Inc.*

RLFI-3025223-1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

SUMMARY OF ARGUMENT ...............................................................................................3

SUMMARY OF ALLEGATIONS IN THE COMPLAINT...................................................5

ARGUMENT............................................................................................................................7

I.  RAMBUS CANNOT SATISFY THE RIGOROUS STANDARDS GOVERNING
    A MOTION TO DISMISS...........................................................................................7

II.  MICRON'S RICO INJURIES FALL WITHIN THE LIMITATIONS PERIOD. ..........8

    A.  The Limitations Period Is Triggered By The Discovery Of The RICO
    Injury, Not Of The Predicate Acts. ........................................................................8

        1.  The "injury discovery" rule........................................................................8

        2.  The "separate accrual" rule. ......................................................................9

    B.  Micron Discovered Its RICO Injuries Within The Limitations Period................10

    C.  The Limitations Period For Micron's RICO Claims Was Tolled By
    Rambus's Fraudulent Concealment.......................................................................14

III.  MICRON HAS APPROPRIATELY ALLEGED ITS RICO CLAIMS. ...........................17

    A.  Micron's Section 1962(c) Claim Pleads An Enterprise Distinct From
    Rambus. .................................................................................................................17

    B.  Micron Has Alleged RICO Injury........................................................................21

    C.  Micron's Allegations Of Mail Fraud And Wire Fraud Satisfy Rule 9(b). .............22

    D.  Micron Has Appropriately Alleged Its 1962(d) RICO Conspiracy Claim. ...........24

IV.  MICRON HAS APPROPRIATELY ALLEGED A STATE-LAW
    CONSPIRACY. ...........................................................................................................26

V.  THE *NOERR-PENNINGTON* DOCTRINE DOES NOT BAR MICRON'S
    COMPLAINT. .............................................................................................................29

CONCLUSION.......................................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Abels v. Farmers Commodities Corp.,*
259 F.3d 910 (8th Cir. 2001) ............................................................................24

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*
483 U.S. 143 (1983)....................................................................................8, 9

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
486 U.S. 492 (1988)......................................................................................30

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,*
151 F. Supp. 2d 723 (E.D. Va. 2001) ...................................................27, 28, 29

*Baltimore Scrap Corp. v. David J. Joseph Co.,*
237 F.3d 394 (4th Cir. 2001) ...........................................................................32

*Bankers Trust Co. v. Rhoades,*
859 F.2d 1096 (2d Cir. 1988)..................................................................... *passim*

*Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,*
296 F.3d 164 (3d Cir. 2002)..........................................................................7, 22

*Beck v. Prupis,*
529 U.S. 494 (2000)........................................................................................25

*Bingham v. Zolt,*
66 F.3d 553 (2d Cir. 1995)................................................................................9

*Brittingham v. Mobil Corp.,*
943 F.2d 297 (3d Cir. 1991).............................................................................20

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,*
No. 95-1698, 1995 WL 455969 (E.D. Pa. July 27, 1995) ....................................20

*Buschi v. Kirven,*
775 F.2d 1240 (4th Cir. 1985) ...................................................................26, 29

*California Motor Transp. Co. v. Trucking Unlimited,*
404 U.S. 508 (1972).......................................................................................30

*Cedric Kushner Promotions, Ltd. v. King,*
533 U.S. 158 (2001).................................................................................17, 18

*Cheminor Drugs, Ltd. v. Ethyl Corp.,*
168 F.3d 119 (3d Cir. 1999).....................................................................30, 31, 32

*City of Columbia v. Omni Outdoor Adver., Inc.,*
499 U.S. 365 (1991).......................................................................................32

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau,*
    690 F.2d 1240 (9th Cir. 1982) ................................................................................29, 30

*Cunningham v. PFL Life Ins. Co.,*
    42 F. Supp. 2d 872 (N.D. Iowa 1999)........................................................................27

*Emcore Corp. v. PricewaterhouseCoopers LLP,*
    102 F. Supp. 2d 237 (D. N.J. 2000) .....................................................................19, 20

*Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,*
    174 F.R.D. 572 (D. N.J. 1997)...................................................................................21

*Feller v. New Amsterdam Cas. Co.,*
    363 Pa. 483 (1950).....................................................................................................28

*Flinders v. Datasec Corp.,*
    742 F. Supp. 929 (E.D. Va. 1990) .............................................................................29

*Forbes v. Eagleson,*
    183 F.R.D. 440 (E.D. Pa. 1998).................................................................10, 12, 13

*Forbes v. Eagleson,*
    228 F.3d 471 (3d Cir. 2000).......................................................................8, 14, 15, 16

*Glessner v. Kenny,*
    952 F.2d 702 (3d Cir. 1991).....................................................................................9, 25

*Greenville Publ'g Co., Inc. v. Daley Reflector, Inc.,*
    496 F.2d 391 (4th Cir. 1974) ........................................................................26, 27, 28, 29

*Grimmett v. Brown,*
    75 F.3d 506 (9th Cir. 1996) ........................................................................................9

*Holmes v. Sec. Investor Prot. Corp.,*
    503 U.S. 258 (1992)...................................................................................................21

*Huntingdon Life Sciences, Inc., v. Rokke,*
    986 F. Supp. 982 (E.D. Va. 1997) .............................................................................29

*Israel v. Baxter Labs., Inc.,*
    466 F.2d 272 (D.C. Cir. 1972)...................................................................................30

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,*
    46 F.3d 258 (3d Cir. 1995)......................................................................................9, 20

*Kehr Packages Inc. v. Fidelcor, Inc.,*
    926 F.2d 1406 (3d Cir. 1991)....................................................................................24

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997)..........................................................................................8, 9, 11, 13

*Kottle v. Nw. Kidney Ctrs.,*
    146 F.3d 1056 (9th Cir. 1998) ...................................................................................32

*Lares Group, II v. Tobin,*
  221 F.3d 41 (1st Cir. 2000) ............................................................................9, 11

*Living Designs, Inc. v. E.I. DuPont de Nemours and Co.,*
  431 F.3d 353 (9th Cir. 2005) ..........................................................................18, 19

*Love v. Nat'l Med. Enters.,*
  230 F.3d 765 (5th Cir. 2000) ........................................................................ *passim*

*Lum v. Bank of America,*
  361 F.3d 217 (3d Cir. 2004)..................................................................................23

*Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.,*
  792 F.2d 341 (3d Cir. 1986)..................................................................................21

*Mathews v. Kidder, Peabody & Co.,*
  260 F.3d 239 (3d Cir. 2001)............................................................................15, 16

*McCarthy v. Recordex Serv., Inc.,*
  80 F.3d 842 (3d Cir. 1996)....................................................................................28

*McCool v. Strata Oil Co.,*
  972 F.2d 1452 (7th Cir. 1992) ................................................................................9

*New York v. Hill,*
  528 U.S. 110 (2000)..............................................................................................28

*Oshiver v. Levin, Fishbein, Sedran & Berman,*
  38 F.3d 1380 (3d Cir. 1994)..................................................................14, 15, 16

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
  508 U.S. 49 (1993)................................................................................................32

*PTI Servs., Inc. v. Quotron Sys., Inc.,*
  No. 94-2068, 1995 WL 241411 (E.D. Pa. April 19, 1995).....................................20

*Prudential Ins. Co. v. United States Gypsum Co.,*
  359 F.3d 226 (3d Cir. 2004)....................................................................................8

*Rambus Inc. v. Micron Technology, Inc., et al.,*
  Case No. 04-431105............................................................................................6, 7

*Rambus Inc. v. Micron Technology, Inc. and Micron Semiconductor Products, Inc.,*
  Case No. 06-00244 RMW......................................................................................6, 7

*Rossman v. Fleet Bank (R.I.) N.A.,*
  280 F.3d 384 (3d Cir. 2002)....................................................................................7

*Rotella v. Wood,*
  528 U.S. 549 (2000)................................................................................................8

*Schmuck v. United States,*
  489 U.S. 705 (1989)..............................................................................................24

*Selman v. Am. Sports Underwriters, Inc.,*
    697 F. Supp. 225 (W.D. Va. 1990) ........................................................26, 28

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
    742 F.2d 786 (3d Cir. 1984)..........................................................................25

*Shearin v. E.F. Hutton Group, Inc.,*
    885 F.2d 1162 (3d Cir. 1989)........................................................................25

*Stein v. Bailey,*
    531 F. Supp. 684 (S.D.N.Y. 1982) ...............................................................27

*Swistock v. Jones,*
    884 F.2d 755 (3d Cir. 1989)............................................................................7

*Tabas v. Tabas,*
    47 F.3d 1280 (3d Cir. 1995)..........................................................................24

*Town of Poughkeepsie v. Espie,*
    402 F. Supp. 2d 443 (S.D.N.Y. 2005)...........................................................12

