IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICRON TECHNOLOGY, INC., and | ) | |
| MICRON SEMICONDUCTOR PRODUCTS, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 06-269 (KAJ) |
| v. | ) | |
| | ) | |
| RAMBUS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT
## RAMBUS INC.'S MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Rodger D. Smith (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

OF COUNSEL:

V. Bryan Medlock, Jr.
Charles W. Douglas
Thomas K. Cauley, Jr.
SIDLEY AUSTIN LLP
Bank One Plaza
One South Dearborn Street
Chicago, IL  60603
(312) 853-7000

*Attorneys for Defendant Rambus Inc.*

Gregory P. Stone
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071
(213) 683-9100

Dated:  June 29, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

ARGUMENT ........................................................................................................................ 1

I.    MICRON'S RICO CLAIMS (COUNTS I AND II) ARE TIME-BARRED
      BECAUSE MICRON HAS NOT ALLEGED A "NEW AND
      INDEPENDENT" INJURY WITHIN THE GOVERNING STATUTE OF
      LIMITATIONS PERIOD. ........................................................................................ 1

      A.    Micron Does Not Identify A "New And Independent" Injury
            Occurring Within The Four-Year Statute Of Limitations............................ 1

      B.    Micron's Fraudulent Concealment Allegations Cannot Toll The
            Statute Of Limitations.................................................................................. 4

II.   MICRON'S RICO CLAIMS FAIL ON THE MERITS. ........................................... 6

      A.    Micron's Section 1962(c) RICO Claim Fails Because The Alleged
            "Association In Fact" Enterprise Is Not Distinct From Defendant
            Rambus. ........................................................................................................ 6

            1.    Decisions concerning enterprise distinctness involving
                  individual RICO defendants are inapposite to Micron's
                  claim, which names Rambus, a corporation, as the
                  defendant. ........................................................................................ 7

            2.    The Ninth Circuit decision cited by Micron conflicts with
                  the governing Third Circuit precedent, and thus is not valid
                  authority. ....................................................................................... 11

      B.    Micron Has Not Pled A RICO Injury. ....................................................... 13

      C.    Micron's Allegations Of Mail And Wire Fraud Lack The
            Specificity Required By Rule 9(b) And Third Circuit Precedent. ............ 13

      D.    Micron Fails To Plead A Viable Section 1962(d) Conspiracy
            Claim........................................................................................................... 14

III.  MICRON'S ARGUMENT IN SUPPORT OF ITS STATE LAW
      CONSPIRACY CLAIM (COUNT III) HAS NO BASIS IN VIRGINIA
      LAW AND IS NOT SUPPORTED BY THE ALLEGATIONS IN THE
      COMPLAINT. ....................................................................................................... 15

IV.   MICRON'S ALLEGATIONS ARE INSUFFICIENT TO INVOKE THE
      "SHAM LITIGATION" EXCEPTION TO THE *NOERR-PENNINGTON*
      DOCTRINE. .......................................................................................................... 18

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

### CASES

*Bankers Trust Co. v. Rhoades,*
   859 F.2d 1096 (2nd Cir. 1988) ...................................................................................4

*Bath Petroleum Storage v. Market Hub Partners, L.P.,*
   229 F.3d 1135 (2nd Cir. 2000)..................................................................................20

*Blanck v. McKeen,*
   707 F.2d 817 (4th Cir. 1983) .....................................................................................6

*Brittingham v. Mobil Corp.,*
   943 F.2d 297 (3d Cir. 1991)............................................................................. *passim*

*Callahan v. A.E.V., Inc.,*
   182 F.3d 237 (3d Cir. 1999)......................................................................................13

*Cedric Kushner Promotions, Ltd. v. King,*
   533 U.S. 158 (2001)..........................................................................................7, 8, 9

*Charles E. Brauer Co., Inc. v. Nationsbank of Virginia, N.A.,*
   466 S.E.2d 382 (Va. 1996)...................................................................................15, 16

*Cheminor Drugs Ltd. v. Ethyl Corp.,*
   168 F.3d 119 (3d Cir. 1999)......................................................................................18

*Dornberger v. Metropolitan Life Insurance Co.,*
   961 F. Supp. 506 (S.D.N.Y. 1997) ...........................................................................13

*Emcore Corp. v. PricewaterhouseCoopers LLP,*
   102 F. Supp. 2d 237 (D.N.J. 2000) ...........................................................................11

*Emery v. America General Finance, Inc.,*
   134 F.3d 1321 (7th Cir. 1998) ..................................................................................11

*Erie R.R. Co. v. Tompkins,*
   304 U.S. 64 (1938)...............................................................................................15, 16

*Fitzgerald v. Chrysler Corp.,*
   115 F.3d 225 (7th Cir. 1997) .................................................................................7, 9

*Forbes v. Eagleson,*
   228 F.3d 471 (3d Cir. 2000)........................................................................................5

*Glessner v. Kenny*,
  952 F.2d 702 (3d Cir. 1991)........................................................2, 3, 4, 10, 15

*Hiers v. Cave Hill Corp.,*
  *51* Va. Cir. *208,* 2000 WL 145359, *4 (Jan. 6, 2000)................................16

*Hirsch v. Enright Refining Co.*,
  751 F. 2d 628 (3d Cir. 1984)..................................................................10

*Holmes v. Securities Investment Protection Corp.,*
  *503 U.S. 258 (1992)* ...........................................................................13

*Jaguar Cars, Inc.* v. *Royal Oaks Motor Car Co., Inc.,*
  46 F.3d 258 (3d Cir. 1995)..........................................................6, 9, 10, 11

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997).................................................................................1

*Little Professor Book Co. of Reston Va., Inc.* v. *Reston North Point Village Ltd.*
  *P'ship,*
  41 Va. Cir. 73 (Sept. 27, 1996) ...............................................................16

*Living Designs, Inc. v. E.I. DuPont de Nemours and Co.,*
  431 F.3d 353 (9th Cir. 2005) ...........................................................8, 11, 12

*Love v. Nat'l Med. Enter.,*
  230 F.3d 765 (5th Cir. 2000) ...................................................................4

*Lum v. Bank of America,*
  361 F.3d 217 (3d Cir. 2004).....................................................................14

*Madison v. Universal Marketing Innovators, Inc.,*
  2004 WL 1737486 (E.D. Pa. Aug. 3, 2004) ............................................14

*Mathews v. Kidder, Peabody & Co.*,
  260 F.3d 2139 (3d Cir. 2001)....................................................................5