*United States v. Snyder,*
    291 F.3d 1291 (11th Cir. 2002) .....................................................................27

*Veney v. Ojeda,*
    321 F. Supp. 2d 733 (E.D. Va. 2004) ...........................................................29

*Victorian House, Inc. v. Fisher Camuto Corp.,*
    769 F.2d 466 (8th Cir. 1985) ..................................................................27, 28

*Warden v. McLelland,*
    288 F.3d 105 (3d Cir. 2002)............................................................................7

*Whelan v. Abell,*
    48 F.3d 1247 (D.C. Cir. 1995) ................................................................30, 32

*Wisniewski v. Johns-Manville Corp.,*
    759 F.2d 273 (3d Cir. 1985)............................................................................7

*Woods Exploration & Producing Co. v. Aluminum Co. of Am.,*
    438 F.2d 1286 (5th Cir. 1971) .......................................................................31

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    401 U.S. 321 (1971)......................................................................................13

## Statutes

15 U.S.C. § 15...........................................................................................................8

18 U.S.C. § 1962(c) ........................................................................................17, 22, 24

18 U.S.C. § 1962(d) ............................................................................................24, 25

18 U.S.C. § 1964(c) ...................................................................................................10, 21

Federal Rules of Civil Procedure

    Rule 9(b) .........................................................................................................22

    Rule 12(b)(6).........................................................................................7, 19, 20

Virginia Code

    § 18.2-499 ..................................................................................................26, 28

    § 18.2-500 ......................................................................................................26

    § 18.501(b).....................................................................................................26

## Other Authorities

2 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 338b, at 145 (rev. ed. 1995)................................9

Model Rules of Prof'l Conduct R. 1.2 cmt. 1...............................................................................28

## Preliminary Statement

Civil RICO complaints run the gamut.  At one end of the spectrum are routine business disagreements badly pled as RICO claims.  These are the types of RICO complaints that can be dispensed with at the outset of the case, and are the types of claims referenced by the MANUAL FOR COMPLEX LITIGATION which Rambus cites in its Introduction.

At the other end of the spectrum are civil RICO complaints setting forth a detailed statement of allegations that a corporation and independent outsiders pursued a long-standing pattern of fraudulent, illegal and unethical conduct designed to enrich themselves at the expense of competitors, consumers and the competitive process.  The Micron Complaint addressed by Rambus's motion to dismiss is at that end of the spectrum.  In an attempt to obscure its motion's lack of merit, Rambus proceeds at the level of easy generality, flying over the courthouse at 35,000 feet.  Back at courthouse level, however, Rambus's motion runs into a series of disabling bumps.

First, its lead argument that Micron's RICO claim is time-barred identifies the correct test (when did the injury occur?), but doesn't apply it.  Rather, Rambus focuses on a sub-set of the predicate acts about which Micron knew in 2001, pretends that sub-set is all the predicate acts alleged, and announces victory.  In fact, Micron has continued to suffer new injuries during the limitations period.  Rambus's fraudulent concealment of its corrupt litigation scheme tolled the limitations period in any event.

Second, Rambus argues Micron fails to state a RICO claim on the merits.  Its merits argument has a rote quality to it, addressing four RICO pleading elements that can

1

sometimes disable RICO complaints and, with scant treatment of Micron's actual allegations, asserting those elements are insufficiently alleged here. Rambus is wrong. The Rambus RICO "person" is distinct from the association in fact litigation "enterprise," for the sufficient reason that the enterprise includes outside lawyers with independent obligations imposed by law. Micron has alleged RICO injury proximately caused by Rambus's predicate acts of the type that the Third Circuit has held constitutes RICO injury. The corrupt RICO scheme is alleged with particularity. The conspiracy allegations satisfy the relevant pleadings requirements. Rambus's merits arguments are makeweight.

Third, Rambus asserts that the state law claim fails because a company cannot conspire with itself. But Virginia courts and federal courts sitting there have held that when the conspirators had an independent economic motive separate from the company's (as alleged in the Complaint), the "intracorporate" conspiracy immunity vanishes.

Fourth, Rambus's final argument is that it enjoys immunity for its decade-and-a-half of intentional misconduct under the *Noerr-Pennington* doctrine. Rambus is wrong again. The corrupt litigation enterprise alleged in detail in the Complaint is not the kind of serious but episodic litigation misconduct that the adjudicative system can police by sanctions meted here or there. Rather, the Complaint alleges fraudulent, illegal and unethical conduct that undermines the core of the affected litigation. (*See* Complaint ¶¶ 1-11, 49, 65-76 & 106 (Rambus's conduct "depriv[ed] the litigations of their legitimacy").) In these circumstances, as the Third Circuit and other courts have held, the defendant may not shield its misconduct behind *Noerr* immunity.

2

Rambus's motion to dismiss should be denied.

## Summary of Argument

A movant seeking to dismiss a complaint on the pleadings faces a high hurdle that Rambus does not clear. The allegations in the Complaint must be accepted as true and read as favorably as possible in Micron's favor. Much of Rambus's motion amounts to quibbling with the allegations of the Complaint.

Rambus's argument that Micron's RICO claim is time-barred turns on the wrong test (and ignores most of the misconduct alleged in the Complaint). Rambus focuses on the time at which certain of the predicate acts occurred. The time of the earliest predicate acts does not trigger the limitations period. Rather, it begins when the plaintiff suffers injury and is reasonably aware of its source and, under the "separate accrual rule," a new limitations period runs afresh with each new injury. Because Micron has suffered repeated, fresh injuries within the limitations period, Rambus's limitations argument fails. Moreover, the Complaint pleads that Rambus fraudulently concealed most of its misconduct, which equitably tolls the limitations period.

Rambus makes four arguments that Micron did not sufficiently plead its RICO allegations. None has merit. The first is that the RICO "person" is insufficiently distinct from the RICO "enterprise." The RICO corrupt litigation enterprise, however, includes two outside attorneys, who are distinct and by law independent from the client, as the cases hold. Rambus's second argument is that Micron has not pled RICO injury. Micron has pled it incurred unnecessary legal fees, suffered management distraction and lost opportunities because of Rambus's corrupt litigation enterprise, which are sufficient

3

allegations of RICO injury under Third Circuit law. Rambus's third argument is that Micron has not pled the fraud with particularity because the dates and times of the separate mail fraud and wire fraud acts were not alleged. This argument is badly confused. The relevant question is whether the *fraud* is alleged with particularity (it is, abundantly). The case law is well-settled that the dates and times of the separate wire and mail fraud acts do not have to be alleged. Rambus's fourth argument is that the RICO conspiracy fails, because it only alleges a conspiracy to commit the predicate acts, and that that is insufficient under the case law. Again, this is a badly confused argument. The case law requires simply that the conspirators agreed to commit the predicate acts (concededly alleged), and that the conspirators intended the predicate acts to further the interest of the enterprise (also alleged).

Next, Rambus argues that Micron's state law conspiracy claim fails because a corporation cannot conspire with its agents. Under Virginia law, this doctrine does not apply where the non-corporate conspirators had an economic motive to conspire independent from the corporation's, as the Complaint alleges.

Finally, Rambus argues that the *Noerr* doctrine absolutely immunizes their misconduct. It does not. Where the defendant's misconduct is so thorough and pervasive as to undermine the core legitimacy of the litigations it brings or defends, *Noerr* immunity does not apply. Micron alleges in detail numerous interrelated schemes and acts by Rambus that were self-consciously designed to render Micron and others unable to defend themselves against Rambus's corrupt litigation enterprise. The *Noerr* doctrine does not protect such misconduct.

4

## Summary of Allegations In The Complaint

From its inception, Rambus's business model was to collect royalties based on its patent portfolio, which was based primarily on patents stemming from its first patent application, U.S. Patent Application No. 07/510,898. (Complaint ¶ 2.)  Pursuant to its business model, Rambus filed dozens of patent applications based on the '898 application, and Rambus subsequently asserted patent infringement claims based on patents from the '898 patent application family against Micron and other manufacturers in various jurisdictions in the U.S. and Europe.  (*Id.*)  Rambus's efforts to collect royalties or obtain patent infringement damages were threatened, however, by problems with the '898 family that were known to Rambus and its management and legal counsel.  (*Id.*)

As a result, Rambus and its management and legal counsel conspired to destroy or suppress material evidence and submit false testimony to hide or deny the problems with Rambus's anticipated litigation claims.  (Complaint ¶¶ 2-9.)  First, Rambus's employees were directed to collect for shredding "various categories of documents relevant to the patents and patent infringement claims that Rambus was planning to assert against DRAM manufacturers, including Micron."  (*See e.g.*, Complaint ¶ 52.)  The document destruction scheme resulted in the massive destruction of evidence between 1998 and 2000.  (Complaint ¶¶ 44-64.)