*McKenna v. Ortho Pharmaceutical Corp.*,
  622 F.2d 657 (3d Cir. 1980).....................................................................16

*Moffat Enterprises, Inc. v. Borden, Inc.,*
  763 F. Supp. 143 (W.D. Pa. 1990).............................................................7

*Packard v. Provident National Bank*,
  994 F.2d 1039 (3d Cir. 1993)...................................................................16

*Petro-Tech, Inc. v. Western Co.,*
    824 F.2d 1349 (3d Cir. 1987)...........................................................................10

*Prousalis* v. *Jamgochian,*
    38 Fed. Appx. 903 (4th Cir. 2002).....................................................16, 17

*Prudential Insurance Co. of America v. U.S. Gypsum Co.,*
    359 F.3d 226 (3d Cir. 2004)...........................................................4, 6

*Rotella v. Wood,*
    528 U.S. 549 (2000).........................................................................1

*Scholastic, Inc. v. Stouffer,*
    124 F. Supp. 2d 836 (S.D.N.Y. 2000)..........................................17

*Selman v. American Sports Underwriters, Inc.,*
    697 F. Supp. 225 (W.D. Va. 1990) ...............................................17

*Shanahan v. City of Chicago,*
    82 F.3d 776 (7th Cir. 1996) ...........................................................17

*Sosa v. Direct TV,*
    437 F.3d 923 (9th Cir. 2006) .........................................................20

*Steele v. Hospital Corp. of America,*
    36 F.3d 69 (9th Cir. 1994) .............................................................13

*Zavala v. Wal-Mart Stores, Inc.,*
    393 F. Supp. 2d 295 (D.N.J. 2005) ...............................................14

*Zenith Radio Corp. v. Hazeltine Research Corp.,*
    401 U.S. 321 (1971).........................................................................4

## STATUTES

*18 U.S.C. § 1961* ................................................................... *Passim*

*18 U.S.C. § 1962(d)* .............................................................14, 15

## MISCELLANEOUS

*Standards of Practice of American Association of Advertising Agencies* ........................10

*James Wm. Moore, 2 Moore's Federal Practice § 12.34[2],*
    *Matthew Bender 3d ed* ...............................................................18

In its Opening Brief, Rambus established that Micron's claims should be dismissed in their entirety because: (i) they are barred by RICO's four-year statute of limitations; (ii) Micron has failed to allege essential elements of its RICO claim; (iii) Micron does not state a viable conspiracy claim under Virginia law and (iv) Micron's claims are barred by the *Noerr-Pennington* doctrine. Micron's opposition mischaracterizes the applicable legal standards and ignores controlling Third Circuit precedent regarding RICO claims.

## ARGUMENT

I. **MICRON'S RICO CLAIMS (COUNTS I AND II) ARE TIME-BARRED BECAUSE MICRON HAS NOT ALLEGED A "NEW AND INDEPENDENT" INJURY WITHIN THE GOVERNING STATUTE OF LIMITATIONS PERIOD.**

A. **Micron Does Not Identify A "New And Independent" Injury Occurring Within The Four-Year Statute Of Limitations.**

Limitations periods serve a central role in protecting the integrity of the judicial system by ensuring "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Rotella* v. *Wood*, 528 U.S. 550, 554-55 (2000). Consistent with these underlying policies, the Supreme Court consistently has rejected claim accrual tests that would excuse plaintiffs from filing a timely RICO claim when the plaintiff already possessed the facts necessary to file the lawsuit. *See Klehr* v. *A.O Smith Corp.*, 521 U.S. 179, 187 (1997) ("last predicate act" rule conflicted "with a basic objective – repose – that underlies limitations periods"); *Rotella*, 528 U.S. at 555-59 (deciding that simple "injury discovery" rule would encourage plaintiffs to investigate their claims earlier and with greater vigor). The Supreme Court rejected these rules that effectively extended the limitations period because they "would permit plaintiffs who know of the defendant's pattern of activity simply to wait, 'sleeping on their rights,' as the pattern continues and treble damages accumulate, perhaps bringing suit only long after the 'memories of witnesses have faded or evidence is lost.'" *Klehr*, 521 U.S. at 187.

Micron acknowledges that the "injury discovery" rule governs the statute of limitations period for its RICO claims, *i.e.*, that the limitations period began to run when Micron discovered it had been injured and knew the source of its injury.  (Opp. 8.)  And Micron does not dispute that the limitations period extends four years prior to the date on which it filed its Complaint (February 21, 2006), or that it claims to have suffered the type of injuries alleged in the Complaint prior to the limitations period (*i.e.*, before February 21, 2002).  Micron argues that the statute of limitations does not bar its claims because, applying the "separate accrual" rule, it allegedly has suffered "new and independent" injuries for which the limitations period separately accrued and which occurred within the four year statute of limitations period.  (*Id.* 8-13.)  Micron's interpretation of the "separate accrual" rule ignores the requirement under controlling Third Circuit law of a "new and *independent*" injury distinct from prior injuries, and constitutes exactly the kind of overly-broad and permissive interpretation of RICO limitations rules that the Supreme Court repeatedly has rejected.

Micron cites but does not discuss the Third Circuit's decision in *Glessner v. Kenny*, 952 F.2d 702 (3d Cir. 1991).  The Third Circuit's interpretation of the "separate accrual" rule in *Glessner* makes clear that Micron has not alleged a "new and independent" injury occurring within the four year statute of limitations period.  In *Glessner*, the plaintiff alleged the defendants engaged in a racketeering enterprise that involved the sale of defective oil furnaces.  *Id.* at 705.  Plaintiffs purchased the units and began experiencing problems with the defective furnaces that required servicing (and the expenditure of money to address the problems) more than four years prior to filing their complaint.  *Id*. at 706-07.  Defendants argued that the plaintiffs' claims were time-barred because they failed to file suit within four years of discovering their RICO injury, *i.e.*, the purchase and servicing of the defective furnaces.  *Id.* at 707-08.  The plaintiffs countered that they had suffered a "new and independent" injury when they replaced their defective furnaces with new furnaces within the limitations period.  *Id.* at 707.  The Third Circuit affirmed the district court's dismissal

under the statute of limitations, holding that separate accrual of the statute of limitations is confined to "new and independent" injuries that must be "new and *distinct*" from the initial injury. *Id.* at 708 (emphasis added). The Third Circuit found that, in having to replace the defective furnaces, the plaintiffs had not suffered a new injury distinct from the initial injury suffered in purchasing and subsequently servicing the defective units:

> [I]f Glessner's only injury was limited to servicing his "blue flame" unit, the fact that he continued to service his unit after June, 1984 could not be considered a "further injury" sufficient to revive the RICO cause of action. We do not regard the need ultimately to replace the unit to be a "separate" or "independent" type of injury within the meaning of [] *Bankers Trust* . . . While the cost of replacement of the unit may be an element of damage, the *mere continuation of damages into a later period will not serve to extend the statute of limitations*.