Second, Rambus and its management and legal counsel submitted false testimony to cover up the document destruction scheme.  Once they believed that they had substantially destroyed the harmful impeaching documents, they then repeatedly submitted false testimony to this and other courts, including false testimony seeking to

5

conceal the fact that Rambus was not the rightful owner of most of the patent portfolio that it was asserting. (Complaint ¶¶ 9, 68-76, 78-82.) This conduct had the purpose and effect of hiding evidence of Rambus's anticompetitive conduct; hiding the true state of affairs of Rambus's patents; hiding the true state of affairs of Rambus's other financial transactions and business operations; making it appear that Rambus had legitimate patent and other intellectual property rights; making it appear that Rambus had legitimate contractual rights; making it appear that Rambus's litigation claims were more meritorious than they actually were; attempting to obtain or extort potentially billions of dollars from Micron and other parties based on a false record and perverted evidence; using false and perjured testimony to mislead the courts; and enriching Rambus and others, including its officers and employees, through these acts and fraudulent practices. (Complaint ¶ 121.)

This conduct deprived Rambus's litigations of their legitimacy by, among other things, avoiding an honest determination on the merits. (Complaint ¶ 101.) As a result, Micron has been a direct victim of Rambus's wrongful scheme and has "been forced, among other things, to expend valuable resources, including attorneys' fees and management and employee time and attention, on litigation triggered by Rambus's inappropriate assertion of patent infringement and other claims." (Complaint ¶ 12.)[1]

---

[1]    Micron has suffered RICO injury in connection with the following lawsuits: (1) the instant action; (2) Civil Action No. 00-792-KAJ before this Court; (3) Case No. 06-00244 RMW entitled *Rambus Inc. v. Micron Technology, Inc. and Micron Semiconductor Products, Inc.*, in the United States District Court for the Northern District of California; and (4) Case No. 04-
(footnote continued)

6

## Argument

## I.   RAMBUS CANNOT SATISFY THE RIGOROUS STANDARDS GOVERNING A MOTION TO DISMISS.

Rambus's motion to dismiss must satisfy stringent requirements, requirements relaxed which are *not* relaxed when testing a RICO complaint; rather, the Third Circuit has regularly reversed Rule 12(b)(6) dismissals of RICO complaints.

As the Third Circuit stated in *Warden v. McLelland*, in reversing a dismissal of a RICO complaint, "[b]ecause this is an appeal from a dismissal under Rule 12(b)(6), we accept the factual allegations in the complaint. We may affirm only if it is certain no relief could be granted under any set of facts that could be proven" 288 F.3d 105, 109-110 (3d Cir. 2002) (citing *Rossman v. Fleet Bank (R.I.) N.A.*, 280 F.3d 384, 387 n.1 (3d Cir. 2002)). *See also Swistock v. Jones*, 884 F.2d 755, 756 (3d Cir. 1989) (reversing dismissal of a RICO complaint, stating "we must treat the facts alleged in the complaint as true and affirm the dismissal only if it is beyond doubt that the plaintiffs could prove no set of facts that would entitle them to relief") (citing *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985)).

The Court not only must accept the truth of Micron's allegations, but also "giv[e] the Plaintiff the benefit of every favorable inference that can be drawn from the allegations." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 168 (3d Cir. 2002).

---

431105 entitled *Rambus Inc. v. Micron Technology, Inc., et al.*, in the Superior Court of the State of California for the County of San Francisco.

7

## II.    MICRON'S RICO INJURIES FALL WITHIN THE LIMITATIONS PERIOD.

### A.    The Limitations Period Is Triggered By The Discovery Of The RICO Injury, Not Of The Predicate Acts.

Rambus misapplies the test for determining when a civil RICO action accrues.

Although Rambus's statute of limitations argument is driven by the dates of a subset of

the alleged predicate acts, the law is clear that the date the injury is suffered determines

the accrual of the plaintiff's RICO claim.  Applying the proper test to the facts of this

case, Micron's injuries fall within the RICO limitations period.

### 1.    The "injury discovery" rule.

In *Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000), the Third Circuit adopted the

"injury discovery" rule as the test for accrual of RICO claims.  Under this rule, a RICO

action accrues "when the plaintiffs knew or should have known of their injury," *id.* at

484, and "the source of their injury." *Prudential Ins. Co. v. United States Gypsum Co.*,

359 F.3d 226, 233 (3d Cir. 2004).  The RICO statute of limitations inquiry focuses on

*injury*, not predicate acts.  *See Rotella v. Wood*, 528 U.S. 549, 555 (2000) (clarifying that

"discovery of the injury, not discovery of the other elements of the claim, is what starts

the clock.").

A RICO injury may occur as a single event or be a component of a larger,

continuing harm.  *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1104 (2d Cir. 1988).

This dual metric originated in federal antitrust law under the Clayton Act, 15 U.S.C. § 15

*et seq.*, after which "Congress consciously patterned civil RICO." *Klehr v. A.O. Smith*

*Corp.*, 521 U.S. 179, 189 (1997); *see also Agency Holding Corp. v. Malley-Duff &*

8

*Assocs., Inc.*, 483 U.S. 143, 150 (1983) (stating that "the civil action provision of RICO was patterned after the Clayton Act"). In the antitrust context, a "continuing violation" is one that involves multiple acts and engenders repeated injuries, as in the case of "a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years." *Klehr*, 521 U.S. at 189. "'[E]ach overt act that is part of the violation and that injures the plaintiff,' *e.g.*, each sale to the plaintiff, 'starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.'" *Id.* (quoting 2 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 338b, at 145 (rev. ed. 1995)). Similarly, a RICO injury may be part of a "continuing violation" such that each injury begins a new statutory filing period. *See Bankers Trust*, 859 F.2d at 1104; *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 774 (5th Cir. 2000).

## 2.    The "separate accrual" rule.

Recognition of the principle that each new RICO injury begins a new statutory filing period has led the courts to develop a "separate accrual" rule for new RICO injuries. *See Glessner v. Kenny*, 952 F.2d 702, 707-08 (3d Cir. 1991), *overruled on other grounds by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir. 1995); *Lares Group, II v. Tobin*, 221 F.3d 41, 44 (1st Cir. 2000); *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995); *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465-66 (7th Cir. 1992); *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). Under the "separate accrual" rule, "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Id.* (citing *Bankers Trust*, 859 F.2d at 1103). The rule grows out of Congress's decision to tie the

9

right to sue under § 1964(c) to the RICO *injury* rather than the RICO *violation* or

*predicate act*. Because the right to sue under § 1964(c) is predicated upon the occurrence

of a specific injury, each injury that arises triggers the accrual of a new action. *See*

*Bankers Trust,* 859 F.2d at 1103. Accordingly, "[a] plaintiff may sue for any injury he

discovers or should have discovered within four years of the commencement of his suit,

*regardless* when the RICO violation causing such injury occurred." *Id.* (emphasis

supplied).

### B.    Micron Discovered Its RICO Injuries Within The Limitations Period.

Properly articulated and applied, RICO's accrual rules demonstrate that Micron

discovered its injuries within the statute of limitations period. As detailed above, and

also in the Complaint, Rambus's corrupt litigation enterprise has caused Micron the

injuries of expending attorney and personnel resources. Each new expenditure that

Micron incurred responding to, and uncovering evidence of, Rambus's corrupt litigation

enterprise is a new injury under RICO. *See id.* at 1104. Because new injuries engender

"separate accrual," *id.*, Micron may properly recover for the injuries that it incurred

during the limitations period. *See Love*, 230 F.3d at 774 (RICO cause of action accrues

with each injury regardless of when predicate acts occurred); *Forbes v. Eagleson*, 183

F.R.D. 440, 444 (E.D. Pa. 1998) (same).

The Fifth Circuit recently applied this "separate accrual" rule in *Love*. *Love*

involved an ongoing RICO violation alleged by Blue Cross and Blue Shield of Texas

("BCBST"). *Love*, 230 F.3d at 774. Between 1989 and 1992, BCBST had paid a

psychiatric hospital owned by Psychiatric Institutes of America, Inc. ("PIA") for services

that — unbeknownst to BCBST — were based on fraudulent claims. *Id.* at 768-69. BCBST did not discover that it was a victim of this fraud until several years later, eventually intervening in an action against PIA on February 13, 1996. *Id.* The district court awarded PIA summary judgment on the ground that BCBST's RICO action was time-barred for claims after February 13, 1992, because BCBST's claims accrued when it should have discovered the fraudulent scheme (rather than its injuries). *Id.* at 770. The Fifth Circuit vacated, finding that the district court misapplied the RICO accrual rule by focusing on the time of the fraud rather than BCBST's injuries. *Id.* at 778. Drawing heavily from *Klehr* and *Bankers Trust*, the *Love* court resolved that BCBST could recover for all injuries it incurred within four years of filing, even though they resulted from predicate acts outside the limitations period. *Id.* at 773-75. The court reasoned that because "multiple injuries may be caused by a single RICO violation," *id.* at 773, and Congress predicated recovery under RICO on injury rather than violation, "it would seem illogical to conclude that . . . a plaintiff may *not* recover for injuries incurred within the limitations period, merely because they result from acts that . . . caused other, similar injuries outside that period." *Id.* at 774. Thus, the court concluded BCBST's injuries accrued "[e]ach time BCBST became obligated to pay a fraudulent (assumed) insurance claim," *id.* at 775, even though the RICO violation occurred outside the limitations period. *Id. See also Lares Group*, 221 F.3d at 44 (adopting *Bankers Trust*'s proposition that a cause of action accrues "each time" a plaintiff suffers an injury).