*Id.* (emphasis added).

Micron's "separate accrual" argument fails for the same reasons. Micron does not dispute that it had already suffered the alleged RICO injuries – payment of attorneys' fees and "management and employee time and attention" – when it moved for sanctions against Rambus in this Court in August of 2001. Although Micron points to a handful of recent events that have occurred within four years prior to its filing of the Complaint, such as Micron filing a motion to compel discovery, an answer to Rambus's counterclaims in a related suit, and Rambus's filing a new infringement claim in 2006 (Opp. 11-13), these recent events certainly do not result in any "new and independent" injuries *distinct* from Micron's prior alleged injuries. These alleged injuries are a continuation of precisely the same alleged injury of which it had full awareness at the time of its August 30, 2001 sanctions motion – the expenditure of attorneys' fees and "management and employee time and attention" in connection with the alleged "litigation enterprise." (Opp. 11.)

- 3 -

Micron paints the continuation of its initial (and only) alleged injury – attorneys' fees and personnel resources – as a "new" injury[1] based only on Micron having made additional expenditures within the limitations period. The Third Circuit in *Glessner* foreclosed that argument, and that holding precludes Micron from relying on the "separate accrual" rule.[2]

> **B.     Micron's Fraudulent Concealment Allegations Cannot Toll The Statute Of Limitations.**

Micron does not dispute that fraudulent concealment requires the plaintiff to plead the elements of that defense with the specificity required by Rule 9(b). Nor does Micron dispute that, in order to establish the affirmative defense of fraudulent concealment, Micron must allege: (1) Rambus actively engaged in affirmative acts of concealment designed to mislead the plaintiff regarding the facts supporting the claims; (2) the plaintiff exercised reasonable diligence to uncover

---

[1]  Micron's assertion that it has suffered "new and independent" injuries for which the limitations period separately accrued rests on Micron's interpretation of the Second Circuit's decision in *Bankers Trust Co.* v. *Rhoades*, 859 F.2d 1096 (2nd Cir. 1988) and the Fifth Circuit's decision in *Love* v. *Nat'l Med. Enter.*, 230 F.3d 765 (5th Cir. 2000). (Opp. 10-14.) Micron's reliance on this non-controlling precedent is misplaced. *First*, as noted by the Third Circuit in *Glessner*, *Bankers Trust* is distinguishable because the plaintiff suffered new and independent injuries arising from three separate and distinct injuries, *i.e.*, a bankruptcy fraud in 1974-76, unrelated frivolous lawsuits and bribery of a judge in 1978-79 and fraudulent conveyances in 1981 and 1982. 952 F.2d at 708. *Second*, Micron's interpretation of *Bankers Trust* and *Love* as recognizing a "new and independent" injury with respect to Micron's continuing expenditures of attorneys' fees and employee time is plainly inconsistent with the Third Circuit's controlling interpretation of the "separate accrual" rule in *Glessner*. The Third Circuit rejected the notion that the "separate accrual" rule finds a new injury each time the plaintiff makes a new expenditure as a result of the same alleged acts. *Id.*

[2]  As an alternative to the "separate accrual" rule, Micron claims that it could not have filed a RICO claim in August 2001 because its damages from subsequent injuries "would have likely been 'too speculative' to permit recovery." (Opp. 13.) This argument is wholly without merit. Micron knew of its injury and the source of its injury at least as early as August 2001, and that knowledge triggers the four-year limitations period. *See Prudential Ins. Co. of America* v. *U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004). The *Zenith* v. *Hazeltine Research* case cited by Micron does not save its claim. In *Zenith*, the Supreme Court held that a cause of action begins to accrue when a plaintiff is injured, and that the cause of action "that so accrues entitles a plaintiff to recover not only those damages which he has suffered at the date of accrual, but also those which he will suffer in the future from the particular invasion, including what he has suffered during and will predictably suffer after trial." 401 U.S. 321, 338-39. According to Micron, it had a known and measurable injury by the time it filed its Sanctions Motion in August 2001. Consistent with *Zenith*, Micron would have been entitled to pursue both any damages known at that time <u>and</u> any subsequent damages that accrued while the suit was pending. *Id*. Not knowing the full extent of any future injuries does not excuse Micron's failure to file suit upon discovery of its injury under *Prudential*.

the facts supporting the claims; and (3) plaintiff failed to discover the facts supporting the claims within the statutory period. *See Forbes* v. *Eagleson*, 228 F.3d 471, 486-87 (3d Cir. 2000). Under clear Third Circuit precedent, Micron cannot properly plead fraudulent concealment merely by alleging that Rambus concealed facts providing further support for Micron's claims. Rather, Micron must allege with specificity that Rambus "*actively mis[led] [Micron] to believe that [Micron] does not have a <u>claim.</u>*" *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 257 n.26 (3d Cir. 2001) (emphasis added); *Forbes*, 228 F.3d at 487 (plaintiff must make allegations establishing that "he was actually mis[led] . . . into thinking that he d[id] not have a *cause of action*") (emphasis added).

Micron had full knowledge of the conduct which forms the basis for the alleged "corrupt litigation enterprise" no later than when Micron moved for sanctions on August 30, 2001. (Opening Br. 12-14.) Unable to deny that fact, Micron bases its fraudulent concealment argument on nothing more than its wholly conclusory assertion that Rambus concealed details regarding certain specific "predicate acts" involving document destruction and allegedly false testimony that supplement the wrongful conduct alleged in the sanctions motion. (Opp. 16.) Micron claims these new "predicate acts" "support Micron's RICO action" (*id.*), but cannot assert that Micron could not plead its RICO claim without them. These four additional "predicate acts" merely serve as additional examples of the alleged misconduct of which Micron already was aware in August 2001, *i.e.*, document destruction and allegedly false testimony. (Opening Br. 12-14.) Micron has not argued, and cannot argue, that Rambus actively deceived Micron into believing that it did not have a *claim* against Rambus, as both *Mathews* and *Forbes* require.