As in *Love*, Micron's injuries accrued each time it became obligated to expend attorney and personnel resources resulting from Rambus's corrupt litigation enterprise.

11

Micron has suffered numerous injuries during the four-year statutory period to uncover

Rambus's illegal acts, *see, e.g.,* Civil Action 00-792-KAJ, D.I. 638 (Micron's March 28,

2005 motion to compel discovery under the crime fraud exception), and to defend

Rambus's inappropriately asserted patents. *See, e.g.,* Civil Action 00-792-KAJ, D.I. 675

(Micron's July 1, 2005 answering brief to Rambus's supplemental and second amended

counterclaims). That Rambus's predicate acts occurred outside the limitations period is

irrelevant to the accrual inquiry. *See Bankers Trust,* 859 F.2d at 1105. Instead, "each

time [Micron] discover[ed] or should have discovered an injury . . . a new action ar[ose]

as to that injury, regardless of when the actual violation occurred." *Id.; Town of

Poughkeepsie v. Espie,* 402 F. Supp. 2d 443, 451 (S.D.N.Y. 2005) (same); *see also

Forbes,* 183 F.R.D. at 444 (stating that "each new injury accrues anew regardless of

plaintiff's knowledge of previous RICO violations and injuries"). Because Rambus's

illegal conduct caused injuries to Micron that were (and could only be) discovered within

the statutory period, *see Love,* 230 F.3d at 775, Micron may properly recover for these

injuries under RICO. *See Forbes,* 183 F.R.D. at 444 ("[P]laintiffs may recover for new

injuries incurred within four years of filing suit even though they were aware long before

then that they were being injured by defendants' pattern of racketeering.").

Although *Love* demonstrates that Micron suffered sufficiently "new" injuries each

time it expended attorney and personnel resources related to this action, *see Love,* 230

F.3d at 775 (finding a new injury for each insurance claim BCBST paid on the same

fraud), Rambus caused Micron additional and separate injury when it inappropriately

asserted its infringement claim in the Northern District of California in 2006, and when it

12

asserted its antitrust claims in the Superior Court of the State of California for the County

of San Francisco. *See* n.1 above. These are precisely the kind of "additional,

independent injury" contemplated by the separate accrual rule. *Bankers Trust*, 859 F.2d

at 1103. Indeed, Rambus deemed the California infringement action sufficiently distinct

from this case to file it in another jurisdiction. Under the separate accrual rule, these

"new injur[ies] accrue[ ] anew," and, because they falls within the limitations period,

Micron may properly recover under RICO for the damages that they cause. *Forbes*, 183

F.R.D. at 444; *see also Love*, 230 F.3d at 775; *Bankers Trust*, 859 F.2d at 1103.

Rambus's contention that Micron should have brought its RICO claims earlier

ignores the ongoing nature of the injuries that Micron has suffered. Had Micron brought

this action when it was first injured by Rambus's illegal conduct, damages from

subsequent injuries would have likely been "too speculative" to permit recovery. *See*

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971); *Klehr*, 521

U.S. at 190-91. *Zenith* counsels that, in such cases, "the cause of action for future

damages . . . will accrue only on the date they are suffered," and the plaintiff may recover

for any damages that occur within the four-year limitations period. *Zenith* 401 U.S. at

339. Thus, under both *Zenith* and the separate accrual rule, Micron is permitted to

recover for the injuries it incurred in the four years prior to the date it filed its Complaint.

*Id.*; *Klehr*, 521 U.S. at 190-91; *Love*, 230 F.3d at 775.

13

C.    **The Limitations Period For Micron's RICO Claims Was Tolled By Rambus's Fraudulent Concealment.**

Even if Micron's RICO claims were otherwise barred by the limitations period

(and they are not), the Court should deny Rambus's motion because Rambus fraudulently

concealed its wrongdoing. When a defendant has actively misled the plaintiff regarding

the plaintiff's cause of action, the doctrine of equitable tolling prevents the limitations

period from running. *See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d

1380, 1387 (3d Cir. 1994). Underlying the doctrine of equitable tolling is the

"fundamental rule of equity that a party should not be permitted to profit from its own

wrongdoing." *Id.* at 1388.

The Third Circuit has expressly adopted the doctrine of equitable tolling in the

context of a defendant's fraudulent concealment of RICO claims. *Forbes*, 228 F.3d at

486. As set forth in *Forbes*, to defeat a statute of limitations argument, Micron need only

have pled in its Complaint: (1) "active misleading" by Rambus, (2) which prevented

Micron from recognizing the validity of its claim within the limitations period and (3) the

exercise of "reasonable due diligence [by Micron] in attempting to uncover the relevant

facts." *Id.* at 486-87.

Micron has adequately pled these elements. First, Micron has satisfied the "active

misleading" element by alleging that Rambus engaged in fraudulent conduct to conceal

its misdeeds. (*See* Complaint ¶¶ 37-43, 78-82 (detailing Farmwald's false and misleading

testimony concerning his development of the ideas in the '898 patent and the timing of

the "St. Michael's Alley" meeting); *id.* at ¶¶ 68-76 (describing false testimony by

14

Rambus's management, in this Court and others, intended to hide Rambus's widespread

destruction of documents and other evidence).) Second, Micron alleged that Rambus's

"active misleading" led Micron to believe that it did not have a cause of action under

RICO. (*See id.* at ¶ 88 ("Because the illegal conduct, as specifically alleged in this

complaint, was kept secret by Rambus and its management, Micron did not know of

defendant's secret agreements.").) Finally, Micron fulfilled the doctrine's third element

by alleging that Micron exercised reasonable diligence in attempting to uncover relevant

facts. (*See id.* at ¶¶ 83-90 (explaining that evidence referenced in RICO Complaint was

at all relevant times in possession, custody, and control of Rambus and Rambus's

management, and that Micron could not have discovered illegal conduct at an earlier date

by the exercise of due diligence).) Because Micron has properly asserted fraudulent

concealment by Rambus, the equitable tolling doctrine applies.

In assessing Micron's fraudulent concealment claim, it is necessary to recognize

that the doctrine of equitable tolling differs in important respects from the "injury

discovery" rule that governs the accrual of RICO claims. *See, e.g., Oshiver*, 38 F.3d at

1386. As the Third Circuit stated in *Forbes*, "[t]he discovery rule keys on a plaintiff's

cognizance, or imputed cognizance, of *actual injury*. Equitable tolling, on the other hand,

keys on a plaintiff's cognizance, or imputed cognizance, of the *facts supporting the

plaintiff's cause of action*." 228 F.3d at 486 (quoting *Oshiver*, 38 F.3d at 1390) (emphasis

in *Forbes*). Therefore, "if the defendant conceals *any* element of the offense, including,

but not limited to, the injury itself, the four-year period will be tolled." *Mathews v.

Kidder, Peabody & Co.*, 260 F.3d 239, 257 n.26 (3d Cir. 2001).

15

Rambus has concealed "facts supporting [Micron]'s cause of action," including numerous predicate acts. *Oshiver*, 38 F.3d at 1390. It is in the equitable tolling context — not, as Rambus erroneously argued, the accrual context — that Micron's knowledge of predicate acts is apposite. As Micron alleged in its Complaint, Rambus actively concealed the following predicate acts: (1) the "Shred Day" that Rambus held on August 26, 1999; (2) the "Shred Day" that Rambus held on or about December 28, 2000; (3) Rambus's instructions to its outside counsel to destroy patent files *after* it initiated litigation against Hitachi; and (4) the false testimony of several Rambus representatives, including Michael Farmwald, Robert Kramer, Neil Steinberg, and Allen Roberts.[2] (*See* Complaint ¶¶ 58-82.) These predicate acts support Micron's RICO action. *See Forbes*, 228 F.3d at 486; *Mathews*, 260 F.3d at 257. Accordingly, if the Court determines that equitable tolling is required, it should invoke the doctrine in Micron's favor due to Rambus's fraudulent concealment. *Id.* at 257 n.26 ("[The] fraudulent concealment doctrine provides an extremely generous 'out' from the potentially harsh injury discovery rule of *Forbes*").