Micron clearly knew by at least August 2001 that it possessed a potential cause of action based on what is referred to in its sanctions motion as "a pattern of serious litigation-related misconduct" involving document destruction and allegedly false testimony. (Opening Br. 11-14.) In light of Micron's knowledge of its alleged injury on August 31, 2001, the four-year statute of limitations applicable to its RICO claims unquestionably began to run no later than that date. The

limitations period therefore expired, at the latest, five and a half months before Micron filed the Complaint. *See, e.g., Prudential*, 359 F.3d at 236, 238; *Blanck* v. *McKeen*, 707 F.2d 817, 819-20 (4th Cir. 1983) (rejecting fraudulent concealment argument and holding that "*[i]t is not necessary that [plaintiff] knew . . . all of the persons involved in, or all of the details* of, [defendants'] alleged torts. [Plaintiffs'] action is time-barred *as long as they were "on notice" of the conduct about which they complain*" (emphasis added)).

## II.    MICRON'S RICO CLAIMS FAIL ON THE MERITS.

### A.    Micron's Section 1962(c) RICO Claim Fails Because The Alleged "Association In Fact" Enterprise Is Not Distinct From Defendant Rambus.

Micron fails adequately to allege a RICO enterprise because, under controlling Third Circuit law, no distinction exists between the defendant "RICO person" – Rambus – and the alleged "association-in-fact" enterprise, which consists of Rambus along with its employees and agents (including its attorneys Neil Steinberg and Lester Vincent). (Opening Br. 15-19.) In *Brittingham* v. *Mobil Corp.*, the Third Circuit rejected a RICO claim because the alleged enterprise, which consisted of Mobil, a Mobil subsidiary, and two advertising agencies, was not distinct from the defendants – Mobil and its subsidiary. *Brittingham* v. *Mobil Corp.*, 943 F.2d 297, 301-03 (3d Cir. 1991), *overruled on other grounds by Jaguar Cars, Inc.* v. *Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir. 1995). The only members of the alleged enterprise besides the defendants themselves were the advertising agencies hired by the defendants to develop the purportedly fraudulent advertisements, which formed the basis of the RICO predicate acts. The Court found that the alleged "enterprise" of the defendants and their agents was no different than the defendants themselves, because the agents simply conducted the affairs of the defendants, *i.e.*, advertising their products. Therefore, the RICO claim failed because the defendants were not distinct from the enterprise. As the Court explained: "a Section 1962(c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation," and therefore absent "allegations or evidence that the

defendant corporations had a role in the racketeering activity that was distinct from the undertakings of those acting on its behalf, the distinctiveness requirement is not satisfied." *Id.* at 302.

As in *Brittingham*, the actions and wrongdoing of the enterprise alleged by Micron constitute nothing more than Rambus employees and agents conducting Rambus's affairs. Micron contends that Rambus and its management and employees "developed a plan to extract licensing fees for Rambus based on a vast array of current and future DRAM products," and "[t]his plan was developed in coordination with Neil Steinberg" and "was executed in part by Lester Vincent, Rambus's patent prosecution counsel." (Cmplt. ¶ 44, *see also id.* ¶¶ 46, 49.) But Micron also alleges that "[f]rom its inception, Rambus's business model was to collect royalties based upon its patent portfolio" (*id.* ¶ 2), which requires obtaining patents on its DRAM technology and then demanding royalties from DRAM manufacturers. Thus, Micron's RICO allegations simply entail Rambus and its employees carrying out Rambus's business. Additionally, Micron nowhere alleges that Rambus had any role in the alleged enterprise separate "from the undertakings of those acting on its behalf." As such, Micron's Section 1962(c) claim fails for want of an enterprise distinct from Rambus. *See Brittingham*, 943 F.2d at 303; *Fitzgerald* v. *Chrysler Corp.*, 115 F.3d 225, 227 (7th Cir. 1997); *Moffat Enters., Inc.* v. *Borden, Inc.*, 763 F. Supp. 143, 149 (W.D. Pa. 1990).

Micron offers several arguments to counter that conclusion. None has merit.

1. **Decisions concerning enterprise distinctness involving individual RICO defendants are inapposite to Micron's claim, which names Rambus, a corporation, as the defendant.**

Micron argues that "the person/enterprise distinction is a statutory hurdle easily met here" because the Supreme Court in *Cedric Kushner* found that the "'corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity . . . .'" (Opp. 17 (citing *Cedric Kushner Promotions, Ltd.* v. *King*, 533 U.S. 158, 163 (2001).) Micron's argument ignores the critical distinction between cases in which a plaintiff names a corporate officer or employee as a defendant, and identifies the corporation as the enterprise through which the defendant carried out the

alleged scheme, and cases – such as Micron's – in which the plaintiff names a corporation as the defendant, and identifies the corporation along with other individuals or entities as the enterprise.

The Supreme Court in *Cedric Kushner* decided the question of whether the enterprise distinctness requirement is met when a plaintiff names an individual officer of a corporation as the RICO defendant, and identifies the corporation controlled by the defendant as the RICO enterprise. *Cedric Kushner*, 533 U.S. at 163. The present case, however, presents the much different question of whether the distinctness requirement is met when a plaintiff names a corporation as the RICO defendant, and identifies that same corporation along with employees and other agents of the corporation as the "association in fact" RICO enterprise. If the corporation and its agents and employees are held to constitute nothing more than the corporation itself (because a corporation cannot act save through its employees and agents), then the distinctness requirement is not met.

The *Cedric Kushner* opinion did not address this question – which is the key issue in this case. Indeed, the Court specifically noted the enterprise distinctness decisions involving corporate defendants, and expressly distinguished them on that basis. *Cedric Kushner*, 533 U.S. at 164. However, every federal circuit that has addressed the issue with respect to employees has held that they are not distinct from the corporation in that context, and the Third Circuit in *Brittingham* (along with several other circuits) has held the same conclusion applies with respect to agents of the corporation. (Opening Br. 15-16.) Indeed, even the Ninth Circuit decision Micron prominently features in its briefing plainly stated that "to be sure, if the 'enterprise' consisted only of DuPont and its employees, the pleading would fail" because the enterprise is not distinct from the defendant, DuPont. *Living Designs, Inc.* v. *E.I. DuPont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005).[3] Accordingly, because under *Brittingham* and the related decisions cited in Rambus's

---

[3] Micron also argues that "cases in the Third Circuit and elsewhere have recognized that corporate RICO persons can participate both as a RICO person *and* as a member of an association in fact enterprise." (Opp. 19-20.) That argument attacks a strawman. Rambus does not contend that Micron's enterprise is deficient simply due to Rambus's status as both a RICO defendant and a member of the enterprise.