---

[2] These violations, though clearly stated in Micron's Complaint, are absent from Rambus's "chart" comparing Micron's Complaint to its Sanctions Motion. (*See* Opening at Appendix A; *id.* at 8 (falsely asserting that "Micron made precisely the same allegations more than four years before the Complaint was filed in its August 31, 2001 Sanctions Motion").) A complete chart would demonstrate that (1) Micron did allege these violations in its Complaint, and (2) Micron could not have included them in its Sanctions motion because Rambus concealed its misconduct until after that motion was filed. *See* Exhibit A.

16

III.    **MICRON HAS APPROPRIATELY ALLEGED ITS RICO CLAIMS.**

    A.    **Micron's Section 1962(c) Claim Pleads An Enterprise Distinct From Rambus.**

Rambus correctly notes that "a RICO defendant [must] be distinct from the RICO enterprise it purportedly controls." (Opening at 15. (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). Based on this premise, Rambus argues that Micron's RICO Complaint should be dismissed because the RICO "person" (Rambus) is not sufficiently "distinct" from the association in fact "enterprise" (Rambus, Rambus's management, individual Rambus officers and employees, and two outside counsel). (*See* Opening at 15-19.) In fact, Rambus misreads the requirements of the person/enterprise distinction, the case law governing this determination and the Complaint.

First, the first case on which Rambus relies, *Cedric Kushner*, demonstrates that the person/enterprise distinction is a statutory hurdle easily met here. In *Cedric Kushner*, the alleged RICO person was the boxing promoter, Don King. Mr. King was the sole shareholder of Don King Productions, the corporate entity that was alleged to be the RICO enterprise. The district court dismissed the complaint, finding the person was not distinct from the enterprise, and the Second Circuit affirmed. In a unanimous opinion, the Supreme Court reversed. "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." 533 U.S. at 163.

17

Second, it is true that where the RICO person and the RICO enterprise have no distinct legal status the distinctiveness requirement is not met. The same result does *not* obtain, however, where, as here, the enterprise includes not only the corporation but also distinct entities with independent legal responsibilities, such as the outside lawyers and law firms alleged in the Complaint (at ¶¶ 21-22 & 118). Micron alleges that two outside counsel (Steinberg and Vincent) were part of the association in fact, that each was "professionally bound to exercise his independent judgment, and had duties separate and independent from pursuing the interest of his client, including to obey the law and follow the rules of professional conduct." (Complaint ¶¶ 21-22.) On these facts, *Living Designs, Inc. v. E.I. DuPont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005), is directly on point.

In *Living Designs*, the RICO person was DuPont, and the RICO enterprise was a corporation, its two outside law firms, and expert witnesses retained by the law firms. The plaintiffs alleged that the "litigation enterprise" of DuPont and its two outside law firms had improperly withheld evidence sought in earlier civil litigation that the plaintiffs had settled. Only after settlement did this suppressed evidence come to light. The plaintiffs then filed a new lawsuit, alleging RICO and related claims. The district court dismissed, finding the DuPont "person" insufficiently distinct from the "litigation enterprise" of DuPont and its outside law firms. *See id.* at 361. The Ninth Circuit reversed:

> To be sure, if the "enterprise" consisted only of DuPont and
> its employees, the pleading would fail for lack of
> distinctiveness [citing *Cedric Kushner*]. However, there is no

18

> question that law firms retained by duPont are distinctive
> entities. . . . This is not a situation where the enterprise
> cannot be either formally or practically separable from the
> person. . . . These law firms are required to conform to
> ethical rules and thus are not merely at the beck and call of
> their clients.
>
> *    *    *
>
> Indeed, the rules of professional conduct require law
> firms to be distinct entities and to maintain their professional
> independence. . . . Thus, the litigation "enterprise"
> necessarily must be distinct from the client retaining legal
> assistance.

*Id.* at 361-362.

An identical association in fact is alleged here. A corporation (Rambus) and its

management work with two outside lawyers (Steinberg and Vincent), having independent

and distinct status and responsibilities, in furtherance of a corrupt litigation enterprise.

Third, cases in the Third Circuit and elsewhere have recognized that a corporate

RICO person can participate both as a RICO person *and* as a member of an association in

fact enterprise. *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237 (D.

N.J. 2000), is instructive. There, the plaintiff alleged the RICO defendant

PricewaterhouseCoopers, its partners and its counsel were the RICO enterprise. The

court denied a Rule 12(b)(6) motion to dismiss on the basis the person and enterprise

were insufficiently distinct. Distinguishing the Third Circuit decision on which Rambus

relies as superseded by later precedent (*see* below), the court held that a corporation can

simultaneously "serve dual roles as both RICO defendant and member of [the]

enterprise." *Id.* at 260. Accordingly, "'[a]n entity may be a member of an association-in-

fact enterprise while simultaneously conducting or participating in the activity of the

19

enterprise as a RICO person.'" *Id.* at 261 (quoting *PTI Servs., Inc. v. Quotron Sys., Inc.*, No. 94-2068, 1995 WL 241411, at *12 (E.D. Pa. April 19, 1995)). In short, Micron does not run afoul of the person/enterprise distinctiveness requirement by alleging Rambus is both the RICO person and a participant in the RICO association in fact. Such allegations comport precisely with Third Circuit law.

Fourth, the principal case on which Rambus relies has been superseded by later decisions. Rambus relies at length on *Brittingham v. Mobil Corp.*, 943 F.2d 297 (3d Cir. 1991). (*See* Opening at 15-16 & 17-18.) The court in *Emcore Corp.* held that *Brittingham's* "approach to corporate distinctiveness was overruled by *Jaguar Cars*." 102 F. Supp. 2d at 257. To the limited extent that *Brittingham* is read as holding that the corporate RICO person must be distinct from the association in fact enterprise, that holding is unexceptional. To the extent *Brittingham* is relied on for the proposition that corporate managers cannot also be participants in the RICO enterprise, that holding has been overruled by *Jaguar*. *See id.*[3]

In short, the RICO person/enterprise distinction boils down to a few simple precepts. Rambus is distinct from the litigation "enterprise" consisting of Rambus, its management and outside law firms. The fact that "Rambus" is both the person and *one*

---

[3]    *See also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, No. 95-1698, 1995 WL 455969, at *7 (E.D. Pa. July 27, 1995) (finding that *Brittingham's* distinctiveness analysis, which relied on the notion that "a corporation must always act through its employees . . . did not survive *Jaguar Cars*, which held that a corporation does maintain a status separate and apart from its employees.").

20

entity of the association in fact is of no moment. The two are distinct and Rambus's attack must be rejected.

### B.    Micron Has Alleged RICO Injury.

Contrary to Rambus's assertion (at 19-20 & n.11), Micron has alleged RICO injury. Under 18 U.S.C. § 1964(c), a plaintiff may sue and shall recover treble damages and reasonable attorneys' fees if it was "injured in [its] business or property by reason of a violation of section 1962 of this chapter." As the Supreme Court has interpreted this statute, the plaintiff's injury must have been proximately caused by a RICO violation. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269-72 & n.20 (1992) ("our use of the term 'direct' should merely be understood as a reference to the proximate-cause enquiry").

Under this standard, as the Third Circuit has held, attorneys' fees that a plaintiff is forced to expend constitute injury to its business or property within the meaning of RICO. *See, e.g., Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 355 (3d Cir. 1986) ("We hold that Malley-Duff's allegations of 'great expenses, delays and inconvenience . . . in its prosecution of the First Lawsuit' were a sufficient pleading of injury to business or property to give Malley-Duff RICO standing."). In addition, delay, added expenses, and inconvenience to a business's functions will constitute RICO injury. *See, e.g., Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.*, 174 F.R.D. 572, 582 (D. N.J. 1997) ("Further, business property is injured, within the meaning of § 1964(c), if the § 1962 misconduct of defendant causes delay, added expenses and inconvenience to the business's functions.") (citing *Malley-Duff*).

21

While Rambus asserts that Micron has not alleged any injury directly resulting from or proximately caused by Rambus's and others' document destruction scheme and false testimony, Micron has specifically alleged in its Complaint that it has been "directly injured in its business or property by reason of these persons' violation of 18 U.S.C. § 1962(c)." (Complaint ¶ 127.)  As alleged in Micron's Complaint, "the Rambus Group conspired to destroy or suppress material evidence and submit false testimony" to hide or deny the problems with Rambus's anticipated litigation claims.  (Complaint ¶¶ 2-9.)  This conduct had the purpose and effect of depriving Rambus's litigations of their legitimacy by, among other things, avoiding an honest determination on the merits.  (*see e.g.,* Complaint ¶ 101.)  As a result of this wrongful conduct, Micron has "been forced, among other things, to expend valuable resources, including attorneys' fees and management and employee time and attention, on litigation."  (Complaint ¶ 11.)