Opening Brief a defendant corporation and its agents do not constitute an "enterprise" separate from the defendant corporation itself, Micron's claim fails.

Micron attempts to side-step *Brittingham* by claiming that "[t]o the extent *Brittingham* is relied on for the proposition that corporate managers cannot also be participants in the RICO enterprise, that holding has been overruled by *Jaguar*."  (Opp. 20.)  Micron misreads *Jaguar Cars*, and again fails to discern the difference between claims naming an individual employee or officer as the RICO defendant, and those naming a corporation as the RICO defendant.

In *Jaguar Cars*, the Third Circuit overruled its prior RICO decisions concerning enterprise distinctness, but only to the extent that they held a RICO claim failed the distinctness requirement in the *Cedric Kushner* context, *i.e.*, when a plaintiff named corporate officers or employees as defendant RICO persons, and identified the corporation they controlled as the RICO enterprise.  *See Jaguar Cars*, 46 F.3d at 269 (analyzing its prior decisions in light of intervening Supreme Court cases, and announcing that "[i]n sum, we conclude that when *officers and/or employees* operate and manage a legitimate corporation, and use it to conduct . . . a pattern of racketeering activity, *those defendant persons* are properly liable under §1962(c)") (emphasis added).  That decision in no way impacted the Third Circuit's prior decisions, such as *Brittingham*, regarding the distinctness of RICO enterprises involving corporate defendants and those same corporations as members of an "association in fact" enterprise.

Prior to its 1995 *Jaguar Cars* decision, the Third Circuit employed two rationales when deciding enterprise distinctness questions:  (1) the language of Section 1962(c) of the RICO statute requires a RICO defendant to be distinct from the enterprise; and (2) "a belief that Congress

---

Rather, Rambus argues that the other members of the alleged enterprise – Rambus's employees and agents – are not distinct from Rambus (*i.e.*, that the enterprise essentially consists solely of Rambus), and under *Brittingham* such an enterprise fails the distinctness requirement.  *See Brittingham*, 943 F.2d at 301; *see also Fitzgerald.*, 115 F.3d at 227.  Rambus acknowledges that a distinct RICO enterprise can be established if a truly distinct entity, such as an unaffiliated corporation, is included in the enterprise, but Micron did not (and cannot) do so.

intended to limit RICO's application to preventing the infiltrating of legitimate organizations by criminal and corrupt organizations." *Jaguar Cars*, 46 F.3d at 262 (citing *Hirsch* v. *Enright Refining Co.*, 751 F.2d 628, 633 (3d Cir. 1984)). Under the second rationale, the Third Circuit had "concluded that a successful §1962(c) claim could not allege conduct on the part of corporate officers and directors acting through a legitimate corporate enterprise." *Id.* at 263 (citing *Petro-Tech, Inc.* v. *Western Co.*, 824 F.2d 1349 (3d Cir. 1987) and *Glessner* v. *Kenny*, 952 F.2d 702 (3d Cir. 1991) – but not *Brittingham* (decided in 1991) – as examples of the improper approach). In *Jaguar Cars*, the Third Circuit discarded the "infiltrating racketeer" rationale, and held that "when *officers and/or employees* operate and manage a legitimate corporation" in violation of the RICO statute, "those defendant persons are liable under §1962(c)." *Id.* at 269 (emphasis added).

There is no question that the key holding in *Brittingham* survived *Jaguar Cars*, because the cases addressed two fundamentally different issues. *Jaguar Cars* concerned only the question of whether a plaintiff could name individual officers or employees of a corporation as RICO defendants, and the corporation as the enterprise. It did not address the separate question decided by *Brittingham*, which was whether a plaintiff could name a corporation as a RICO defendant and then that same corporation, together with its employees and/or agents, as the RICO enterprise. Indeed, in *Jaguar Cars* the Third Circuit expressly stated that it "properly continued . . . to apply a distinctiveness requirement, since [that requirement] was also based on §1962(c)'s textual directive to alleged conduct by defendant 'persons' operating an 'enterprise,'" and cited *Brittingham* as an example of such proper application. *Jaguar*, 46 F.3d at 263. Tellingly, that is the only time that the Third Circuit mentions *Brittingham* in its *Jaguar Cars* opinion – it never cites *Brittingham* as an improper application of the "infiltrating racketeer" rationale that *Jaguar Cars* discarded.[4] Nor could

---

[4] In fact, *Jaguar Cars* specifically states that RICO claims such as Micron's remain deficient under the prior Third Circuit precedent. In responding to the defendants' argument that the *Jaguar Cars* holding would lead to an "absurd result" because a corporation "can always be pled to be the enterprise controlled by it employees or officers," the Third Circuit explained that:

it have properly done so, because the holding in *Brittingham* applicable here – that the advertising agencies were not distinct from Mobil and its subsidiary because they "were defendants' agents, and did no more than conduct the normal affairs of the defendant corporations" (*Brittingham*, 943 F.2d at 303) – did not depend on that rationale.[5]  Significantly, the Seventh Circuit, in dismissing a RICO claim because the corporate defendant was not distinct from the enterprise consisting of the defendant and its affiliated entities and agents, specifically found that *Jaguar Cars* was not to the contrary on the basis that the defendants in *Jaguar Cars* were individuals who controlled the corporate entities, as opposed to the corporate entities themselves.  *Emery* v. *Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324-25 (7th Cir. 1998).

> **2.    The Ninth Circuit decision cited by Micron conflicts with the governing Third Circuit precedent, and thus is not valid authority.**

Micron places substantial reliance on the Ninth Circuit's opinion in *Living Designs, Inc.* v. *E.I. DuPont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005).  That decision cannot be squared with the Third Circuit's opinion in *Brittingham*, and thus it cannot save Micron's claim.

---

> [i]n such an action, the plaintiff *can only recover against the defendant officers* and *cannot recover against the corporation* simply by pleading the officers as the persons controlling the corporate enterprise, since the *corporate enterprise is not liable under §1962(c) in this context.*  Instead, a corporation would be liable under §1962(c), only if *it* engages in racketeering activity as a "person" in *another <u>distinct</u> "enterprise . . . ."*

*Jaguar Cars*, 46 F.3d at 268 (emphasis original and added).  That passage mirrors language from *Brittingham*, in which the Court found no indication "that the defendant corporations, in contrast to individuals or entities acting on their behalf, took a *distinct* role in the alleged racketeering activity." *Brittingham*, 943 F.2d at 303 (emphasis added).  That passage also demonstrates that, to the extent that the *Emcore Corp.* v. *PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237 (D.N.J. 2000) decision cited by Micron can be read to hold under *Jaguar Cars* that a corporation can properly be named as defendant along with its employees or officers when the enterprise consists only of the corporation and its employees and officers, that decision is in error.