Rambus's contortion of these allegations as amounting to a claim for personal injury to its management and employees (Opening at 19-20) ignores the procedural posture of this motion.  The Court must accept Micron's allegations as true and give them the benefit of every favorable inference.  *See, e.g., Bd. of Trs. of Teamsters Local 863 Pension Fund*, 296 F.3d at 168.  Rambus is simply quibbling with the allegations in the Complaint.

### C.    Micron's Allegations Of Mail Fraud And Wire Fraud Satisfy Rule 9(b).

Rambus argues that Micron's RICO claims are based on fraud and hence must satisfy the particularity pleading requirements of FED. R. CIV. P. 9(b).  Rambus then asserts that Micron failed to plead the individual acts of wire fraud and mail fraud with

22

particularity, and the RICO claims must be dismissed on that basis. This argument is

based exclusively on *Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004). (*See*

Opening at 21-22.) Rambus's argument and its reliance on *Lum* are badly misplaced.

First, in *Lum*, *neither* the fraudulent scheme *nor* the wire or mail fraud allegations

were alleged with particularity. *See Lum*, 361 F.3d at 225-26. The fraudulent scheme

was that the defendant did not disclose some borrowers were able to obtain loans with

interest rates below the "prime rate," whereas (according to the plaintiffs) "prime rate"

would almost universally be understood to mean the lowest rate available for the bank's

most preferred clients. *Id.* at 226. The Third Circuit disagreed. "[T]he term 'prime rate'

is sufficiently indefinite that it is reasonable for the parties to have different

understandings of its meaning." *Id.* Because the plaintiffs' fraud claim was premised on

"prime rate" meaning *only* what the plaintiffs alleged, and because that inference was not

reasonable, dismissal was appropriate. *Id.* at 227.

In short, *Lum* did not turn on the predicate acts of wire fraud and mail fraud being

insufficiently alleged. *Lum* turned on the fact that *no fraud* was sufficiently alleged. *Lum*

merely holds that the plaintiff must "plead with particularity 'the circumstances' of the

alleged fraud in order to place the defendants on notice of the precise misconduct with

which they are charged." *Id.* at 223-24. The Complaint abundantly does so. It alleges,

with particularity, that Rambus's litigation enterprise was fundamentally fraudulent and

deceptive from its inception through its execution to the present. (*See, e.g.*, Complaint

¶¶ 1-9, 92-96, 106-07, 121.)

23

Second and relatedly, it is the scheme that must be fraudulent, not the individual mailings, faxes and telephone calls. *See Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (stating that "use of the mails need not be an essential element of the scheme"); *Kehr Packages Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413-14 (3d Cir. 1991) ("The mailings need not contain any misrepresentation. Rather, 'innocent' mailings — ones that contain no false information — may supply the mailing element") (quoting *Schmuck*, 489 U.S. at 715). *See also Tabas v. Tabas*, 47 F.3d 1280, 1295 (3d Cir. 1995) (advancing same proposition as *Schmuck*). If the mailings or wire transmissions, even if innocent, were used to facilitate the fraudulent scheme, they constitute acts of wire fraud or mail fraud under these controlling cases.

Third, and as a consequence, the relevant question is does the Complaint allege "facts supporting the inferences that mails or wires were used." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001). Here, we have a 16-year scheme involving document destruction in California, perjury in Virginia, litigation in Delaware, later litigation (twice) in California, and perjury in Washington, D.C. These allegations compel the conclusion that mails and wires were frequently used to facilitate the fraudulent scheme. In these circumstances, the plaintiff is allowed to take reasonable discovery to support its allegations of wire and mail fraud. *See id.*

**D.    Micron Has Appropriately Alleged Its 1962(d) RICO Conspiracy Claim.**

Rambus's final attack on the RICO pleadings is that the RICO conspiracy count under § 1962(d) should be dismissed. Rambus first asserts that the underlying § 1962(c)

24

RICO violation has not been sufficiently alleged (Opening at 23.); obviously, if the Court finds that it has, this basis disappears. Rambus then argues that, in any event, the RICO "conspiracy claim also fails because Micron has not alleged a conspiracy to commit any act beyond the predicate acts." (Opening at 23. (quoting *Glessner*, 952 F.2d at 714). This is a deeply confused reading of *Glessner* and related case law.

In *Shearin v. E.F. Hutton Group, Inc.*, the Third Circuit stated that two of the elements of a § 1962(d) violation are "agreement to commit predicate acts *and* knowledge that the acts were part of a pattern of racketeering activity." 885 F.2d 1162, 1166-67 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000) (emphasis supplied). Stated differently, "mere agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d)." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 792 n.8 (3d Cir. 1984); *Glessner*, 952 F.2d at 714 (quoting *Seville* for same proposition). In addition to an agreement to commit predicate acts, the complaint must allege that the conspirators knew that the predicate acts that they agreed to commit would "further the affairs of the enterprise." *Seville*, 742 F.2d at 792 n.8.

In short, Rambus's argument that the plaintiff must plead not only that the conspirators agreed to commit predicate acts, but also that they agreed to commit *non*-predicate acts, is nonsensical. Rather, the requirement is simply that the plaintiff allege that the conspirators agreed to commit the predicate acts, and did so knowing the predicate acts would further the affairs of the RICO enterprise. *See id.*

Micron so alleges. (*See, e.g.*, Complaint ¶ 130 (conspirators acted "willfully").) Even if Rambus's counterintuitive reading that the plaintiff must allege that the conspirators agreed to commit *non*-predicate acts is correct, the Complaint alleges that as well. (*See* Complaint ¶ 106 (conspirators agreed to do a variety of things to make the corrupt litigation enterprise appear legitimate).)

## IV.    MICRON HAS APPROPRIATELY ALLEGED A STATE-LAW CONSPIRACY.

Micron has alleged that Rambus, Rambus's management, Geoffrey Tate, Richard Crisp, Michael Farmwald, Joel Karp, Neil Steinberg, and Lester Vincent "had a personal stake in conspiring to injure Micron in its trade or business and derived some direct economic benefit from the alleged illegal conduct." (*See* Complaint ¶¶ 32, 134-139.) This is a valid civil conspiracy under Virginia Code § 18.2-499.[4]

Although a corporation generally may not conspire with itself or its agents, this rule is not absolute. *See Selman v. Am. Sports Underwriters, Inc.*, 697 F. Supp. 225, 238 (W.D. Va. 1990). There are two recognized exceptions to the "intra corporate conspiracy doctrine." *See Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985). *See also Greenville Publ'g Co., Inc. v. Daley Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). First, under the "unauthorized acts" exception, a corporation can conspire with

---

[4] "Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . shall be . . . guilty of a Class 1 misdemeanor." VA. CODE § 18.2-499; *see also* VA. CODE § 18.2-500 (providing civil remedies for violations of § 18.2-499). Under VA. CODE § 18.501(b), "a person" is defined as "any person, firm, corporation, partnership or association."

agents that act outside the scope of their authority. *Id.* at 1252-53. Second, the "personal stake" exception, directs that "the doctrine of intra corporate immunity is excepted when an agent of the corporation has an 'independent personal stake' in achieving the corporation's impermissible objectives." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 151 F. Supp. 2d 723, 731 (E.D. Va. 2001). Because Rambus's directors, employees, and attorneys had independent interests in the company's illegal goals, the "personal stake" exception applies to this case.

Each member of the conspiracy had a personal stake in, and derived a direct economic benefit from, Rambus's illegal conduct. (*See* Complaint ¶ 135.) For example, Rambus implemented incentive stock plans for success in its litigations that provided its directors and employees over $100 million. (*Id.* at ¶ 23.) Rambus's stock incentive plan, and the huge sums of cash that it paid out, provided the co-conspirators a direct personal stake in the illegal conduct that was separable and apart from the company's interests. *See, e.g., United States v. Snyder*, 291 F.3d 1291, 1293 (11th Cir. 2002) ("Due to [an executive]'s stock options, defendants had a substantial personal interest in [the company]"); *Stein v. Bailey*, 531 F. Supp. 684, 694 (S.D.N.Y. 1982) (including directors' and executives' stock plan in analysis of "personal financial stake in the outcome of the litigation" for securities violation). This financial benefit is the kind of personal interest that cases have found to satisfy the exception. *See Cunningham v. PFL Life Ins. Co.*, 42 F. Supp. 2d 872, 884 (N.D. Iowa 1999) (exception satisfied where the defendant insurance companies' agents "could have increased their sales commissions" as a result of the conspiracy); *Victorian House, Inc. v. Fisher Camuto Corp.*, 769 F.2d 466, 469 (8th

27

Cir. 1985) (exception proper where the defendant's distributor was "getting a lot of heat" for failing to keep plaintiff in line with price fixing conspiracy). In addition, Rambus's counsel, Lester Vincent and Neil Steinberg, had a personal stake in the conspiracy that was separate and apart from the company due to the fees that they charged and their positions as independent attorneys. *See New York v. Hill,* 528 U.S. 110, 114-15 (2000) (attorney must retain control over tactical and strategic decisions in representation of client); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 853 (3d Cir. 1996) ("It is clear that attorneys exercise 'exclusive control of the manner of performing [their legal work], being responsible [to the client] only for the result.'") (quoting *Feller v. New Amsterdam Cas. Co.*, 363 Pa. 483 (1950)); Model Rules of Prof'l Conduct R. 1.2 cmt. 1. Finally, Messrs. Crisp and Karp both worked as independent consultants to Rambus during the conspiracy and, therefore, had personal economic incentives to conspire to injure Micron that were separate from the interests of the corporation. *Greenville*, 496 F.2d at 399.