[5]  The only aspects of the *Brittingham* decision abrogated by *Jaguar Cars* are the references to the now-defunct "infiltrating racketeer" rationale (*e.g.*, *Brittingham*, 943 F.2d at 300), and that rationale has no bearing on the issue of whether an enterprise consisting of a corporation and its agents amounts to nothing more than the corporation itself.

In *Living Designs*, the Ninth Circuit held that the plaintiff had pleaded a distinct RICO enterprise by naming DuPont as the defendant, and DuPont, its law firms and expert witnesses as the RICO enterprise (which purportedly engaged in fraudulent settlements of product liability lawsuits). *Living Designs*, 431 F.3d at 361 (concluding "that the law firms retained by DuPont were distinctive entities," and therefore the enterprise "is separate and distinct from DuPont"). The Ninth Circuit's conclusion stands directly at odds with *Brittingham*. The law firms in *DuPont* acted as DuPont's agents in the same way that the advertising agencies acted as Mobil's agents in *Brittingham*. Third Circuit law and *Brittingham* control, and thus because *Brittingham* held that a corporation and its agents do not constitute an enterprise distinct from the defendant corporation itself, that decision compels dismissal of Micron's claim for want of a distinct RICO enterprise.

Micron also argues that a lawyer's independent "ethical rules," which the Ninth Circuit cited in *Living Designs*, also establish the distinctness of Micron's alleged enterprise because it includes two of Rambus's lawyers. (Opp. 19) (noting the lawyers' "independent and distinct status and responsibilities.") But that distinction fails to move Micron's claim out from under the holding in *Brittingham*. Like the law firms in *Living Designs*, the advertising agencies involved in *Brittingham* were professional organizations with ethical standards and responsibilities separate from the clients they serve. *See, e.g.*, Standards of Practice of American Association of Advertising Agencies (adopted October 16, 1924)[6] (noting that agencies must adhere to "the law and legal regulations pertaining to advertising," and further undertaking not to create advertising containing, among other things, "false or misleading statements"). Indeed, all agents (including employees) have a legal duty not to participate in a violation of law such as a predicate act or a RICO enterprise. Thus, for purposes of RICO enterprise distinctness, there is nothing unique about law firms versus advertising agencies that warrants finding a distinct RICO enterprise where *Brittingham* did not.

---

[6] The Standards can be found at www.aaaa.org/EWEB/upload/inside/standards.pdf.

B.    **Micron Has Not Pled A RICO Injury.**

Micron has failed to allege or explain any causation, much less proximate causation, between the alleged document destruction and false testimony and its alleged injury of attorneys' fees, *i.e.*, Micron does not explain in its Response Brief how it was *forced* to expend attorneys' fees as a result of the alleged improper document destruction and false testimony.  The lack of proximate connection between Micron's payment of attorney fees and Rambus's alleged acts is perhaps best exemplified by the fact that, in its Response Brief, Micron lists this action and Case No. 00-792 as giving rise to its "RICO injury" despite the fact *Micron* initiated both of these cases.  (Opp. 6 n.1.) Moreover, it bears emphasis that Micron must link the expenditure of attorneys' fees and employee time to the *predicate acts*, which are grounded upon document destruction and false testimony. (Opening Br. at 19.) Nowhere does Micron allege or assert that absent Rambus's alleged improper document destruction and false testimony, it would not have incurred attorneys' fees in connection with the litigation between the parties.

Similarly, Micron's conclusory allegations regarding "management and employee time and attention" fail to establish RICO injury.  Micron has not alleged any connection between "management and employee time and attention" and an actual out-of-pocket or financial loss.  *See Steele* v. *Hosp. Corp. of Am.*, 36 F.3d 69, 70-71 (9th Cir. 1994); *Dornberger* v. *Metro. Life Ins. Co.*, 961 F. Supp. 506, 521 (S.D.N.Y. 1997).  Thus, Micron's RICO claim fails for lack of an injury sufficient to confer RICO standing.  *See Holmes v. Securities Investment Protection Corp.*, 503 U.S. 258, 276 (1992); *Callahan* v. *A.E.V., Inc.*, 182 F.3d 237, 267 (3d Cir. 1999).

C.    **Micron's Allegations Of Mail And Wire Fraud Lack The Specificity Required By Rule 9(b) And Third Circuit Precedent.**

Significantly, Micron does not dispute that it failed to plead its allegations of mail and wire fraud with the specificity required under Rule 9(b).  Instead, Micron asserts that, although several of its RICO predicate acts are grounded in fraud, those allegations need not satisfy the

- 13 -

particularity requirements of Rule 9(b). (Opp. 22-23.) Micron's argument conflicts with the Third Circuit's decision in *Lum* v. *Bank of America*, 361 F.3d 217 (3d Cir. 2004). In *Lum*, the Third Circuit unequivocally stated that "[*w]here, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b)*, which requires that allegations of fraud be pled with specificity." *Id*. at 223 (emphasis added). Contrary to Micron's characterization, nowhere in *Lum* does the Third Circuit suggest that allegations of mail and wire fraud are excused from the requirements of Rule 9(b). Micron's allegations thus fail under *Lum*. Micron alleges only that the RICO conspiracy consisted of document destruction and purportedly false testimony, and then asks the Court to assume that the mail or wires were used in connection with the alleged scheme. Nowhere in its Complaint does Micron associate, even in general terms, an instance in which Rambus used mailings or wirings in connection with an act in furtherance of the scheme. Such allegations fail even the most liberal interpretation of Rule 9(b). (Opp. 23); *Lum*, 361 F.3d at 228; *see also Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 312 (D.N.J. 2005); *Madison v. Universal Marketing Innovators, Inc.*, 2004 WL 1737486, *7 (E.D. Pa. Aug. 3, 2004).