Rambus's arguments to the contrary are unavailing. Crafting a new rule out of whole cloth, Rambus avers that the "personal stake" exception is unavailable to Micron because "the Virginia Supreme Court has not recognized" the exception. (Opening at 25.) But it is hornbook law that a court's silence on an issue holds no precedential value. Moreover, federal courts sitting in Virginia have applied the "personal stake" exception when assessing claims under Virginia Code § 18.2-499. *See Trigon*, 151 F. Supp. 2d at 731 (finding "the plaintiffs have pleaded sufficient facts to satisfy the personal stake exception" to the intra corporate immunity doctrine); *Selman*, 697 F. Supp. at 237 (same). As in *Trigon* and *Selman*, the Court should follow the overwhelming weight of authority

28

that recognizes the exception. *See, e.g., Buschi*, 775 F.2d at 1252; *Greenville*, 496 F.2d at

399; *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004); *Huntingdon Life*

*Sciences, Inc., v. Rokke*, 986 F. Supp. 982, 991 (E.D. Va. 1997); *Flinders v. Datasec*

*Corp.*, 742 F. Supp. 929, 936 n.11 (E.D. Va. 1990).  Because "[o]n the face of the

complaint, [Micron] ha[s] pleaded sufficient facts to satisfy the personal stake exception,"

*Trigon*, 151 F. Supp. 2d at 731, the Court should deny Rambus's motion on this ground.

## V.    THE *NOERR-PENNINGTON* DOCTRINE DOES NOT BAR MICRON'S COMPLAINT.

Rambus's argument (at 27-30) that the *Noerr-Pennington* doctrine bars Micron's

Complaint fails to meaningfully treat either the relevant case law or the allegations in the

Complaint.  Rambus is correct that the *Noerr* doctrine protects the First Amendment right

to petition the government for redress of grievances, including through litigation.

Rambus is also correct that in the usual run of cases, *Noerr* immunizes litigation unless

the litigation is "objectively baseless" and attempts to "interfere directly with the business

relationships of a competitor."  (Opening at 28-29 & n.15.)  But where a company's

deceptive conduct materially undermines the core legitimacy of the litigation process —

as Rambus has done and as the Complaint alleges — *Noerr* provides no protection.

Courts have recognized a difference between (a) pursuing an objectively baseless

litigation for the purpose of interfering with the business affairs of a competitor *and* (b)

engaging in deceptive practices before *political* government agencies.  In the political

arena, courts have reasoned, the best remedy for false charges is more information, not

satellite litigation.  *See, e.g., Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*,

29

690 F.2d 1240, 1261 (9th Cir. 1982) ("There is an emphasis on debate in the political

sphere, which could accommodate false statements and reveal their falsity").  But in

administrative or adjudicative settings, where the agencies or courts rely on the accuracy

of the information presented by the parties, deceptive practices of sufficient materiality

are not protected by *Noerr*.  The Supreme Court has explained that "[m]isrepresentations,

condoned in the political arena, are not immunized when used in the adjudicatory

process." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513

(1972).  The Supreme Court also has stated that deceptive or unethical practices "in less

political arenas" could be found outside the ambit of *Noerr*'s protection.  *See Allied Tube*

*& Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499-500 (1988).

The lower courts, including the Third Circuit, have developed and refined the

Supreme Court's observations.  In *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119 (3d

Cir. 1999), the court held that "a *material* misrepresentation that affects the very core of a

litigant's . . . case will preclude *Noerr-Pennington* immunity." *Id.* at 124 (emphasis in

original).[5]  As the court in *Whelan v. Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995),

succinctly stated in a case involving an administrative proceeding, *Noerr* does not protect

"petitions based on known falsehoods."  In *Clipper Exxpress*, the court held that *Noerr*

does not immunize false information supplied to an administrative or adjudicatory body.

*See* 690 F.2d at 1261.[6]  The court in *Israel v. Baxter Labs., Inc.*, 466 F.2d 272, 278 (D.C.

---

[5]    While Rambus quotes and cites *Cheminor* eight times in four pages, *see* Opening at
27-30, it does not refer to the court's holding quoted textually.

[6]    The court in *Clipper Exxpress* reasoned that "in the adjudicative sphere," "information
(footnote continued)

Cir. 1972), reached the same result in a case involving deceptive submissions to the Food

and Drug Administration, stating: "No actions which impair the fair and impartial

functioning of an administrative agency should be able to hide behind the cloak of an

antitrust exemption." The Fifth Circuit held that *Noerr* did not protect the intentional

filing of false forecasts with a state regulatory agency in *Woods Exploration & Producing

Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1296-98 (5th Cir. 1971), stating "the abuse

of the administrative process here alleged does not justify antitrust immunity."

   The allegations in Micron's Complaint satisfy the test articulated in *Cheminor* that

where the defendant's conduct affects the "core" of the litigation, *Noerr* immunity does

not obtain. 108 F.3d at 123-24. As alleged in Micron's Complaint, "the Rambus Group

conspired to destroy or suppress material evidence and submit false testimony" to hide or

deny the problems with Rambus's anticipated litigation claims. (Complaint ¶¶ 2-9.) The

document destruction scheme resulted in the destruction of over 1,000 backup tapes in

July 1998, 185 burlap sacks and 60 additional boxes of documents on "Shred Day 1998,"

188 banker's boxes of documents on "Shred Day 1999," and 575 banker's boxes of

documents on "Shred Day 2000." (Complaint ¶¶ 44-64.)  Rambus's employees were

directed to collect for shredding "various categories of documents relevant to the patents

and patent infringement claims that Rambus was planning to assert against DRAM

manufacturers, including Micron." (*See e.g.*, Complaint ¶ 52.)

---

supplied by the parties is relied on as accurate for decision making and dispute resolving. The
supplying of fraudulent information thus threatens the fair and impartial functioning of these
agencies and does not deserve immunity from the antitrust laws." 690 F.2d at 1261.

31

This conduct was intended to and did deprive Rambus's litigations of their legitimacy by, among other things, avoiding an honest determination on the merits. (*See e.g.,* Complaint ¶ 101.)  Given the materiality and pervasiveness of the document destruction scheme and false testimony, this conduct clearly affected the "core" of the litigations in which Rambus is asserting its patent infringement claims, and such conduct should preclude *Noerr* immunity under *Cheminor*.[7]

---

[7]  While some courts have misread the Supreme Court's opinion in *Omni* as stating that even material misrepresentations are protected by *Noerr* immunity, that opinion was limited to intentional misrepresentations in the political arena. *See City of Columbia v. Omni Outdoor Adver., Inc.,* 499 U.S. 365, 383-84 (1991).  Indeed, in *PRE,* the Supreme Court expressly left the question open in the litigation context. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 61 n.6 (1993) ("We need not decide here whether and, if so, to what extent Noerr permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations.").  Accordingly, lower courts have subsequently continued to hold that material misrepresentations are not protected by *Noerr* immunity. *See, e.g., Baltimore Scrap Corp. v. David J. Joseph Co.,* 237 F.3d 394, 401-02 (4th Cir. 2001) (citing *Cheminor*); *Cheminor,* 168 F.3d at 124; *Kottle v. Nw. Kidney Ctrs.,* 146 F.3d 1056, 1061-62 (9th Cir. 1998); *Whelan v. Abell,* 48 F.3d 1247, 1255 (D.C. Cir. 1995).

## Conclusion

For the foregoing reasons, Rambus's Motion to Dismiss should be denied in all respects.