### D.    Micron Fails To Plead A Viable Section 1962(d) Conspiracy Claim.

Micron's Response Brief confirms that Micron's Section 1962(d) RICO conspiracy claim should be dismissed on the merits for at least two reasons. (Opp. 23-24.) *First*, Micron acknowledges that, if the Court agrees with Rambus that Micron has failed to assert a viable Section 1962(c) claim, then Micron's Section 1962(d) conspiracy claim must also be dismissed. (Opp. 24.) *Second*, Micron has not alleged, as it must, that the conspiracy extends beyond the commission of the predicate acts. Micron contends that it has sufficiently alleged a conspiracy under Section 1962(d), including the required element that the conspirators acted with knowledge that their acts "would further the affairs of a RICO enterprise." (Opp. 25.) Contrary to that assertion, Micron's Complaint does not allege that the purported conspirators had knowledge that their acts were part of a pattern of

racketeering activity.  The allegations that Micron identifies state only that the alleged conspirators acted "willfully" and that they had an agreement to make their activities look legitimate.  Neither allegation satisfies the knowledge element of Section 1962(d).  Absent such allegations, Micron's conspiracy claim cannot be sustained.  *See Glessner*, 952 F.2d at 714.

### III.    MICRON'S ARGUMENT IN SUPPORT OF ITS STATE LAW CONSPIRACY CLAIM (COUNT III) HAS NO BASIS IN VIRGINIA LAW AND IS NOT SUPPORTED BY THE ALLEGATIONS IN THE COMPLAINT.

Micron has not alleged a viable conspiracy claim under Virginia law because Micron has alleged a conspiracy among Rambus and its agents, which Virginia law recognizes as "a legal impossibility because a principal and an agent are not separate persons for purposes of the conspiracy law."  *Charles E. Brauer Co., Inc.* v. *Nationsbank of Virginia, N.A.*, 466 S.E.2d 382, 387 (Va. 1996) (referring to this principle as the "intracorporate immunity" doctrine).  Micron acknowledges the applicability of the intracorporate immunity doctrine to its conspiracy claim, but argues that Count III should not be dismissed because its conspiracy allegations fall within the "personal stake" exception to that doctrine.  (Opp. 26-28.)  Micron's argument finds no support in Virginia law or the Complaint.

*First*, Micron concedes that the Virginia Supreme Court has never recognized the personal stake exception and does not cite a *single* decision of a Virginia state court recognizing or applying this exception to the "intracorporate immunity" doctrine.  (Opp. 28.)  Instead, Micron invokes the "personal stake" exception by citing to various federal court decisions (none from the Third Circuit) recognizing the exception, and arguing that the Virginia Supreme Court's silence on this issue "holds no precedential value."  (*Id.*)  Ignoring Virginia state court precedent on this issue would violate basic principles controlling a federal court's application of state law.

Federal courts sitting in diversity must apply state substantive law by reference to the law as set forth by the state's highest court.  *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).  Here, the Supreme Court of Virginia has not addressed this precise question.  In this circumstance,

the Court must attempt to predict how the Supreme Court of Virginia would decide the issue were it confronted with the problem. *McKenna* v. *Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661 (3d Cir. 1980). The rule of *Erie* calls on the court to apply state law and not "to participate in an effort to change it merely because we doubt its soundness." *Id.* at 663 (quotation omitted). Accordingly, the Third Circuit has cautioned lower courts to focus on the decisions of lower state courts when determining issues of state law, holding that

> Because a federal court's prediction of state law, until and unless overruled by the state supreme court, tends to 'verge on the lawmaking function' of the highest state court, it is critical that the federal court do all within its power to *view the problem before it as a state court would, and not through the eyes of a court steeped in federal law. Accordingly, it must be recognized that a decision of a lower state court on a point of state law is generally more predictive of what the state supreme court would hold than is a conflicting opinion of a federal court on the same point.*

*Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046-47 (3d Cir. 1993) (emphasis added).

Micron's suggestion that this Court should follow federal precedent applying the personal stake exception directly conflicts with *Packard*. Virginia courts have directly addressed the issue of the "personal stake" exception and held that such an exception does not exist under Virginia law, noting the Virginia Supreme Court's failure to adopt such an exception despite being directly presented with the opportunity to do so. *Hiers* v. *Cave Hill Corp.,* 51 Va. Cir. 208, 2000 WL 145359, *4 (Jan. 6, 2000); *see also Little Professor Book Co. of Reston Va., Inc.* v. *Reston North Point Village Ltd. P'ship*, 41 Va. Cir. 73, 1996 WL 1065614, at *5-6 (Sept. 27, 1996). This Court cannot accept Micron's invitation to ignore the consistent holdings of Virginia courts that such an exception does not exist. Micron thus cannot rely on this exception, and its alleged civil conspiracy fails under Virginia's intracorporate immunity doctrine. *See Brauer*, 466 S.E.2d at 387; *Hiers*, 2000 WL 145359, at *4-5; *Prousalis* v. *Jamgochian*, 38 Fed. Appx. 903, 905 (4th Cir. 2002).

*Second*, even assuming *arguendo* that the "personal stake" exception to the corporate immunity doctrine were available to Micron under Virginia law, Micron's allegations clearly do not

- 16 -

meet the exception's requirements. The "personal stake" exception applies only if a corporation's agent possesses "a personal and *independent* benefit" that is "wholly separable from the more general and indirect corporate benefit present under the circumstances surrounding virtually any alleged corporate conspiracy." *Selman* v. *American Sports Underwriters, Inc.,* 697 F. Supp. 225, 239 (W.D. Va. 1990) (emphasis added). The "personal stake" of Rambus' agents alleged by Micron consists solely of an "incentive stock plan." (Cmplt. ¶ 23.) That "personal stake" can hardly be characterized as "personal" to the purported conspirators and "independent" of Rambus's interest generally. (Opening Br. 26.) The cases Micron cites in response do not support a different result. Two cases, *Snyder* and *Stein*, do not even involve application of the "personal stake" exception. The other cases, *Cunningham* and *Victorian House*, contain conclusory statements that sales commission payments could be characterized as a "personal stake" in an alleged conspiracy, but neither contains any analysis of whether such payments actually constitute an "*independent* benefit" that is "wholly separable from the more general and indirect corporate benefit present under the circumstances surrounding virtually any alleged corporate conspiracy." *Selman*, 697 F. Supp. at 239.