Dated: June 12, 2006

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Matthew W. King (#4566)
king@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Plaintiffs Micron Technology, Inc.
and Micron Semiconductor Products, Inc.*

OF COUNSEL:

WEIL, GOTSHAL & MANGES LLP
Matthew D. Powers
Jared Bobrow
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1175
(650) 802-3000

QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
William C. Price
Jon R. Steiger
Dominic Surprenant
Diane C. Hutnyan
Robert J. Becher
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

33

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2006,  I electronically filed and hand delivered the

foregoing document with the Clerk of Court using CM/ECF which will send notification of such

filing to the following:

> Mary B. Graham, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899-1347

> Josy W. Ingersoll, Esquire
> Young Conaway Stargatt & Taylor
> Rodney Square North
> P.O. Box 391
> Wilmington, DE 19899-0391

I hereby certify that on June 12, 2006, I transmitted the document by Federal Express to

the following non-registered participant:

Thomas K. Cauley, Jr., Esquire
Sidley Austin Brown & Wood LLP
10 S. Dearborn Street
Chicago, IL 60603

Gregory P. Stone, Esquire
Munger Tolles & Olson
355 South Grande Avenue, 35th Floor
Los Angeles, CA 90071

Matthew W. King (#4566)
(king@rlf.com)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

# EXHIBIT A

Comparison of Allegations in Micron's RICO Complaint in *Micron Technology, Inc. v. Rambus, Inc.* to Findings in August 10, 2001 Order in *Rambus, Inc. v. Infineon Techs.*

|   | Allegations in<br>*Micron v. Rambus* (2006) | Allegations in<br>*Rambus v. Infineon* (2001) |
|---|---|---|
| 1. | "Richard Crisp gave false and misleading testimony regarding Rambus' patent strategies." (citing *Rambus, Inc. v. Infineon Tech. A.G.*, 155 F. Supp. 2d 668, 681 (E.D. Va. 2001)) (Complaint ¶ 18.) | Richard Crisp testified that he never participated in Rambus' patent drafting efforts, but subsequently was forced to admit that he was involved in that process. (*Rambus, Inc. v. Infineon Tech. A.G.*, 155 F. Supp. 2d 668, 681 (E.D. Va. 2001).) |
| 2. | Geoffrey Tate "gave false and misleading testimony regarding Rambus' patent strategies." (citing *Rambus, Inc. v. Infineon Tech. A.G.*, 155 F. Supp. 2d 668, 681 (E.D. Va. 2001)) (Complaint ¶ 17.) | Geoff Tate testified that he did not believe that Rambus drafted claims to cover JEDEC's standard-setting work, but later admitted that Rambus was amending its patent application to cover the JEDEC SDRAM standard. (*Id.*) |
| 3. | "As a central part of [its] conspiracy, Rambus and its management adopted a litigation strategy premised on the destruction of any evidence undermining its anticipated litigation claims, including claims for patent infringement." (Complaint ¶ 5.) | Rambus implemented a "document retention policy" beginning in 1998 for the purpose of getting rid of documents that might be harmful in anticipated litigation. (*Id.* at 682.) |
| 4. | "On April 14, 2001, Rambus vice president of engineering Allen Roberts testified that Rambus vice president Karp had directed him to purge his files at least in part because 'such materials are discoverable in subsequent litigations.'" (Complaint ¶ 56.) | Allen Roberts testified that one of the reasons for the document destruction was that the documents might be discoverable in future litigation. (*Id.*) |
| 5. | "In response to specific and repeated instructions from Rambus, [Lester] Vincent substantially purged his Rambus-related files, including patent prosecution files of the patents Rambus asserted against Micron and others in litigation." (Complaint ¶ 22.) | Lester Vincent testified that he destroyed some documents pursuant to instructions from Rambus just before litigation began but after Rambus sent a letter to Infineon accusing it of infringement. (*Id.*) |

2

| 6. | "[Farmwald's] testimony is false. At the time of the 'St. Michael's Alley' meeting Farmwald was still an employee of MIPS and was still subject to his MIPS assignment obligations. In fact, Farmwald did not leave his full-time employment at MIPS until December 1988 – nearly two months after the 'St. Michael's Alley' meeting. During that time, Farmwald's invention assignment obligations to MIPS remained intact." (Complaint ¶¶ 39, 79.) | None |
|---|---|---|
| 7. | "Nor was Farmwald employed by the University of Illinois at that time. Farmwald did not begin his employment with the University of Illinois until November 1988 – after the St. Michael's Alley meeting." (Complaint ¶¶ 40, 81.) | None |
| 8. | "Recently-produced documents confirm not only that Farmwald was aware that he developed his ideas for the '898 patents while at MIPS, but also that Farmwald took affirmative steps to hide that fact from MIPS. . . . Farmwald flatly admits, 'I actually had the idea for Rambus while still at MIPS in very early 1988, possibly even 1987, but kept quiet about it until I got to Univ. of Illinois (for obvious reasons).'" (Complaint ¶ 42.) | None |
| 9. | "Rambus improperly withheld from Micron and other litigants evidence that would refute Rambus' false conception and ownership story. For example, Rambus possessed backup tapes containing information showing that Farmwald developed the '898 inventions while still employed at MIPS. Yet Rambus withheld these documents from Micron for nearly five years of litigation and only recently produced them. Infineon did not ever benefit from having this document. Rambus discovered over 1,000 backup tapes during the *Infineon* litigation, including tapes containing | None |

| | | |
|---|---|---|
| | information relevant to the ownership of the '898 family, and on information and belief Rambus never informed the Court nor Infineon of the existence of those tapes.  Instead, it rushed a settlement with Infineon that resulted in substantial payments to Rambus." (Complaint ¶ 80.) | |
| 10. | "'Shred Day' 1999 . . . Rambus, its management and others continued their evidence destruction program in 1999. They focused on the destruction of evidence that Rambus knew would be at the heart of any antitrust and patent lawsuits that it intended to bring or suspected might be brought against it if its scheme succeeded." (Complaint ¶ 58.) | None |
| 11. | "Rambus, its management, and others organized a second document shredding event on August 29, 1999 – during which Rambus destroyed an additional 150 burlap bags filled with documents (the equivalent of 188 banker's boxes of documents)." (Complaint ¶ 60.) | None |
| 12. | "'Shred Day' 2000 . . .Yet, in December 2000, while Rambus was litigating against Micron and other companies on antitrust, fraud, and patent claims, and while pretrial discovery was underway in connection with the then-scheduled 2001 trial in Rambus' case against Infineon, Rambus, its management, and others undertook a third shredding event.  In a repeat of the 'Shred Days' in 1998 and 1999, the December 2000 'Shred Day' resulted in the destruction of 460 burlap bags full of documents – the equivalent of 575 banker's boxes." (Complaint ¶ 64.) | None |
| 13. | "Th[e] [*Infineon*] Court conducted an *in camera* review of 4,673 documents as to which Rambus had claimed privilege, and concluded that Rambus' document destruction plan was intended 'to destroy | None |

| | | |
|---|---|---|
| | discoverable documents as part of its litigation strategy.' *Rambus, Inc. v. Infineon Techs.* AG, 222 F.R.D. 280, 298 (E.D. Va. 2004)."  (Complaint ¶ 65.) | |
| 14. | "For example, in the Micron case in Delaware, Neil Steinberg, formerly outside counsel to Rambus and later its in-house counsel and vice president of intellectual property, falsely testified under oath on August 1, 2001 that 'Shred Day 1998' was the only time when Rambus employees were given burlap bags to collect documents for shredding. Mr. Steinberg so testified, despite admitting that he had prepared for his testimony by interviewing a number of Rambus employees who had been involved in the document destruction program, including Geoffrey Tate, David Mooring, Richard Crisp, Allen Roberts, and representatives from Rambus' information technology group, all of whom would have known the falsity of the testimony."  (Complaint ¶ 69.) | None |
| 15. | "Mr. Steinberg also testified falsely that (a) no slide presentation was shown to Rambus employees regarding its document destruction policy and (b) no instructions regarding the destruction of documents were provided to Rambus employees during that meeting. Documents that Rambus attempted to withhold under claims of privilege (but which Rambus was later forced to produce) establish that Rambus employees had been shown slide presentations that instructed them to destroy e-mails and other evidence." (Complaint ¶ 70.) | None |
| 16. | "Robert Kramer, Rambus' 30(b)(6) corporate representative in the *Hynix* case in California, and Rambus' current director of litigation, like Mr. Steinberg, falsely testified that 'Shred Day' 1998 had | None |

| | |
|---|---|
| been the sole instance when Rambus employees had used burlap bags to collect documents for shredding.  Mr. Kramer also falsely testified that Rambus' board of directors had received no presentations regarding 'Shred Days.'  In addition, Mr. Kramer falsely testified that Rambus had not produced certain documents in litigation simply because those documents had been 'corrupted,' when in fact Rambus had simply withheld them from production."  (Complaint ¶ 71.) | |