With the weakness in its argument apparent, Micron now alleges for the first time in its Response Brief that Rambus's counsel Lester Vincent and Neil Steinberg had a "personal stake" in the conspiracy that was "separate and apart from the company due to the fees that they charged and their positions as independent attorneys" and that Messrs. Crisp and Karp "both worked as independent consultants to Rambus during the conspiracy and, therefore, had personal economic incentives to conspire to injure Micron." (Opp. 28.) Notably, those allegations appear nowhere in Micron's Complaint (*see, e.g.,* Cmplt. ¶¶ 23, 134-39),[7] and Micron offers no explanation as to how the payment of attorney fees to Messrs. Vincent and Steinberg or the payment of consulting fees to

---

[7] Micron cannot rely on these new facts to cure deficiencies in its Complaint. It is well-established that a party cannot defeat a motion dismiss by asserting new facts in a response brief. *See Shanahan* v. *City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)*; Scholastic, Inc.* v. *Stouffer*, 124 F.Supp.2d 836, 851 n.16 (S.D.N.Y. 2000)*;* James Wm. Moore, 2 Moor's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.).

Messrs. Crisp and Karp were in any way tied to the "success" of the alleged conspiracy to commit document destruction and provide false testimony.  Nor has Micron offered any authority supporting its assertion that the payments to these individuals by Rambus gave them a "personal stake" in the conspiracy.  Thus, Micron has offered no basis for finding that the "personal stake" exception, even if available, could apply to the conspiracy allegations contained in its Complaint.

## IV.    MICRON'S ALLEGATIONS ARE INSUFFICIENT TO INVOKE THE "SHAM LITIGATION" EXCEPTION TO THE *NOERR-PENNINGTON* DOCTRINE.

Micron does not dispute that, absent an exception, *Noerr-Pennington* immunity would apply to bar its Complaint because its allegations seek to impose liability on Rambus for litigations activities.  Nor does Micron dispute that, in order to invoke the "sham litigation" exception to *Noerr-Pennington* immunity, a party must allege that the litigation is "objectively baseless" and attempts to "interfere directly with the business relationships of a competitor."  (Opp. 29)  Instead, Micron ignores the requirements for the "sham litigation" exception and argues that *Noerr* does not apply because Rambus allegedly made misrepresentations in the context of litigation. (*Id*.)  Micron's argument mischaracterizes Third Circuit precedent on the "sham litigation" exception to *Noerr-Pennington* immunity and misstates the allegations contained in Micron's Complaint.

Micron does not even allege that any of Rambus's claims are "objectively baseless" as required to circumvent Rambus's *Noerr-Pennington* immunity.  Instead, Micron ignores this requirement and argues that *Noerr-Pennington* immunity does not obtain because Rambus purportedly made "material misrepresentations" in litigation.  (Opp. 29-30.)  The Third Circuit has declined "to carve out a new exception to the broad immunity that *Noerr-Pennington* provides," holding that "[w]hile we do not condone misrepresentations in a judicial setting, neither will we deprive litigants of immunity derived from the First Amendment's right to petition the government if the alleged misrepresentations do not affect the core of the litigant's case."  *Cheminor Drugs Ltd.* v. *Ethyl Corp.*, 168 F.3d 119, 123 (3d Cir. 1999).  Accordingly, a party does not lose its *Noerr-*

*Pennington* immunity simply because it is alleged to have made misrepresentations in the litigation context. The Third Circuit further held that misrepresentations or improper actions do not "infect the core" of a claim unless the "claimed misrepresentations or improper actions would have been significant to the ultimate outcome or continuation of the proceeding." *Id*. at 24. Thus, irrespective of whether Rambus is alleged to have engaged in misrepresentations or improper actions, Micron still bears the burden of alleging that Rambus's litigation had no objective basis in light of those misrepresentations, *i.e.*, that the misrepresentations would have been significant to the ultimate outcome of the proceeding such that Rambus could have had no reasonable belief that its claim could be held valid upon adjudication. *Id*.

Here, Micron's Response Brief contains nothing more than conclusory statements that Rambus's purported conduct "clearly" affected the "core" of the litigation. (Opp. 32.) Nowhere in its Response Brief does Micron articulate a single example of how Rambus's alleged misrepresentations and document destruction actually affected the litigation or would have been significant to the ultimate outcome or continuation of the proceeding. Moreover, Micron's Complaint does not contain a single allegation suggesting how Rambus's alleged conduct would have been significant to the ultimate outcome of Rambus's patent infringement claims. Rather, Micron focuses its allegations on purported misconduct surrounding Rambus's claims – the document destruction and false testimony – and nowhere alleges that Rambus cannot "reasonably expect success on the merits" of its patent claims. The only allegation to which Micron refers on this score is Paragraph 101 of its Complaint. (Opp. 32.) However, Paragraph 101 simply contains a vague and conclusory allegation that Rambus's actions were intended to deprive the litigations of their "legitimacy." This one-sentence allegation in Micron's 37-page Complaint does not constitute a meaningful allegation that Rambus lacked a reasonable belief that its claim could be held valid upon adjudication. Moreover, the objective basis for Rambus's patent infringement claim against Micron is evidenced by the fact that Rambus has prevailed on its patent infringement claims in the

*Hynix* litigation – claims that involved the very same patents at issue in this case – and was awarded $306 million in damages by the jury. (Opening Br. 29-30.) Micron's allegations unquestionably are insufficient to establish the "sham litigation" exception to the immunity afforded by *Noerr-Pennington* doctrine, and that doctrine therefore operates to bar Micron's Complaint. *See, e.g.*, *Bath Petroleum Storage v. Market Hub Partners, L.P.*, 229 F.3d 1135 (2nd Cir. 2000); *Sosa v. Direct TV*, 437 F.3d 923 (9th Cir. 2006) (same).

## CONCLUSION

For the reasons explained above and in its Opening Brief, Rambus respectfully requests that the Court dismiss Micron's Complaint with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham (#2256)*

OF COUNSEL:

V. Bryan Medlock, Jr.
Charles W. Douglas
Thomas K. Cauley, Jr.
SIDLEY AUSTIN LLP
Bank One Plaza
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Gregory P. Stone
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071
(213) 683-9100

Dated: June 29, 2006
527135

Mary B. Graham (#2256)
Rodger D. Smith (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Attorneys for Defendant Rambus Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

Frederick L. Cottrell, III, Esquire
RICHARDS LAYTON & FINGER
One Rodney Square
Wilmington, DE  19801

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on June 29, 2006 upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**            **BY E-MAIL**

Frederick L. Cottrell, III, Esquire            Matthew D. Powers, Esquire
RICHARDS LAYTON & FINGER            WEIL, GOTSHAL & MANGES LLP
One Rodney Square            201 Redwood Shores Parkway
Wilmington, DE  19801            Redwood Shores, CA 94065

*/s/ Mary B. Graham (#2256)*
_____
Mary B. Graham (#2256)